**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., et al.,<br><br>*Petitioners*,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>*Respondents.* | No. 26-1229 |

## UNOPPOSED MOTION OF THE STATE OF TENNESSEE TO INTERVENE

Pursuant to 28 U.S.C. § 2348 and Federal Rule of Appellate Procedure 15, the State of Tennessee respectfully moves to intervene in this proceeding in support of Respondents. On September 4, 2026, the Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, and five capital prisoners (together, "Petitioners") filed a petition for review challenging the U.S. Attorney General's certification of Tennessee's mechanism for the appointment of counsel in state court postconviction proceedings for capital cases, titled "Certification of Tennessee Capital Counsel Mechanism," published at 91 Fed. Reg. 42,761 (July 10, 2026). Tennessee seeks to participate as an intervenor to defend the U.S. Attorney General's certification.

Tennessee's counsel consulted with counsel for the parties regarding this motion, and Respondents' counsel indicated that they take no position on the motion. Petitioners' counsel stated they "do not intend to oppose the motion provided Tennessee's motion to intervene states Petitioners' position, which is that in not opposing the motion, Petitioners do not concede that the Tennessee Attorney General is an appropriate state official to initiate certification proceedings under 28 U.S.C. § 2265(a)(1), and Petitioners maintain that the Tennessee Attorney General's application for certification was outside his constitutional and statutory authority."

## BACKGROUND

Federal habeas corpus proceedings provide a mechanism for prisoners in state custody to challenge the constitutionality of their convictions or sentences in federal court. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets out the substantive and procedural requirements for prisoners to obtain federal habeas relief. *Shinn v. Ramirez*, 596 U.S. 366, 377-78 (2022); *see generally* 28 U.S.C. § 2241, *et seq*.

Under AEDPA, a State can utilize more streamlined and efficient procedures in capital cases if the State has a mechanism for appointing counsel in state court postconviction proceedings. The Constitution does not require States to provide counsel for postconviction proceedings in capital cases. *See Pennsylvania v. Finley*, 481 U.S. 551, 552 (1987). So, in 1996, Congress enacted a quid pro quo in Title 28,

Chapter 154 of the U.S. Code ("Chapter 154") wherein States appointing competent counsel for such cases would benefit from swifter resolution of federal habeas corpus proceedings. Chapter 154's procedures expedite resolution of federal habeas proceedings by, for example, shortening "the statute of limitations for filing a federal habeas petition … from one year to six months from the date of final judgment of the state courts on direct appeal" and requiring "federal courts [to] give priority status to … habeas case[s] and resolve [them] within" specified time periods. *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1245 (9th Cir. 2016); *see* 28 U.S.C. §§ 2261-64, 2266; *see also Calderon v. Ashmus*, 523 U.S. 740, 742 (1998) (summarizing Chapter 154's "procedural advantages" for "qualifying States").

For Chapter 154's procedures to apply, a State must first obtain certification from the Attorney General that it has a "mechanism for providing counsel in postconviction proceedings" for capital prisoners that meets certain requirements. 28 U.S.C. § 2261(a)-(b). Specifically, the Attorney General must certify:

> 1. "[T]he State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death;"
>
> 2. "[T]he date on which the mechanism … was established; and"

3. “[W]hether the State provides standards of competency for the appointment of counsel in [such] proceedings.”

*Id.* § 2265 (certification requirements); *see also* 28 C.F.R. § 22 (implementing regulations).

On June 6, 2025, Tennessee applied for certification, and, on July 10, 2026, the Attorney General certified Tennessee’s postconviction capital counsel mechanism under Chapter 154. Certification of Tennessee Capital Counsel Mechanism, Dep’t of Justice, 91 Fed. Reg. 42,761 (July 10, 2026).

On September 4, 2026, Petitioners filed a petition seeking review of the Attorney General’s certification.

## LEGAL STANDARDS

Under 28 U.S.C. § 2348, “any party in interest in the proceeding before the agency whose interests will be affected if an order of the agency is or is not enjoined, set aside, or suspended, may appear as parties thereto of their own motion and as of right” in any proceeding to review the Attorney General’s certification. *See* 28 U.S.C. § 2265(c) (applying Title 28, Chapter 158’s review procedures to petitions for review of Chapter 154 certification).

Separately, Federal Rule of Appellate Procedure 15(d) provides that a motion to intervene “must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention.” “Rule 15(d) does not provide standards for intervention, so

appellate courts have turned to the rules governing intervention in the district courts under Fed. R. Civ. P. 24." *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004) (citation modified); *accord In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017). Under Federal Rule of Civil Procedure 24(a)(2), "a 'court must permit anyone to intervene' who, (1) '[o]n timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (quoting Fed. R. Civ. P. 24(a)(2)). Alternatively, courts may permit intervention if the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Courts generally apply a liberal approach to intervention, especially in administrative cases. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977); *see also Berger*, 597 U.S. at 200 n.* (reversing lower court that "set the intervention bar too high" (citation modified)). "[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

## ARGUMENT

As a party to the certification proceeding whose interests will be impacted by the outcome of this appeal, 28 U.S.C. § 2348 mandates that Tennessee be allowed to intervene. Alternatively, Tennessee should be granted leave to intervene either as of right or with the Court's permission to defend the Attorney General's certification. In past Chapter 154 certification litigation, this Court granted the certified State's motion to intervene to support the Attorney General's certification. Order, *Off. of the Fed. Pub. Def. for the Dist. of Ariz. v. Barr*, No. 20-1144 (D.C. Cir. May 28, 2020). The Court should do the same here.

### I. 28 U.S.C. § 2348 Mandates Tennessee Be Allowed To Intervene.

Judicial review of Tennessee's certification "is subject to review exclusively as provided under chapter 158 of" Title 28 of the U.S. Code. 28 U.S.C. § 2265(c). In turn, under 28 U.S.C. § 2348, "any party in interest in the proceeding before the agency whose interests will be affected … may appear as parties thereto of their own motion and as of right[] … in any proceeding to review the order." Accordingly, parties to an administrative proceeding who would be affected by judicial review of the agency order have "the right to appear as a party" in those judicial proceedings. *Mail Order Ass'n of Am. v. USPS*, 986 F.2d 509, 517 (D.C. Cir. 1993).

Tennessee satisfies Section 2348's requirements to intervene. *First*, Tennessee was a party in interest in the Attorney General's certification proceedings.

Tennessee initiated those proceedings in June 2025 by "request[ing] that the Attorney General certify its capital counsel mechanism under chapter 154." 91 Fed. Reg. 42,761 at 42,762; *see also* Tennessee's Request for Certification under 28 U.S.C. § 2265, Tenn. Off. of the Att'y Gen. (June 6, 2025), https://perma.cc/HF5Q-G4FQ. That makes Tennessee a "party" to the certification proceedings. *See United States v. Fed. Mar. Comm'n*, 694 F.2d 793, 800 (D.C. Cir. 1982) (en banc) (per curiam) ("The Department participated and was thus a party in the instant proceeding before the Commission." (footnote omitted)); *cf. NRC v. Texas*, 605 U.S. 665, 676 (2025) (under Atomic Energy Act, a "license applicant" who initiates proceedings before the Nuclear Regulatory Commission has "party status").

*Second*, the Court's review of the Attorney General's certification affects Tennessee's interests. "Chapter 154 … provides certain procedural advantages to qualifying States in federal habeas proceedings." *Calderon v. Ashmus*, 523 U.S. 740, 742 (1998). "Most notably, it provides for an expedited review process in proceedings brought against [a] qualifying State[]." *Id.*; *see* 28 U.S.C. §§ 2262-64, 2266; *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1244-46 (9th Cir. 2016) (summarizing Chapter 154's "procedural benefits to states"). For example, federal habeas petitioners normally have one year to petition for habeas relief, 28 U.S.C. § 2244(d)(1), but Chapter 154 shortens that to six months, *id.* § 2263(a). And, under AEDPA's standard procedures, no time limits apply to when

federal courts must resolve habeas petitions. But Chapter 154 generally requires district courts to "enter a final judgment on any application for a writ of habeas corpus … not later than 450 days after the date on which the application is filed, or 60 days after the date on which the case is submitted for decision, whichever is earlier." *Id.* § 2266(b)(1)(A).

Expediting federal habeas corpus proceedings furthers Tennessee's interests in the finality of criminal convictions and conservation of scarce resources. Delayed finality is "[t]he most significant" cost to federal habeas corpus proceedings. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991). "Finality is essential to both the retributive and the deterrent functions of criminal law," as "[n]either innocence nor just punishment can be vindicated until the final judgment is known," and "criminal law is deprived of much of its deterrent effect" until litigation ends. *Calderon v. Thompson*, 523 U.S. 538, 555 (1998) (quotation marks omitted). "Only with an assurance of real finality can the State execute its moral judgment … [and] the victims of crime move forward knowing the moral judgment will be carried out." *Id.* at 556.

The harm to finality is particularly acute for capital cases. "[C]apital petitioners" have an incentive to "deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Ryan v. Gonzales*, 568 U.S. 57, 76 (2013) (quoting *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005)). As

a result, a State's "interest in the timely enforcement of a sentence" can be "frustrated in th[ese] case[s]," in which prisoners can "manage[] to secure delay" for "decades."[1] *Bucklew v. Precythe*, 587 U.S. 119, 149 (2019).

"There is no question that Tennessee has an interest in the finality of its judgments," *Miller v. Mays*, 879 F.3d 691, 700 (6th Cir. 2018), *reh'g en banc denied* (Mar. 14, 2018), *cert. denied*, 586 U.S. 1022 (2018), and the Attorney General's certification furthers that interest by enabling Tennessee to utilize Chapter 154's "expedited review process," *Ashmus*, 523 U.S. at 742. Tennessee "pays the price in terms of the uncertainty and delay added to the enforcement of its criminal laws" caused by protracted capital proceedings, *Coleman*, 501 U.S. at 738-39, and Chapter 154's streamlined procedures lower that price. Petitioners' efforts to overturn Tennessee's certification, if successful, will deprive Tennessee of Chapter 154's benefits and directly undermine Tennessee's interest in finality.

Chapter 154's expedited procedures also help Tennessee conserve scarce resources. Litigating federal habeas capital cases for decades inherently requires

---

[1] "[C]apital habeas cases [take] an average of 3.1 years to resolve in federal district court" alone, not taking into account years of additional delay at the appellate level. *Schad v. Ryan*, 709 F.3d 855, 860 n.1 (9th Cir. 2013) (Callahan, J., dissenting from denial of rehearing en banc) (citing Nancy J. King et al., *Executive Summary: Habeas Litigation in U.S. District Courts* 7 (2007), *available at* https://perma.cc/KG8M-RYTL); *see also Bucklew*, 587 U.S. at 149 ("[T]he long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive." (internal quotation marks omitted)).

significant resources—financial, personnel, and time—from all involved, including attorneys, courts, witnesses, and more. Shortening those proceedings benefits Tennessee by reducing the resources that otherwise must be committed to decades-long litigation.

Tennessee is therefore entitled to intervene because it was a party to the certification proceedings and Tennessee's interests will be impacted by the outcome of this Court's review.[2] *Mail Order Ass'n of Am.*, 986 F.2d at 516-17.

## II. Alternatively, Tennessee May Intervene Under Rule 15(d).

Alternatively, Tennessee may intervene as of right or by permission under Federal Rule of Appellate Procedure 15(d).

### A. Tennessee May Intervene as of Right.

Tennessee satisfies all factors to intervene as of right. This motion is "timely," Tennessee has "an interest relating to" the Attorney General's certification of Tennessee's capital counsel mechanism that could be "impair[ed] or impede[d]" by the "disposi[tion] of th[is] action," and no "existing parties adequately represent that interest." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (quoting Fed. R. Civ. P. 24(a)(2)).

---

[2] Tennessee's stake in the Attorney General's certification also establishes Article III standing. *See Am. Whitewater v. FERC*, 125 F.4th 1139, 1151 (D.C. Cir. 2025) (party who sought or requested the agency action being contested "has standing" in a "challenge[] [to] the [agency's] approval").

*First*, Tennessee's motion is timely. The Petition for Review was filed on September 4, 2026, and this motion is filed on October 1, 2026—within the 30-day time limit. Fed. R. App. P. 15(d).

*Second*, Tennessee has an interest in the Attorney General's certification that the Petition for Review threatens to impair. As explained above, "[t]here is no question that Tennessee has an interest in the finality of its judgments," *Miller v. Mays*, 879 F.3d 691, 700 (6th Cir. 2018), and Chapter 154 certification serves that interest by dramatically shortening federal capital habeas proceedings. Shortening such litigation also reduces the concrete costs of such litigation to Tennessee. The Petition seeks to vacate Tennessee's certification, thereby impairing Tennessee's interests. *See Red Lake Band of Chippewa Indians v. U.S. Army Corp of Eng'rs*, 338 F.R.D. 1, 5-6 (D.D.C. 2021) (entity holding challenged permit "has a clear interest" that would be impaired if intervention is denied).

*Finally*, Petitioners and Respondents cannot adequately represent Tennessee's interests. This element imposes a "minimal" burden easily satisfied here. *Berger*, 597 U.S. at 196 (quotation marks omitted). Petitioners seek vacatur of Tennessee's certification in diametric opposition to Tennessee's interests. Although Respondents and Tennessee may agree that Tennessee's capital counsel mechanism was properly certified, a "governmental party['s]" interests generally "differ[] from other parties, public or private, that assert their own interests, even when these

interests coincide." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 n.21 (2d Cir. 1984); *accord Nat'l Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977). Tennessee also has a unique interest in the proper interpretation, understanding, and defense of its capital counsel mechanism—an interest shared by no other party.

Tennessee may therefore intervene as of right. *See* Order, *Off. of the Fed. Pub. Def. for the Dist. of Ariz. v. Barr*, No. 20-1144 (D.C. Cir. May 28, 2020) (granting Arizona's motion to intervene to defend Chapter 154 certification).

**B. Tennessee Should be Permitted to Intervene.**

If the Court determines Tennessee cannot intervene as of right, the Court should permit Tennessee to intervene. "[A]n applicant may be permitted to intervene if his claim shares a question of law or fact in common with the underlying action and if the intervention will not unduly delay or prejudice the rights of the original parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009). Tennessee seeks only to defend the Attorney General's certification of Tennessee's capital counsel mechanism, so Tennessee's claim shares common questions of fact and law with the issues already raised in this proceeding. And Tennessee filed this motion shortly after the Petition for Review was filed, so granting intervention will not delay or prejudice the parties.

## CONCLUSION

Tennessee respectfully requests that the Court grant this motion and allow Tennessee to intervene in support of Respondents.

Date: October 1, 2026

Respectfully submitted,

JONATHAN SKRMETTI
*Attorney General and Reporter*

/s/ *Zachary Clark*
ZACHARY R. CLARK
*Director of Strategic Litigation*
REED N. SMITH
CALEB J. WALKER
*Assistant Attorneys General*
Office of the Tennessee Attorney General & Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Zachary.Clark@ag.tn.gov
Reed.Smith@ag.tn.gov
Caleb.Walker@ag.tn.gov
(615) 741-7403

*Counsel for the State of Tennessee*

## CORPORATE DISCLOSURE STATEMENT

The State of Tennessee is a governmental entity not subject to corporate disclosures under Fed. R. App. P. 26.1(a) and D.C. Cir. R. 26.1(a).

## CERTIFICATE OF PARTIES

The State of Tennessee filed this Motion to become an intervenor. The current parties in this case are petitioners Federal Defenders Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, John Michael Bane, Andre Bland, Sedrick Clayton, Urshawn Miller, and Corino Pruitt and respondents Todd Blanche, United States Attorney General, and the United States of America.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Motion complies with Fed. R. App. P 27(d)(1)(E) because it was prepared with Times New Roman 14-point font, a proportionally spaced typeface, and Fed. R. App. P. 27(d)(2)(A) because it contains 2,700 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

/s/ *Zachary Clark*
ZACHARY R. CLARK

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Zachary Clark*
ZACHARY R. CLARK