**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 26-1229**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Federal Defender Services of Eastern Tennessee, Inc., et al.,

Petitioners,

v.

Todd Blanche, United States Attorney General and United States of America,

Respondents,

State of Tennessee,

Intervenor.

---

On Petition for Review of the Certification of Tennessee Capital Counsel Mechanism

---

# OPPOSITION TO MOTION FOR STAY OF CERTIFICATION PENDING JUDICIAL REVIEW AND TO HOLD PETITION IN ABEYANCE PENDING RELATED LITIGATION

---

BRETT A. SHUMATE
*Assistant Attorney General*

MELISSA N. PATTERSON
MCKAYE L. NEUMEISTER
DOUGLAS C. DREIER
*Attorneys, Appellate Staff*
*Civil Division, Room 7264*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4452*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........ ii

GLOSSARY ........ v

INTRODUCTION ........ 1

STATEMENT ........ 3

A. Statutory and Regulatory Background ........ 3

B. Certification of Tennessee's Capital-Counsel Mechanism and Subsequent Litigation ........ 5

ARGUMENT ........ 9

I. Petitioners Are Not Likely to Prevail on the Merits. ........ 9

A. The Attorney General Faithfully Applied the Operative Regulations. ........ 9

B. Petitioners' State-Law Argument Does Not Support a Likelihood of Success. ........ 17

C. Petitioners' Skeletal Due-Process Challenge Is Unlikely to Succeed. ........ 18

II. The Equities Weigh Sharply Against a Stay. ........ 19

III. Abeyance Is Entirely Unwarranted. ........ 25

CONCLUSION ........ 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Al-Tamimi v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019) .......... 18

*Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024) .......... 7

*Bland v. Blanche*, No. 25-cv-03499,
2026 WL 1998552 (D.D.C. July 10, 2026) .......... 7, 8, 25

*Bland v. Bondi*, No. 25-cv-03499,
2025 WL 5317110 (D.D.C. Oct. 10, 2025) .......... 7

*Bowman v. Iddon*,
848 F.3d 1034 (D.C. Cir. 2017) .......... 19

*Bucklew v. Precythe*,
587 U.S. 119 (2019) .......... 24

*Calderon v. Ashmus*,
523 U.S. 740 (1998) .......... 22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 21

*Conn v. Gabbert*,
526 U.S. 286 (1999) .......... 20

*District Att'y's Off. for the Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) .......... 19

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) .......... 20-21

*Habeas Corpus Res. Ctr. v. U.S. DOJ*,
816 F.3d 1241 .......... 21

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) .......... 20

*Maryland v. King*,
567 U.S. 1301 (2012) .......... 24

*Nelson v. Campbell*,
541 U.S. 637 (2004) .................................................................. 23

*Nken v. Holder*,
556 U.S. 418 (2009) .............................................................. 9, 24

*Office of the Fed. Pub. Def. v. Barr*, No. 20-1144,
2020 U.S. App. LEXIS 19518 (D.C. Cir. June 8, 2020) ..................... 9, 25

*Pennsylvania v. Finley*,
481 U.S. 551 (1987) .................................................................. 3

*State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*,
63 S.W.3d 734 (Tenn. Ct. App. 2001) ........................................... 17-18

*State v. Heath*,
806 S.W.2d 535 (Tenn. Ct. App. 1990) ............................................ 18

*Taylor v. Resolution Tr. Corp.*,
56 F.3d 1497 (D.C. Cir. 1995) ..................................................... 20

*Tennessee ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*,
931 F.3d 499 (6th Cir. 2019) ....................................................... 17

*Wisconsin Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) (per curiam) ..................................... 20

**Statutes and Legislative Materials:**

18 U.S.C. § 3599 ........................................................... 3, 13, 16
28 U.S.C. § 2261 ....................................................... 3, 4, 5, 11, 16
28 U.S.C. § 2262 ....................................................................... 3
28 U.S.C. § 2263 .................................................................. 3, 16
28 U.S.C. § 2264 .................................................................... 3, 4
* 28 U.S.C. § 2265 ........................................ 1, 3, 4, 5, 6, 8, 9, 10, 17, 22, 25
28 U.S.C. § 2266 ....................................................................... 3

Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 110 Stat. 1214 ........................................... 3, 4

USA PATRIOT Improvement and Reauthorization Act of 2005,
Pub. L. No. 109-177, 120 Stat. 192 (2006) ......................................... 4

H.R. Rep. No. 104-23 (1995) ......................................................... 26

Tenn. Code Ann. § 8-6-109 .......... 18
Tenn. Code Ann. § 8-6-110 .......... 17
Tenn. Code Ann. § 40-30-106 .......... 15
Tenn. Code Ann. § 40-30-107 .......... 15, 17

**Rules:**

Tenn. Sup. Ct. R. 13 .......... 17
Tenn. Sup. Ct. R. 28 .......... 15

**Regulations and Regulatory Materials:**

28 C.F.R. pt. 26, subpart B .......... 5, 9
28 C.F.R. § 26.21 .......... 14, 17
* 28 C.F.R. § 26.22 .......... 5, 10, 11, 12, 13, 14, 16
Certification of Arizona Capital Counsel Mechanism,
85 Fed. Reg. 20705 (Apr. 14, 2020) .......... 24
* Certification of Tennessee Capital Counsel Mechanism,
91 Fed. Reg. 42761 (July 10, 2026) (A249-63) .......... 1, 6, 11-17, 22
Certification Process for State Capital Counsel Systems,
78 Fed. Reg. 58160 (Sept. 23, 2013) (A120-44) .......... 5, 11, 13

## GLOSSARY

| | |
|---|---|
| A[#] | Addendum to Petitioners' Stay Motion (Document #2195775) |
| AEDPA | Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 |
| Chapter 154 | 28 U.S.C. ch. 154 (28 U.S.C. §§ 2261-66) |
| DOJ | U.S. Department of Justice |
| Mot. | Petitioners' Stay Motion (Document #2195775) |
| TRO | Temporary Restraining Order |

**INTRODUCTION**

Chapter 154 of Title 28 of the United States Code encourages States to provide representation, in conformity with certain standards, for indigent capital prisoners during State postconviction proceedings. Once the Attorney General certifies that a State's procedures satisfy Chapter 154's requirements, rules that streamline and expedite federal habeas review of the State's capital cases may apply.

On July 10, 2026, the Attorney General certified that Tennessee had established a capital-counsel mechanism complying with Chapter 154. In a 15-page notice, the Attorney General exhaustively assessed the State's procedures and responded to concerns received through public comments. A249-63.

Petitioners petitioned for review pursuant to 28 U.S.C. § 2265(c), which vests exclusive jurisdiction to review the Attorney General's certification in this Court. On September 30, 2026 (82 days after certification), petitioners moved to stay the certification. Petitioners effectively seek a super-stay, asking not only that the Court stay certification pending this petition for review but also that this Court then hold this very petition in abeyance pending resolutions of two separate proceedings unlikely to resolve the issues presented here. They ask for such delay upon

delay despite federal habeas proceedings already being stayed pending this Court's resolution of this petition. A497-98. The stay-labyrinth petitioners seek to create defies Congress's goal of ensuring the timely disposition of capital habeas petitions.

This Court should deny petitioners' requests. Petitioners cannot show a likelihood of prevailing on the merits. The Attorney General faithfully applied the existing regulations implementing the statutory requirements for certification, and petitioners' disregard of important aspects of those regulations establishes no error in the Attorney General's decision. Nor have petitioners shown that Tennessee's Attorney General was an inappropriate official to request certification. And petitioners' skeletal due-process argument shows no constitutional infirmity.

The equities equally disfavor a stay. The Supreme Court has made clear that the preparatory steps petitioners invoke regarding the possibility of litigating Chapter 154's applicability in individual cases are not cognizable injuries, let alone irreparable ones. Further, petitioners have unreasonably delayed seeking relief and unreasonably seek to delay a final judgment further by demanding abeyance pending litigation in courts that lack jurisdiction to evaluate the merits challenges petitioners bring here. And the public interest in implementing Chapter 154 outweighs any difficulties

petitioners allege—particularly since delay in achieving finality in capital cases was the very ill Congress created Chapter 154 to cure. This Court has previously refused to stay a Chapter 154 certification, even pending an *ongoing* petition for review, and it should do the same here.

## STATEMENT

### A. Statutory and Regulatory Background

The Constitution does not guarantee a right to counsel during postconviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). By statute, however, Congress has assured indigent capital prisoners that qualified counsel will be appointed during federal postconviction proceedings. *See* 18 U.S.C. § 3599. And in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, Congress created Chapter 154 to encourage States to provide qualified counsel to indigent capital prisoners during State postconviction proceedings. *See* 28 U.S.C. §§ 2261-66.

Under Chapter 154, if a State establishes a qualifying mechanism to provide such counsel during its own postconviction proceedings, special procedural rules may apply to federal habeas review of the State's capital convictions. In pertinent part, the deadline for a federal habeas filing is shortened to 180 days after final State-court affirmance (subject to tolling), 28 U.S.C. § 2263; amendments to habeas petitions are limited, *id.*

§ 2266(b)(3)(B); and the scope of federal review is confined to claims decided by the State courts or not properly raised for specified reasons, *id.* § 2264.

Congress originally left it to federal habeas courts to determine a State's eligibility for Chapter 154 procedures. *See* AEDPA § 107(a), 110 Stat. at 1221. In 2006, Congress reassigned this responsibility to the Attorney General. *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, tit. V, § 507(b), 120 Stat. 192, 250 (2006) (codified at 28 U.S.C. § 2265). Accordingly, after a State requests certification, the Attorney General must decide "whether the State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings" for indigent capital prisoners. 28 U.S.C. § 2265(a)(1)(A). Congress vested this Court with "exclusive jurisdiction" to review the Attorney General's certification decisions de novo. *Id.* § 2265(c).

The Attorney General's certification does not automatically trigger Chapter 154's procedures. Each federal habeas court must still find that the *petitioner* was actually provided postconviction representation pursuant to the State's certified mechanism (or that he validly waived counsel, retained his own, or was found not to be indigent). 28 U.S.C. § 2261(b)(2), (c). Thus,

Congress has created a two-step process for applying Chapter 154's procedures in any given case: (1) the Attorney General's certification of the State's mechanism; and (2) the habeas court's conclusion that this mechanism was followed in petitioner's case. *Id.* § 2261(b).

Chapter 154 also directs the Attorney General to "promulgate regulations to implement the certification procedure." 28 U.S.C. § 2265(b). Attorney General Holder issued such regulations in September 2013. A120-44; *see* 28 C.F.R. pt. 26, subpart B. While the regulations provide standards for when "[a] State's standards of competency are presumptively adequate," 28 C.F.R. § 26.22(b)(1), and when "[a] State's provision for compensation is presumptively adequate," *id.* § 26.22(c)(1), they also provide that States failing to meet these "benchmark[s]" may still be certified, *id.* § 26.22(b)(2), (c)(2).

### B. Certification of Tennessee's Capital-Counsel Mechanism and Subsequent Litigation

**1.** On June 6, 2025, the State of Tennessee petitioned the Attorney General for certification of its capital-counsel mechanism under § 2265. A9-20. On August 7, 2025, the U.S. Department of Justice (DOJ) published a notice of Tennessee's request in the Federal Register and solicited public comments about it. A21-22. The notice provided for a 60-day comment period, requiring comments to be submitted by October 6, 2025. A22.

On October 10, 2025, Federal Defender Services of Eastern Tennessee, Inc., and Federal Public Defender for the Middle District of Tennessee, both petitioners here, submitted a comment opposing certification. A23-119. DOJ accepted the comment and responded to it substantively and extensively. A249-63. DOJ received only one other comment. A251.

On July 10, 2026, the Attorney General issued a notice delineating Tennessee's postconviction legal framework, addressing the comments, and certifying Tennessee's capital-counsel mechanism under the 2013 regulations implementing Chapter 154. A249-63. The Attorney General determined that Tennessee had "established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death." 28 U.S.C. § 2265(a)(1)(A). The Attorney General rejected Tennessee's request to certify that its mechanism had been established by October 23, 1995, instead certifying Tennessee as of July 1, 1997, when the Tennessee Supreme Court adopted relevant amendments to its rules. A261-62.

**2.** Meanwhile, petitioners began litigating on three fronts.

First, on September 30, 2025, during the comments period, several petitioners filed a lawsuit in the U.S. District Court for the District of

Columbia seeking to enjoin DOJ's consideration of Tennessee's application for certification. Plaintiffs sought a temporary restraining order (TRO), which the court denied on two independent grounds. *Bland v. Bondi*, No. 25-cv-03499, 2025 WL 5317110, at *1-3 (D.D.C. Oct. 10, 2025). The court concluded that plaintiffs failed to demonstrate "a likelihood of success in establishing the court's jurisdiction." *Id.* at *2. Congress vested "exclusive jurisdiction" to review certification determinations in the D.C. Circuit, and suits "'seeking relief that might affect the Circuit Court's future jurisdiction'" are "'subject to the exclusive review'" there. *Id.* at *1. Moreover, the court concluded that plaintiffs had not demonstrated irreparable harm. *Id.* at *2. The court explained that the "time and expense" that petitioners face from participating in allegedly unconstitutional administrative proceedings and litigation do not constitute irreparable injury for purposes of preliminary relief. *Id.* at *3 (citing *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1335-36 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2751 (2025)). The court later dismissed for lack of jurisdiction. *Bland v. Blanche*, No. 25-cv-03499, 2026 WL 1998552, at *5 (D.D.C. July 10, 2026). On August 26, 2026, plaintiffs appealed (26-5305).

Second, after failing to get a TRO from D.D.C., several petitioners sued in the Chancery Court for Davidson County, Tennessee, seeking a TRO

requiring the Tennessee Attorney General to withdraw his request for certification under the theory that that request was ultra vires under Tennessee law. On May 28, 2026, the Chancery Court denied plaintiffs' TRO motion. *Federal Def. Servs. of E. Tenn., Inc. v. Skrmetti*, No. 26-0660-II, 2026 Tenn. Ch. LEXIS 1, at *15 (Tenn. Ch. Ct. May 28, 2026). The court concluded that Tennessee's sovereign immunity likely bars the lawsuit and that plaintiffs likely lack standing. *Id.* at *8-13. Tennessee moved to dismiss, and a hearing is scheduled for that motion on October 23, 2026. Mot. 5.

Third, petitioners filed this petition for review. They urge that the certification violated the operative regulations implementing 28 U.S.C. § 2265. Mot. 7-14. They also contend that the Tennessee Attorney General lacked authority to request certification. Mot. 14-16. Lastly, they contend that the certification process is unconstitutional. Mot. 16.

This final route is the one that the government identified in petitioners' earlier D.D.C. action as the jurisdictionally and temporally appropriate means to raise their constitutional challenges regarding Chapter 154. *See* Defendants' TRO Opposition at 12-13, *Bland v. Blanche*, No. 25-cv-03499 (D.D.C. Oct. 7, 2025), Dkt. 15 (explaining that plaintiffs would be free to bring their challenge in this Court if the Attorney General granted Tennessee's certification request). Yet despite now having the uncontested

opportunity to receive judicial review of such challenges, petitioners seek to put this case on a lengthy hold. And they ask this Court to stay the Attorney General's certification not just while this Court considers *this* case, but also for the duration of the delay they ask this Court to impose before even beginning to consider this case.

## ARGUMENT

Petitioners must satisfy "the stringent requirements for a stay pending court review." *Office of the Fed. Pub. Def. v. Barr*, No. 20-1144, 2020 U.S. App. LEXIS 19518, at *2 (D.C. Cir. June 8, 2020) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). To obtain relief, petitioners must show that they are likely to succeed on the merits and that a stay will prevent irreparable harm that outweighs harm to third parties and the public interest. *Nken*, 556 U.S. at 426.

### I. Petitioners Are Not Likely to Prevail on the Merits.

#### A. The Attorney General Faithfully Applied the Operative Regulations.

Petitioners primarily urge that the Attorney General did not hold Tennessee to the standards set forth in the existing regulations implementing 28 U.S.C. § 2265. Mot. 7-14 (citing 28 C.F.R. §§ 26.21-26.22). As is plain from the certification, the Attorney General faithfully applied those regulations, which petitioners fail to portray accurately.

**1.** Petitioners' argument turns on a fundamental misunderstanding about the existing regulations. First, petitioners wrongly suggest that under the current regulations, the Attorney General may certify a state mechanism only if he concludes it satisfies a non-statutory benchmark for presumptive adequacy set out in the regulations. *See* Mot. 10-11, 13. But the regulations do not make such benchmarks a condition of certification; they also permit certification if the Attorney General concludes the State "otherwise" satisfies the relevant criterion. 28 C.F.R. § 26.22(b)(2), (c)(2). That is no accident; Congress specified that "[t]here are no requirements for certification or for application of this chapter other than those expressly stated in this chapter." 28 U.S.C. § 2265(a)(3). Consistent with that stricture, the regulations do not impose any mandatory benchmarks or other non-statutory requirements on the certification process, and the Attorney General's conclusion that Tennessee "otherwise" satisfied various statutory criteria appropriately applies the flexibility expressly—and necessarily—included in the regulations.

Similarly, petitioners seek to enlarge the Attorney General's role in the Chapter 154 process beyond that which the statute and regulations permit. They urge (at 7-10) that the Attorney General wrongfully refused to make case-specific assessments about whether Tennessee's capital-counsel

mechanism was adequate in practice. As the Attorney General explained here, that contention flatly contradicts the statute's limitation of the Attorney General's role to answering "the general question of whether the State has established a mechanism satisfying chapter 154," while reserving to courts the "specific question of whether counsel for the petitioner in a particular case had been appointed in compliance with that mechanism." A251; *see* 28 U.S.C. § 2261(b)(2). Nor does petitioners' argument have any foundation in the regulatory text, which does not (and could not) require case-specific evaluations, instead focusing on whether a state mechanism writ large is "*reasonably designed* to ensure the availability for appointment" of competent counsel. 28 C.F.R. § 26.22(c)(2) (emphasis added); *see id.* § 26.22(b)(2) (state competency standards must "*reasonably* assure" counsel proficiency "in capital cases" (emphasis added)). Indeed, when finalizing the regulations in 2013, the Attorney General specifically rejected comments demanding that he "review a State's record of appointments in individual cases to verify that the appointments were made in conformity with the State's established mechanism" "because the statutory scheme does not call for such case-specific oversight by the Attorney General." A122.

**2.** Petitioners' complaints about the Attorney General's certification disregard these features of the regulations and the regulatory text.

**a.** Petitioners' assertion (at 10-11) that Tennessee's competency standards are inadequate because they fail to meet the regulations' "principal" benchmark at 28 C.F.R. § 26.22(b)(1)(i) entirely ignores that there are multiple ways a State may demonstrate competency under the statute, including through § 26.22(b)(2). The Attorney General explained in detail his conclusion that Tennessee's standards satisfy § 26.22(b)(2) because they "reasonably assure a level of proficiency appropriate for State postconviction litigation in capital cases." A255 (quoting 28 C.F.R. § 26.22(b)(2)); *see* A255-57. "Tennessee's standards require three years of litigation experience in criminal trial and appeals and experience in the appeal of a capital case or three felony convictions *or* experience in state postconviction proceedings in three felony cases, two murder cases, or one capital case," *and* "training or experience in postconviction proceedings or capital cases." A255. Indeed, for over three decades, Tennessee has had a dedicated Office of the Post-Conviction Defender, which generally represents indigent capital defendants in postconviction proceedings. A255. The Attorney General determined that Tennessee exceeded even the federal

competency standards under 18 U.S.C. § 3599. A255 (observing that unlike the Tennessee standards, the "federal standard does not require postconviction or capital litigation experience or training").

**b.** Petitioners similarly misplace reliance on regulatory benchmarks in attacking the adequacy of Tennessee's counsel-compensation regime. They complain that the salaries of attorneys at the Office of the Post-Conviction Defender (ranging from $69,060-$180,960, A17) "are … not presumptively adequate" under the "benchmarks" in 28 C.F.R. § 26.22(c)(1). Mot. 13. But they ignore § 26.22(c)(2), which provides that compensation is adequate when "reasonably designed to ensure the availability for appointment of counsel who meet State standards of competency." As the Attorney General explained in publishing the 2013 regulations, "a State may secure representation for indigent capital petitioners in postconviction proceedings by means not dependent on any special financial incentive for accepting appointments, such as by providing sufficient salaried public defender personnel to competently carry out such assignments as part of their duties." A140; *accord* A258.

Petitioners do not even attempt to identify any regulatory defect in Tennessee's compensation of private post-conviction counsel at $90 per hour—"which would equate to $180,000 per year on a 2000-hours-per-year

basis," A257—complaining only that it is lower than that of some types of appointed counsel and "market rates." Mot. 13. But as the Attorney General explained, Tennessee's private-counsel compensation is presumptively adequate under 28 C.F.R. § 26.22(c)(1)(iii) because it is comparable to that "'of appointed counsel in State appellate or trial proceedings in capital cases.'" A258. Contra petitioners' suggestion (at 13), nothing in that regulation suggests that postconviction counsel must be paid the same as *lead* counsel in capital cases.

**c.** Petitioners continue to disregard the regulatory text in attempting to impose (at 11-13) a specific-timing requirement on counsel appointments. "[N]either chapter 154 nor the 2013 Regulations prescribe, as a condition of certification, a specific timeframe for appointing counsel[.]" A254. On the contrary, the regulation says only that "[a]ppointment" means "provision of counsel in a manner that is reasonably timely in light of the time limitations for seeking State and Federal postconviction review and the time required for developing and presenting claims in the postconviction proceedings." 28 C.F.R. § 26.21. The Attorney General explained that Tennessee requires its trial courts to "complete a preliminary consideration" of an initial petition for postconviction review within 30 days, at which point it must issue a preliminary order and "appoint counsel to represent" an

indigent petitioner. A252. The Attorney General determined that this mechanism provides "reasonably timely," and indeed, "prompt," appointment of counsel. A252-53.

Petitioners object (at 12) that when a prisoner brings a Tennessee postconviction proceeding, counsel is not appointed until after the initial petition is filed. The Attorney General detailed the features of Tennessee's regime "ameliorat[ing]" such concerns. A253. "In Tennessee, counsel from the Office of the Post-Conviction Defender … may help prisoners prepare and file their petitions prior to any formal appointment of counsel." A253. "A court may appoint counsel if necessary to secure the filing of a complete petition." A253 (citing Tenn. Code Ann. § 40-30-106(e)). Tennessee courts "cannot dismiss a *pro se* petition for failure to follow the prescribed form until the court has given the petitioner a reasonable opportunity to amend the petition with the assistance of counsel." A253 (citing Tenn. Sup. Ct. R. 28, § 6(B)(4)(b)). A court will not dismiss a petition even if it only contains "minimal facts" suggesting a "colorable claim." A253 (citing Tenn. Sup. Ct. R. 28, §§ 2(H), 6(B)). After the filing of the initial petition and the appointment of counsel, a prisoner may amend the petition to raise additional issues. A253 (citing Tenn. Code Ann. § 40-30-107(b)(2); Tenn. Sup. Ct. R. 28, §§ 6(B)(3)(b), 8(D)(5)). And in terms of timeliness vis-à-vis

any federal postconviction proceedings, the extendable federal 180-day habeas deadline can be tolled "during the pendency of state collateral proceedings." A254 (citing 28 U.S.C. § 2263); *see also* 18 U.S.C. § 3599 (providing for appointment of counsel in federal habeas proceedings).

Moreover, petitioners' argument that Tennessee could fail to timely appoint counsel in an individual case "misconceives the requirements for certification and the Attorney General's role in the certification process." A256; *see supra* pp. 4-5. As the Attorney General acknowledged, "[i]f such a case were to occur despite [Tennessee's] protections, counsel would not be 'appointed pursuant to [the certified] mechanism' in the case, … potentially bringing into play the inapplicability of chapter 154's expedited federal habeas review procedures in the individual case." A253 (citing 28 U.S.C. § 2261(b)(2)). The Attorney General's certification does not prevent litigants from bringing these claims. "The federal district court reviewing a habeas petition [remains] responsible for determining whether counsel was appointed pursuant to the State's mechanism." A257 (quoting 28 U.S.C. § 2261(b)(2)).

**d.** Finally, petitioners contend (at 14) that Tennessee's caps on paying litigation expenses run afoul of 28 C.F.R. § 26.22(d). But that regulation explicitly permits "presumptive limits on payment," provided that

"means are authorized for payment of necessary expenses above such limits." Tennessee provides a means to exceed its presumptive limits, including for hourly rates of expert services. A260-61 (citing Tenn. Sup. Ct. R. 13, § 5(d)(1)).

### B. Petitioners' State-Law Argument Does Not Support a Likelihood of Success.

Petitioners cannot show that they are likely to succeed on this petition for review based on their argument that Tennessee's Attorney General was not "an appropriate State official" to request certification under Chapter 154. 28 U.S.C. § 2265(a)(1). Petitioners cannot contest that the Tennessee Attorney General is the appropriate official under the federal regulation. *See* 28 C.F.R. § 26.21 (defining "[a]ppropriate State official" as "the State attorney general" unless he lacks "responsibility for Federal habeas corpus litigation"). Petitioners do not dispute that Tennessee's Attorney General is responsible for habeas corpus litigation. *See* Tenn. Code Ann. §§ 8-6-110, 40-30-114(c)(1).

Nor is petitioners' cursory attack under state law likely to succeed. Tennessee's Attorney General has "extensive statutory power and the broad common-law powers of the office except where these powers have been limited by statute." *Tennessee ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 515 (6th Cir. 2019) (quoting *State ex rel. Comm'r of*

*Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 772 (Tenn. Ct. App. 2001)). "Tennessee law provides that the Attorney General has the duty to … direct 'all … administrative proceedings in which the state or any officer, department, agency, board, commission or instrumentality of the state may be interested[.]'" *Id.* (quoting Tenn. Code Ann. § 8-6-109(b)(1)). And even absent such express authorization, "[t]he state attorney general has all common law powers of office, except insofar as they are restricted by statute[,] and the attorney general's duties are so numerous that the legislature does not attempt to identify each by statute." *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990).

### C. Petitioners' Skeletal Due-Process Challenge Is Unlikely to Succeed.

Petitioners' one-paragraph argument (at 16) that § 2265 is unconstitutional under the Due Process Clause does not demonstrate a likelihood of success. As an initial matter, petitioners' cursory constitutional argument does not cite any case law or the relevant legal standard, omissions "tantamount to failing to raise" it. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (discussing "[m]entioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones'").

Had petitioners articulated the relevant legal standard, their failure to show a likelihood of success would have been evident. They have not established the deprivation of a liberty or property interest, let alone that constitutionally inadequate "'procedural protections'" attended such a deprivation. *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017). Chapter 154 certification does not deprive individuals or their attorneys of the ability to pursue federal habeas actions; it merely effects a change from one set of procedural rules established by Congress to another set of rules. *See District Att'y's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (explaining that "due process does not dictate the exact form [postconviction-relief] assistance must assume" (citation modified)). And petitioners do not even attempt to support their startling contention that the Constitution forbids Congress from entrusting the Attorney General to evaluate the adequacy of a state system under a federal regime, while reserving to courts the power to make decisions in individual cases under that regime.

## II. The Equities Weigh Sharply Against a Stay.

**A.** To obtain a stay pending review, petitioners must identify irreparable harm that is "both certain and great," that "directly result[s] from the action" that petitioners seek to enjoin, and that would be prevented by

equitable relief. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

**1.** Supreme Court precedent forecloses petitioners' assertion that attorneys have a legal entitlement to know in advance whether Chapter 154 will apply in their clients' federal habeas actions. An attorney's interest in the juridical standards for the field of law in which she practices is not a legal entitlement that even satisfies the concrete-and-particularized-injury requirement of Article III standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 131-32 (2004); *Conn v. Gabbert*, 526 U.S. 286, 292-93 (1999). Thus, it does not constitute "great" irreparable harm. *Wisconsin Gas*, 758 F.2d at 674; *see Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995) (the "irreparable injury" inquiry "overlaps with the standing issue" because, "without adequate proof of a threatened injury, plaintiff lacks both standing and an adequate basis in equity for an injunction").

Petitioners attempt to concretize their alleged injuries by claiming that they feel compelled to take steps now because of their concerns over Chapter 154. The burden of participating in administrative proceedings and subsequent litigation alone does not constitute irreparable harm. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense,

even substantial and unrecoupable cost, does not constitute irreparable injury." (quotation marks omitted)).

As the Supreme Court has emphasized, finding such allegations sufficient would improperly "water[] down the fundamental requirements of Article III." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Relying in part on *Clapper*, the Ninth Circuit declined to recognize purported injuries almost identical to those petitioners assert here. *See Habeas Corpus Res. Ctr. v. U.S. DOJ*, 816 F.3d 1241, 1249-51 (9th Cir. 2016). In mandating dismissal of capital habeas counsel's challenge to the 2013 implementing regulations, the court determined that attorneys' "bare uncertainty" regarding "the applicability of Chapter 154 to their clients' federal habeas cases" could not support standing. *Id.* at 1250. This remained the case even if the specter of Chapter 154 "may cause [counsel] to ... change their litigation strategy to file their clients' federal habeas petitions within the six-month statute-of-limitations period prescribed by Chapter 154," because "[a]ssisting and counseling clients in the face of legal uncertainty is the *role* of lawyers" and lawyers thus do not "suffer a legally cognizable injury in fact when they take measures to protect their clients' rights or alter their litigation strategy amid legal uncertainty." *Id.*

Substituting Tennessee capital prisoners themselves in place of their attorneys does not improve petitioners' justification for a stay. The Supreme Court has held that a prisoner's desire to know, in advance of filing his federal habeas petition, whether the time limits of Chapter 154 will apply is not the type of legal entitlement that gives rise to a justiciable controversy. In *Calderon v. Ashmus*, 523 U.S. 740 (1998), California inmates challenged the prospective application of Chapter 154 to their then-unfiled federal habeas petitions. The Supreme Court deemed their challenge to Chapter 154 nonjusticiable because their desire "to know … the time limits that govern the habeas action" is not the type of legally protected interest the deprivation of which would constitute a cognizable injury. *Id.* at 746.

**2.** Moreover, a stay would not eliminate uncertainty going forward, as counsel will still face the prospect that the certification will survive this Court's review. Chapter 154 provides that "the effective date of the certification" is "[t]he date the mechanism … was established"—not the date the certification is upheld, 28 U.S.C. § 2265(a)(2), but does not resolve how that effective-certification date will apply in any individual case, *see* A254 (noting that "section 2265 dictates the effective date of a certification" but that "any individual habeas cases present[ing] retroactivity questions … may be raised to the federal courts adjudicating" individual petitions). Thus,

petitioners' concerns—that certification might (or might not) result in the application of expedited procedures to their cases, that they will not know in advance which procedures will apply, and that they must take precautions in case the certification survives judicial review—would not be redressed by a stay. Even with a stay, petitioners would still face the uncertainties of whether Chapter 154's procedures will apply. Indeed, petitioners' purported uncertainty-related harms would be aggravated by the relief petitioners request here, as holding this proceeding in abeyance will serve only to prolong the time until this Court issues its final order on Tennessee's certification.

**3.** Petitioners' delay tactics further undermine their claim to equitable relief. Petitioners waited 82 days after certification before moving for a stay and abeyance. "A stay is an equitable remedy, and '[e]quity must take into consideration … attempt[s] at manipulation'"; therefore, "before granting a stay, a … court must consider … the extent to which the [petitioner] has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004). The Court should not countenance petitioners' efforts at delay.

**B.** The balance of equities and the public interest, which "merge" in cases against the United States, *Nken*, 556 U.S. at 435, strongly counsel against a stay pending disposition of the petition for review.

**1.** Whenever the government "'is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). That injury is compounded by the nature of this statutory scheme, which reflects Congress's assessment of the public interest *expediting* federal habeas review. Congress enacted Chapter 154 against the backdrop of an "average delay between imposition and execution of a capital sentence [of] about 8 years"—a figure that has since ballooned to "around 20 years." Certification of Arizona Capital Counsel Mechanism, 85 Fed. Reg. 20705, 20719 (Apr. 14, 2020). Further delay exacerbates the problem Congress sought to address and is contrary to the public interest.

**2.** Although petitioners contend that no party is harmed by delay in implementing Chapter 154's procedures, the Supreme Court has rejected that view, emphasizing that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [capital] sentence." *Bucklew v. Precythe*, 587 U.S. 119, 149 (2019) (quotation marks omitted). When a challenge was brought against Arizona's Chapter 154 certification,

this Court denied a similar stay motion. *Fed. Pub. Def.*, 2020 U.S. App. LEXIS 19518, at *1-2. The Court should do so again.

## III. Abeyance Is Entirely Unwarranted.

This petition for review is the jurisdictionally appropriate vehicle for this Court to exercise its "exclusive jurisdiction" to review de novo the Attorney General's certification and entertain challenges petitioners previously attempted to bring through a district-court action. 28 U.S.C. § 2265(c); *see supra* p. 7. Yet despite now having the uncontested opportunity they earlier professed to want, petitioners now ask this Court *not* to resolve such challenges. Instead, petitioners would hold this proceeding in abeyance pending two jurisdictionally deficient challenges unlikely to resolve the questions petitioners tee up here. *See Bland v. Blanche*, No. 25-cv-03499, 2026 WL 1998552, at *5 (D.D.C. July 10, 2026) ("The court therefore lacks jurisdiction over Plaintiffs' claims because they might affect the D.C. Circuit's future jurisdiction over the eventual final determination on Tennessee's application."); *Federal Def. Servs. of E. Tenn., Inc. v. Skrmetti*, No. 26-0660-II, 2026 Tenn. Ch. LEXIS 1, at *15 (Tenn. Ch. Ct. May 28, 2026) ("The Court finds that sovereign immunity likely bars Plaintiffs' claim against Defendant, and that Plaintiffs do not appear to have standing[.]").

The Court should recognize petitioners' request for what it is: an improper effort at delay for delay's sake. Congress intended for the certification process "to curb the abuse of the habeas corpus process, and particularly to address the problem of delay and repetitive litigation in capital cases." H.R. Rep. No. 104-23, at 8 (1995). Tennessee has sought and the Attorney General has granted certification to effectuate Congress's decisions on that score, and there is no reason to defer resolution of petitioners' challenges to that certification. Consistent with the congressional focus on preventing unnecessary habeas-related delay in capital cases, this Court should deny petitioners' attempt to prolong this case.

## CONCLUSION

For the foregoing reasons, petitioners' motion should be denied.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

MELISSA N. PATTERSON
MCKAYE L. NEUMEISTER

*/s/ Douglas C. Dreier*
DOUGLAS C. DREIER
*Attorneys, Appellate Staff*
*Civil Division, Room 7264*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4452*
*douglas.c.dreier@usdoj.gov*

OCTOBER 2026

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,199 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E)) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*/s/ Douglas C. Dreier*
DOUGLAS C. DREIER

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Douglas C. Dreier*
DOUGLAS C. DREIER