**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., et al., | ) | |
| *Petitioners*, | ) | |
| v. | ) | No. 26-1229 |
| TODD BLANCHE, et al., | ) | |
| *Respondents*. | ) | |

# INTERVENOR STATE OF TENNESSEE'S OPPOSITION TO PETITIONERS' MOTION FOR STAY AND TO HOLD PETITION IN ABEYANCE

JONATHAN SKRMETTI
*Attorney General*
ZACHARY R. CLARK
*Director of Strategic Litigation*
REED N. SMITH
CALEB J. WALKER
*Assistant Attorneys General*
Office of Tennessee
Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 741-7403
Zachary.Clark@ag.tn.gov

*Counsel for Intervenor State of Tennessee*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

A. Legal Background. .......... 3

B. Procedural Background. .......... 5

C. The *Bland* Litigation. .......... 5

D. The *Skrmetti* Litigation. .......... 7

LEGAL STANDARDS .......... 8

ARGUMENT .......... 8

I. Petitioners Cannot Establish Irreparable Harm from Denial of a Stay. .......... 8

A. Petitioners' Unexplained Delay Weighs Against Any Finding of Irreparable Harm. .......... 10

B. Petitioners' Claimed Injuries Are Insufficient as a Matter of Law .......... 12

II. The Court Should not Hold the Petition in Abeyance. .......... 15

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Beame v. Friends of the Earth*,
434 U.S. 1310 (1977)....................10

*Bland v. Blanche*,
No. 1:25-cv-03499, 2026 WL 1998552 (D.D.C. July 10, 2026)..............6, 19, 20

*Bland v. Blanche*,
No. 25-cv-03499, Doc. 20 (D.D.C. Oct. 10, 2025) ....................6

*Boggs v. U.S. Dep't of Just.*,
No. CV-19-05238, 2020 WL 4464369 (D. Ariz. Aug. 4, 2020) ....................13

*Calderon v. Ashmus*,
523 U.S. 740 (1998)....................4, 16

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ....................10, 12

*Citizens for Resp. & Ethics in Wash. v. FEC*,
904 F.3d 1014 (D.C. Cir. 2018)....................9

*Coleman v. Thompson*,
501 U.S. 722 (1991)....................16

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................13

*Fed. Def. Servs. of E. Tenn., Inc. v. Skrmetti*,
No. 26-0660-II (Tenn. Chancery Ct. May 28, 2026)....................7, 13

*Fla. Audubon Soc. v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996)....................14

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975)....................10, 11, 12

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*,
816 F.3d 1241 (9th Cir. 2016) ....................4, 13

*Hirschfeld v. Bd. of Elections in City of New York*,
984 F.2d 35 (2d Cir. 1993) ........................................................ 10, 12

*KalshiEX LLC v. CFTC*,
119 F.4th 58 (D.C. Cir. 2024)........................................................8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)........................................................15

*Loritz v. U.S. Ct. of Appeals for the Ninth Cir.*,
382 F.3d 990 (9th Cir. 2004) ........................................................15

*Miller v. Mays*,
879 F.3d 691 (6th Cir. 2018), *reh'g en banc denied* (Mar. 14, 2018), *cert. denied*, 586 U.S. 1022 (2018) ........................................15

*Miss. Band of Choctaw Indians v. Holyfield*,
490 U.S. 30 (1989)........................................................18

*Nat'l Min. Ass'n v. Jackson*,
768 F. Supp. 2d 34 (D.D.C. 2011)........................................................9

*Ng v. Bd. of Regents of Univ. of Minn.*,
64 F.4th 992 (8th Cir. 2023) ........................................................10

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................8, 9

*NLRB v. Nat. Gas Util. Dist. of Hawkins Cnty.*,
402 U.S. 600 (1971)........................................................18

*Office of the Fed. Pub. Def. for the Dist. of Ariz. v. Barr*, No. 20-1144
(D.C. Cir. June 8, 2020)........................................................1

*Pennsylvania v. Finley*,
481 U.S. 551 (1987)........................................................3

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983)........................................................10

*Shinn v. Ramirez*,
596 U.S. 366 (2022)........................................................3

*State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*,
931 F.3d 499 (6th Cir. 2019) .......................................................................17

*Tex. Def. Serv. v. U.S. Dep't of Just.*,
No. CV 18-426, 2019 WL 1538250 (D.D.C. Apr. 9, 2019)...............................13

**Statutes**

28 U.S.C. § 2241, *et seq.*..........................................................................3

28 U.S.C. § 2261(a)-(b) ..........................................................................4

28 U.S.C. §§ 2262-64..............................................................................4

28 U.S.C. § 2266 ....................................................................................4

28 U.S.C. § 2265(a)(1)...........................................................................4, 17

28 U.S.C. § 2265(a)(3)............................................................................18

Tenn. Code Ann. § 8-6-110 ....................................................................17

Tenn. Code Ann. § 8-6-109(b)(1) ...........................................................17

Tenn. Code Ann. § 8-6-109(e)................................................................17

**Regulations**

28 C.F.R. § 26.21 ...................................................................................17

28 C.F.R. § 26.22 ....................................................................................4

**Other Authorities**

Certification of Tennessee Capital Counsel Mechanism, Dep't of
Justice, 91 Fed. Reg. 42,761 (July 10, 2026)..........................................5, 11

## INTRODUCTION

Petitioners' motion to stay the U.S. Attorney General's certification of Tennessee's mechanism for the appointment of postconviction counsel in capital cases and hold their Petition in abeyance pending the outcome of their other suits should be denied for the reasons stated in Respondents' opposition. Intervenor the State of Tennessee files this separate response to emphasize that the motion should also be denied because, as Petitioners' litigation tactics show, they face no threat of irreparable harm, and their separate suits provide no basis to hold the Petition in abeyance. This Court refused to stay Arizona's certification in a similar prior proceeding, and the Court should do the same here. *See Office of the Fed. Pub. Def. for the Dist. of Ariz. v. Barr*, No. 20-1144 (D.C. Cir. June 8, 2020) (per curiam).

Petitioners know how to act quickly when they think it will benefit them. Different combinations of Petitioners have filed two separate lawsuits related to Tennessee's certification. *Bland v. Blanche*, No. 25-cv-3499 (D.D.C.); *Fed. Def. Servs. of E. Tenn., Inc. v. Skrmetti*, No. 26-0660-II (Tenn. Chancery Ct.). In both cases, Petitioners sought emergency injunctive relief the same day they filed suit. And, both times, the courts denied relief for (among other things) failure to show irreparable harm from Tennessee's certification.

But here, when Tennessee was certified on July 10, 2026, Petitioners did *nothing* for nearly three months. They did not file their petition for review until

September 4, and they did not move for a stay until September 30. Petitioners' inexplicable delay—particularly when juxtaposed with their actions in related litigation—belies any claim that Petitioners face irreparable harm now.

Similarly groundless is Petitioners' request that, if a stay is granted, this proceeding should be held in abeyance pending the resolution of their other lawsuits. Neither the *Bland* appeal nor *Skrmetti* could be resolved in a way that obviates the need for this Court to address the Petition. Although Petitioners claim that a merits decision in *Skrmetti* "could eliminate the need for this Court to reach the constitutional issues raised" in the Petition, Mot. at 23, they told the Tennessee Chancery Court the exact opposite. There, in an attempt to avoid dismissal, they said that the *Skrmetti* proceeding presents an "*entirely distinct* question" from the Petition here, such that Tennessee's certification "will remain valid unless and until the D.C. Circuit vacates it." Ex. 1 (Excerpt of *Skrmetti* Pltfs.' Opp. to Mot. to Dismiss) at 50, 52 (emphasis added). And the *Bland* appeal concerns only "[w]hether the order of the district court dismissing th[e] case for lack of jurisdiction should be reversed because the district court has jurisdiction under 28 U.S.C. § 1331." Appellants' Statement of Issues, *Bland v. Blanche*, No. 26-5305 (D.C. Cir. Sept. 28, 2026). Because neither the *Bland* appeal nor *Skrmetti* can resolve the Petition, holding the Petition in abeyance would only unnecessarily prolong this proceeding.

For these reasons and the reasons given in Respondents' opposition, Petitioners' motion should be denied.

## BACKGROUND

### A. Legal Background.

Federal habeas corpus proceedings provide a mechanism for prisoners in state custody to challenge the constitutionality of their convictions or sentences in federal court. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets out the substantive and procedural requirements for prisoners to obtain federal habeas relief. *Shinn v. Ramirez*, 596 U.S. 366, 377-78 (2022); *see generally* 28 U.S.C. § 2241, *et seq*.

Under AEDPA, a State can utilize more streamlined and efficient procedures in capital cases if the State has a mechanism for appointing counsel in state-court postconviction proceedings. The Constitution does not require States to provide counsel for postconviction proceedings in capital cases. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). So, in 1996, Congress enacted a quid pro quo in Title 28, Chapter 154 of the U.S. Code ("Chapter 154") wherein States appointing competent counsel for such cases would benefit from swifter resolution of federal habeas corpus proceedings. Chapter 154's procedures expedite resolution of federal habeas proceedings by, for example, shortening "the statute of limitations for filing a federal habeas petition … from one year to six months from the date of final judgment of

the state courts on direct appeal" and requiring "federal courts [to] give priority status to … habeas case[s] and resolve [them] within" specified time periods. *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1245 (9th Cir. 2016); *see* 28 U.S.C. §§ 2262-64, 2266; *see also Calderon v. Ashmus*, 523 U.S. 740, 742 (1998) (summarizing Chapter 154's "procedural advantages" for "qualifying States").

For Chapter 154's procedures to apply, a State must first obtain certification from the U.S. Attorney General that it has a "mechanism for providing counsel in postconviction proceedings" for capital prisoners that meets certain requirements. 28 U.S.C. § 2261(a)-(b). Specifically, the U.S. Attorney General must certify:

1. "[T]he State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death;"

2. "[T]he date on which the mechanism … was established; and"

3. "[T]he State provides standards of competency for the appointment of counsel in [such] proceedings."

*Id.* § 2265(a)(1)(A)-(C) (certification requirements); *see also* 28 C.F.R. § 26.22 (implementing regulations).

### B. Procedural Background.

On June 6, 2025, Tennessee—through the Tennessee Attorney General—applied for certification, and, on July 10, 2026, the U.S. Attorney General certified Tennessee's postconviction capital counsel mechanism under Chapter 154. Certification of Tennessee Capital Counsel Mechanism, Dep't of Justice, 91 Fed. Reg. 42,761 (July 10, 2026).

On September 4, 2026, Petitioners initiated this proceeding by filing a petition for review of the U.S. Attorney General's certification. Petitioners moved to stay these proceedings on September 30, 2026.

### C. The *Bland* Litigation.

Petitioners first initiated litigation over Tennessee's certification long before certification actually happened. On September 30, 2025, the Federal Defenders, Mr. Bland, Mr. Miller, and another capital prisoner filed suit against the U.S. Attorney General and the Department of Justice in the United States District Court for the District of Columbia, challenging the constitutionality of AEDPA's delegation of certification authority to the U.S. Attorney General. They raise some of the same claims in *Bland* that they now claim they will prevail on in this proceeding, namely that the certification process "(1) … violates the Fifth Amendment's Due Process Clause because the Attorney General is an inherently biased decisionmaker, and (2) … violates the separation of powers because granting the Attorney General such

authority 'encroaches upon core judicial functions under Article III to decide habeas corpus petitions.'" *Bland v. Blanche*, No. 1:25-cv-03499, 2026 WL 1998552, at *1 (D.D.C. July 10, 2026); *compare* Mot. at 16 (claiming they are likely to succeed because the U.S. Attorney General is "an unconstitutionally biased decision maker" and "[t]he delegation of authority to [him] … encroaches upon the powers of Article III courts").

The *Bland* plaintiffs moved for a temporary restraining order to enjoin the U.S. Attorney General from certifying Tennessee, and the district court denied the motion. Order at 4-6, *Bland v. Blanche*, No. 25-cv-03499, Doc. 20 (D.D.C. Oct. 10, 2025). The court held that the plaintiffs "ha[d] not demonstrated that they will suffer irreparable harm" and that the court likely lacked jurisdiction, as AEDPA mandates that the D.C. Circuit has "exclusive jurisdiction" to review the U.S. Attorney General's certification decision. *Id.* at 2-6.

Defendants moved to dismiss and, in July 2026, the district court granted the motion. *Bland*, 2026 WL 1998552, at *5. The court held that it was "bound to conclude that it lacks jurisdiction over Plaintiffs' claims" because the D.C. Circuit has exclusive jurisdiction over challenges to Tennessee's certification and any "claims that might affect its future jurisdiction to review [the U.S. Attorney General's] final decision." *Id.* at *2, *4.

The plaintiffs filed an appeal in this Court that is currently pending, and the sole issue is "[w]hether the order of the district court dismissing th[e] case for lack of jurisdiction should be reversed because the district court has jurisdiction under 28 U.S.C. § 1331." Appellants' Statement of Issues, *Bland v. Blanche*, No. 26-5305 (D.C. Cir. Sept. 28, 2026).

**D. The *Skrmetti* Litigation.**

The Federal Defenders, Mr. Bane, and Mr. Bland have also challenged Tennessee's certification in Tennessee state court. On May 21, 2026, the Federal Defenders sued the Tennessee Attorney General in Tennessee Chancery Court, alleging that he lacked authority under Tennessee state law to request certification. They also sought a temporary injunction ordering the Tennessee Attorney General to withdraw the certification request. Ex. 2 (*Skrmetti* Temp. Inj. Order) at 1.

On May 28, 2026, the Tennessee Chancery Court denied the motion because "sovereign immunity likely" applies, the Federal Defenders "likely d[id] not have standing," and they also had "not established they w[ould] suffer irreparable harm" if Tennessee were certified. *Id.* at 7, 10.

The Federal Defenders—now joined by Mr. Bane and Mr. Bland—then filed an Amended Complaint on July 17, 2026. The Tennessee Attorney General moved to dismiss, and the motion is set for argument on October 23, 2026.

## LEGAL STANDARDS

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). Four factors govern: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The party requesting a stay bears the burden of showing that" these factors "justify" a stay. *Id.* at 433-34.

## ARGUMENT

Petitioners' Motion should be denied because their unexplained months-long delay dispels any notion that they are at risk of irreparable injury and their asserted injuries are not cognizable in the first place. Separately, the Court should not hold the Petition in abeyance because neither the *Skrmetti* litigation nor *Bland* appeal will resolve the issues presented in the Petition, and swift resolution of the Petition benefits all parties alike.

### I. Petitioners Cannot Establish Irreparable Harm from Denial of a Stay.

"[A] showing of irreparable harm is a necessary prerequisite for a stay." *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024). "[P]roving 'irreparable'

injury is a considerable burden, requiring proof that the movant's injury is *'certain, great and actual*—not theoretical—and *imminent,* creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (quoting *Power Mobility Coal. v. Leavitt,* 404 F. Supp. 2d 190, 204 (D.D.C. 2005)); *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) ("Irreparable harm must be 'both certain and great[,]' and 'actual and not theoretical.'" (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985))).

"[S]imply showing some possibility of irreparable injury fails to satisfy [this] factor." *Nken*, 556 U.S. at 434-35 (internal quotation marks and citation omitted). Put another way, alleged irreparable injuries must "rise beyond the speculative level." *Citizens for Resp. & Ethics in Wash.*, 904 F.3d at 1019.

Petitioners' Motion fails to establish irreparable harm for the reasons given by Respondents. In addition, their unexplained delay of nearly three months in seeking a stay weighs strongly against any notion that they face imminent risk of irreparable injury. Independently, their alleged injuries tied to the Federal Defenders' expenditure of resources and the theoretical application of Chapter 154 to the individual Petitioners are insufficient.

### A. Petitioners' Unexplained Delay Weighs Against Any Finding of Irreparable Harm.

Petitioners' delay in seeking a stay weighs strongly against any determination that they are at imminent risk of irreparable harm. A "failure to act with … dispatch tends to blunt [a] claim of urgency and counsels against the grant of a stay." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983) (Blackmun, J., in chambers). Hence federal courts have regularly found an absence of irreparable harm on the basis that movants waited months—or even just weeks—to seek relief. *See, e.g.*, *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) (four months); *Ruckelshaus*, 463 U.S. at 1318 (seven weeks); *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 37-39 (2d Cir. 1993) (nearly one month); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (roughly six weeks). And when a delay so thoroughly undercuts a showing of irreparable harm, courts have held that there is no need to analyze the remaining factors. *See, e.g.*, *Ng v. Bd. of Regents of Univ. of Minn.,* 64 F.4th 992, 998-99 (8th Cir. 2023) (where "delay was unreasonable and … it consequently defeated [plaintiff's] goal of preventing irreparable harm," the court "need proceed no further in analyzing the [relevant] factors"); *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir. 1985) ("delay [of more than ten weeks] alone may justify denial" of injunctive relief).

Take *Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975), as an example. There, despite having notice that the comment period was ending for the proposed regulations they opposed, the plaintiffs "delayed bringing any action until 44 days later, when the final regulations were issued"—a delay this Court found "to be inexcusable." *Id.* at 987. Accordingly, this Court affirmed the denial of an injunction. *Id.* at 987-88.

Here, Petitioners' delay of nearly three months from Tennessee's certification weighs strongly against their claim of irreparable injury. Petitioners waited eight weeks after the U.S. Attorney General certified Tennessee's postconviction capital counsel mechanism before filing their petition for review. *See* Certification of Tennessee Capital Counsel Mechanism, Dep't of Justice, 91 Fed. Reg. 42,761 (July 10, 2026). And they waited nearly four more weeks to seek a stay. Petitioners' nearly three-month delay wholly undercuts Petitioners' alleged need for a stay of Tennessee's certification. *See, e.g.*, *Fund for Animals*, 530 F.2d at 987. This is especially true where Petitioners previously (in *Bland* and *Skrmetti*) sought, albeit unsuccessfully, emergency relief without *any* delay.

Petitioners may claim that they did not seek a stay earlier because they did not realize Chapter 154 might be raised in federal habeas proceedings until it was brought up in the *Pruitt* proceeding. Petitioners' earlier claims of irreparable injury from Tennessee's certification in both *Bland* and *Skrmetti*, however, disprove that.

Regardless, Petitioners' delay from when Chapter 154 was raised in the *Pruitt* proceeding is alone enough to deny the stay, as it was first mentioned in that proceeding on August 24, 2026, Answer to Amend. Pet., *Pruitt v. Nelsen*, No. 2:22-CV-02855, Doc. 55 (W.D. Tenn. Aug. 24, 2026), and yet Petitioners still waited more than a month to seek a stay from this Court. *See, e.g.*, *Hirschfeld*, 984 F.2d at 38-39; *Fund for Animals*, 530 F.2d at 987.

Petitioners' unexplained decision to wait months to seek a stay entirely undermines any grounds they would otherwise have for the extraordinary "drastic" relief they now request. *See Citytrust*, 756 F.2d at 276.

**B. Petitioners' Claimed Injuries Are Insufficient as a Matter of Law.**

Two courts have already denied Petitioners preliminary injunctive relief related to Tennessee's certification for failure to show irreparable harm. Petitioners' third attempt fares no better.

Here, Petitioners allege two different types of potential irreparable injury: (1) the expenditure of resources from "immediately investigat[ing] and prepar[ing] to litigate whether and how Chapter 154 applies" and (2) the potential application of Chapter 154 in the individual Petitioners' habeas proceedings. Mot. at 17-20.

Both the *Bland* and *Skrmetti* courts correctly held that the first category of injury—expenditure of resources—is simply not irreparable harm as a matter of law. Order at 5, *Bland v. Blanche*, No. 25-cv-3499 (D.D.C. Oct. 10, 2025) ("[T]he time

and expense of litigation, 'even substantial and unrecoupable cost[s], does not constitute irreparable injury." (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980))); Ex. 2 (*Skrmetti* Temp. Inj. Order) at 10 ("[T]he time and expense of litigation does not constitute irreparable injury."). Indeed, "expend[ing] considerable time, energy, and resources" in response to government action is not a cognizable injury at all. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (addressing standing). Hence multiple courts in the context of Chapter 154-related litigation have held that "chang[ing] [one's] litigation strategy" and other costs accompanied with investigating and litigating habeas petitions under Chapter 154 are not cognizable harms. *Habeas Corpus Res. Ctr.*, 816 F.3d at 1250-51; *Boggs v. U.S. Dep't of Just.*, No. CV-19-05238, 2020 WL 4464369, at *4 (D. Ariz. Aug. 4, 2020) (similar); *Tex. Def. Serv. v. U.S. Dep't of Just.*, No. CV 18-426, 2019 WL 1538250, at *7 (D.D.C. Apr. 9, 2019) (similar).

For the second category—injuries from the application of Chapter 154's procedures to the individual Petitioners' habeas petitions—Petitioners do not show Chapter 154 will ever actually be applied to them, let alone in a way that would cause them to not obtain habeas relief. Although Chapter 154 was raised in Mr. Pruitt's habeas proceeding, Petitioners acknowledge that the district court in that proceeding has already "stayed Mr. Pruitt's proceedings pending this litigation," Mot. at 17, so he faces no risk of having Chapter 154 applied to his habeas petition

until this proceeding concludes. Order at 2, *Pruitt v. Nelson*, No. 2:22-cv-02855 (W.D. Tenn. Sept. 24, 2026) (ordering that "proceedings on the merits are **STAYED** pending the Court of Appeals of the District of Columbia Circuit's resolution of" the Petition).

Both Mr. Bane's and Mr. Bland's habeas petitions are stayed pending state court proceedings that Petitioners don't allege will end any time soon, and Mr. Miller and Mr. Clayton haven't even filed federal habeas petitions yet. Mot. at 17-18. Thus, no Petitioner even alleges they are likely to have Chapter 154's procedures applied to them at any imminent time in the future. Even when their habeas proceedings resume or begin, they may ask the district courts hearing their habeas petitions to stay those proceedings just as Mr. Pruitt did. Petitioners present no reason why this Court must stay Tennessee's certification when the district courts deciding Petitioners' habeas claims have already shown that they are more than capable of addressing this issue.

Even if Petitioners had established that Chapter 154's procedures will be imminently applied to the individual Petitioners, they fail to allege Chapter 154's applications will cause irreparable harm. Petitioners must show that application of Chapter 154's procedures "will cause the essential injury to [their] own interest[s]," *i.e.*, the individual Petitioners' habeas petitions will be prejudiced. *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996). The mere application of different

procedures is not an injury in fact: "a litigant must show how he or she was actually injured by a particular … rule." *Loritz v. U.S. Ct. of Appeals for the Ninth Cir.*, 382 F.3d 990, 992 (9th Cir. 2004). Yet Petitioners never show how "the outcome of [the individual Petitioners'] particular case[s]" will be "affected" such that "the court[s] adjudicating [their] habeas appeal[s] w[ill] … rule[] differently." *Id.* Thus, for this reason, too, they have not established an imminent risk of irreparable harm.

## II. The Court Should not Hold the Petition in Abeyance.

The Court should not hold the Petition in abeyance pending completion of *Skrmetti* and the *Bland* appeal. Doing so would harm all parties, and neither matter's resolution can obviate the need for this Court to review the Petition. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). This is not such a circumstance.

Holding this proceeding in abeyance would harm every party, including Petitioners. Tennessee has a significant interest in the speedy resolution of the Petition so the State may use Chapter 154's streamlined procedures without hindrance. As discussed in Tennessee's now-granted Motion to Intervene, "[t]here is no question that Tennessee has an interest in the finality of its judgments," *Miller v. Mays*, 879 F.3d 691, 700 (6th Cir. 2018), *reh'g en banc denied*, (Mar. 14, 2018), *cert. denied*, 586 U.S. 1022 (2018), and the U.S. Attorney General's certification

furthers that interest by enabling Tennessee to utilize Chapter 154's "expedited review process," *Calderon*, 523 U.S. at 742. Tennessee "pays the price in terms of the uncertainty and delay added to the enforcement of its criminal laws" by protracted capital proceedings, *Coleman v. Thompson*, 501 U.S. 722, 738-39 (1991), and Chapter 154's streamlined procedures lower that price. But, as Petitioners acknowledge, the only court in which Chapter 154 has been raised has stayed briefing and argument until this proceeding is resolved. Mot. Add.497-98.

Petitioners, too, claim an urgent need to resolve the uncertainty that will exist until their Petition is resolved. They claim irreparable harm from "uncertainty that has followed certification," as the Federal Defenders pursue "three-track litigation" to address different potential outcomes depending on whether Tennessee's certification is vacated. Mot., Ex. A ¶ 18; Mot., Ex. C ¶ 15. Thus, swift resolution of this proceeding benefits all parties alike.

Petitioners point to no compelling reason to stop this proceeding. The Motion (at 22) urges abeyance only "[i]f this Court grants the requested stay." Because that stay should be denied, so too should Petitioners' request for abeyance.

Even if a stay were granted, the Motion cites only the pending litigation in *Skrmetti* and *Bland* as the basis for abeyance—but the outcomes of *Skrmetti* and the *Bland* appeal cannot impact resolution of the Petition here. Petitioners say *Skrmetti* will resolve whether the Tennessee Attorney General's "request for certification was

extra-statutory and unconstitutional" under Tennessee state law and will allow this Court to avoid resolving "uncertain issue[s] of state law." Mot. at 22-23. But the Tennessee Attorney General's state-law authority to request certification has no bearing whatsoever on the validity of the U.S. Attorney General's certification. Chapter 154 and its implementing regulations require only that "an appropriate State official" "request[]" certification, 28 U.S.C. § 2265(a)(1), and "Appropriate State official means the State attorney general" unless "the State attorney general does not have responsibility for Federal habeas corpus litigation." 28 C.F.R. § 26.21.

The Tennessee Attorney General undisputedly satisfies these requirements—he is, obviously, "the State attorney general" and has sole "responsibility for Federal habeas corpus litigation." *See State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 515-16 (6th Cir. 2019) (discussing the Tennessee Attorney General's "exclusive authority" over all federal and civil litigation).[1] Petitioners in *Skrmetti* have acknowledged the Tennessee Attorney General's "authority to defend against federal habeas petitions." Mot. Add.183 ¶ 78 (*Skrmetti* Am. Compl.).

---

[1] *See also* Tenn. Code Ann. § 8-6-110 ("The attorney general and reporter shall … prosecute or defend, as the case may be, any and all suits, civil or criminal," in federal court.); *id.* § 8-6-109(b)(1) (making the Tennessee Attorney General responsible for "[t]he trial and direction of all civil litigated matters … in which the state or any officer, department, agency, board, commission or instrumentality of the state may be interested"); *id.* § 8-6-109(e) (acknowledging "the attorney general and reporter [as] … the state's sole representative in federal and state court [civil] proceedings").

The Tennessee Attorney General had additional authority under state law to request certification under Chapter 154, but that issue has nothing to do with whether he is an "appropriate State official" under federal law. Chapter 154 has "no requirements for certification or for application … other than those expressly stated." 28 U.S.C. § 2265(a)(3). No part of Chapter 154 requires an "appropriate State official" to have state-law authority to request certification. Further, "[f]ederal, rather than state, law governs the determination" of whether an entity meets a federal definition or eligibility requirements, "in the absence of a plain indication" Congress intended otherwise. *NLRB v. Nat. Gas Util. Dist. of Hawkins Cnty.*, 402 U.S. 600, 602-03 (1971) (internal quotation marks omitted) (federal law, not state law, governed "whether an entity created under state law is a 'political subdivision' of the State" under National Labor Relations Act); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43-47 & n.22 (1989) (similar). Congress gave no such indication state law should govern here and in fact expressly disclaimed that it was imposing any additional requirements like Petitioners seek to apply. *See* 28 U.S.C. § 2265(a)(3).

In any event, Petitioners in *Skrmetti*—represented by some of the same counsel as Petitioners here—have told the Tennessee Chancery Court that *Skrmetti* presents an "entirely distinct question" from what is at issue in this proceeding, and they have acknowledged that the Tennessee Chancery Court's resolution of *Skrmetti*

will "by no means [be] binding" on this Court. Ex. 1 (Excerpt of *Skrmetti* Pltfs.' Opp. to Mot. to Dismiss) at 50, 52. Thus, as Petitioners have conceded in *Skrmetti*, resolution of the *Skrmetti* litigation will not, and cannot, obviate the need for this Court's review of the Petition.

The *Bland* appeal is even further afield. The sole issue there is "[w]hether the order of the district court dismissing th[e] case for lack of jurisdiction should be reversed because the district court has jurisdiction under 28 U.S.C. § 1331." Appellants' Statement of Issues, *Bland v. Blanche*, No. 26-5305 (D.C. Cir. Sept. 28, 2026); *see Bland*, 2026 WL 1998552, at *2 (holding the district court "lack[ed] statutory jurisdiction" given this Court's "'exclusive jurisdiction' over '[t]he determination by the Attorney General regarding whether to certify a State'" (alteration in original) (quoting 28 U.S.C. § 2265(c))). Whether the district court in *Bland* had jurisdiction does not resolve or address anything at issue in this proceeding regarding whether the U.S. Attorney General properly certified Tennessee's mechanism for appointment of postconviction counsel.

Petitioners say (at 23) that letting *Bland* resolve first would "avoid[] the risk of duplicative litigation and inconsistent appellate rulings," but this gets things precisely backwards. *Bland* will address the merits of the claims raised there *only if* this Court reverses the district court's jurisdictional holding, in which case the litigation will continue in the district court potentially for years. But Petitioners raise

the same substantive claims here that are at issue in *Bland*, as their Motion acknowledges.[2] It is far more efficient for this Court to resolve the Petition because, in the unlikely event *Bland* is reversed and remanded, the Court's decision in this proceeding will resolve the issues presented in *Bland*—and it will do so years before the *Bland* litigation reaches an end.

For these same reasons, Petitioners are wrong to say abeyance would serve judicial economy. Resolution of the Tennessee Attorney General's state-law authority in *Skrmetti* and the scope of this Court's exclusive jurisdiction in *Bland* will not—and cannot—impact this Court's resolution of the Petition. Indeed, any appeal to judicial economy rings hollow where Petitioners' gamesmanship is the sole reason three different suits related to Tennessee's certification are currently pending. Thus, holding this litigation in abeyance would only harm the parties and delay resolution of litigation over Tennessee's certification.

At most, for judicial efficiency, the Court should set the Petition in this matter and *Bland* on identical briefing schedules and have them heard by the same panel.

---

[2] *Compare* Mot. at 16 ("The delegation of authority to the Attorney General flouts the Due Process Clause's guarantees of impartiality, disinterest, and independence, and encroaches upon the powers of Article III courts."), *with Bland*, 2026 WL 1998552, at *1 ("alleg[ing] that vesting certification authority in the [U.S.] Attorney General … violates the Fifth Amendment's Due Process Clause because the Attorney General is an inherently biased decisionmaker, and … violates the separation of powers … [by] encroach[ing] upon core judicial functions under Article III to decide habeas corpus petitions." (internal quotation marks omitted)).

## CONCLUSION

Tennessee respectfully requests that the Court deny Petitioners' motion.

Date: October 13, 2026

Respectfully submitted,

JONATHAN SKRMETTI
*Attorney General and Reporter*

/s/ *Zachary Clark*
ZACHARY R. CLARK
*Director of Strategic Litigation*
REED N. SMITH
CALEB J. WALKER
*Assistant Attorneys General*
Office of Tennessee
Attorney General & Reporter
P.O. Box 20207
Nashville, Tennessee 37202
Zachary.Clark@ag.tn.gov
(615) 741-7403

*Counsel for Intervenor State of Tennessee*

## CORPORATE DISCLOSURE STATEMENT

The State of Tennessee is a governmental entity not subject to corporate disclosures under Fed. R. App. P. 26.1(a) and D.C. Cir. R. 26.1(a).

## CERTIFICATE OF PARTIES

The current parties are petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, John Michael Bane, Andre Bland, Sedrick Clayton, Urshawn Miller, and Corinio Pruitt; respondents Todd Blanche, United States Attorney General, and the United States of America; and intervenor the State of Tennessee.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Opposition complies with Fed. R. App. P 27(d)(1)(E), because it was prepared with 14-point Times New Roman font, a proportionally spaced typeface, and Fed. R. App. P. 27(d)(2)(A), because it contains 4,484 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

/s/ *Zachary Clark*
ZACHARY R. CLARK

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Zachary Clark*
ZACHARY R. CLARK

# EXHIBIT 1

E-FILED
9/30/2026 11:09 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

**IN THE CHANCERY COURT FOR DAVIDSON COUNTY**
TWENTIETH JUDICIAL DISTRICT
THE STATE OF TENNESSEE

FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE, ANDRE BLAND, JOHN MICHAEL BANE, STEPHEN FERRELL,

*Plaintiffs*,

v.

JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter,

*Defendant*.

Case No. 26-0660-II

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (D.E. 25)**

**V. This Court has jurisdiction to decide this case.**

Lacking sovereign immunity and facing Plaintiffs with standing to challenge his unlawful certification request, the TN-AGR makes one final attempt to insulate his conduct from state court review. He asserts that reviewing the TN-AGR's compliance with state law intrudes upon the D.C. Circuit's "exclusive jurisdiction" to review the US-AG's Certification Decision. MTD at 22–23 (quoting 28 U.S.C. § 2265(c)(1)–(2) ("Section 2265(c)")). It would not.

Congress vested the D.C. Circuit with "exclusive jurisdiction" to review the "***determination*** by the [U.S.] Attorney General regarding whether to certify a State[.]" 28 U.S.C. § 2265(c). But Section 2265(c) says nothing about the state initiation of the certification process, and Congress never intended to strip state courts of the right to decide state law questions. Indeed, the plain text of the statute confines the D.C. Circuit's exclusive jurisdiction to the discrete question of whether the US-AG's decision to grant certification was proper. *id.* at § 2265(c)(1)–(2); *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491–92 (1991) (analyzing a similar statute and concluding that "the reference to 'a determination' describes a single act" and, thus, the statute referred to the "direct review" of individual determinations "rather than … referring to general collateral challenges to unconstitutional practices and policies used by the agency in processing applications").

Plaintiffs agree that the D.C. Circuit possesses exclusive jurisdiction to review the US-AG's certification determination, but this Court has full jurisdiction over the entirely distinct question over whether the TN-AGR possessed authority under Tennessee law to ***initiate*** the certification process in the first place. As the Supreme Court has recognized, whether or not a grant of exclusive jurisdiction prohibits state court action "depend[s] on the particular claims a suitor makes in a state court[.]" *Pan Am. Petroleum Corp. v. Superior Ct. of Del.*, 366 U.S. 656, 662 (1961). Plaintiffs allege that the TN-AGR—a state official—lacked authority under Tennessee law

to request certification unilaterally on behalf of the State. A ruling by this Court on the TN-AGR's authority under Tennessee law will not encroach upon the D.C. Circuit's jurisdiction, and thus such review is permissible. *Cf. Nat'l Ass'n of Mfrs. v. DOD*, 583 U.S. 109, 129 (2018) (holding that the court of appeals' statutory exclusive jurisdiction over specific EPA actions does not extend to challenges to an EPA rule as no "extratextual considerations" supported "depart[ing] from the statute's plain language").

Contrary to the TN-AGR's reading, *see* MTD at 22–23, this grant of exclusive jurisdiction does not extend to every conceivable legal question underpinning the process by which the Certification Request reached the US-AG's desk. That construction would transform a narrow jurisdictional grant—limited by its own terms—into a sweeping bar. The statute does not support that reading, and no authority the TN-AGR cites compels it. The TN-AGR's principal case, *Bland*, *v. Blanche* (*Bland II*), 2026 WL 1998552 (D.D.C. July 10, 2026), certainly does not. As an initial matter, *Bland II* is currently on appeal to the D.C. Circuit, and its reasoning and holding remain subject to reversal or modification. *See* Notice of Appeal, *Bland v. Blanche*, No. 26-5305, D.E. 2 (D.C. Cir. filed Aug. 27, 2026). In any event, to the extent *Bland II*'s holding is correct, it is readily distinguishable. In *Bland II*, the plaintiffs made a ***direct*** challenge to Chapter 154's statutory framework—that is, they alleged that the grant of authority to the US-AG to certify states under Chapter 154 violates due process and the federal separation of powers. *Bland II*, 2026 WL 1998552 at *1. As explained above, this action is categorically different: Plaintiffs raise state-law questions regarding the TN-AGR's authority to request certification, not the US-AG's power to certify a state. The TN-AGR's remaining authority, *Barnes v. U.S. Bank Nat'l Ass'n*, is inapposite: the court precluded the state court from exercising jurisdiction because the suit sought to adjudicate funds that were part of a bankruptcy estate pending in federal court. 2017 WL 213986, at *4 (Tenn. Ct.

App. Jan. 18, 2017). No similar concern regarding concurrent jurisdiction over the same *res* exists here, where the suit is *in personam*.

Notably, the TN-AGR has failed to articulate how this action would "implicate" the D.C. Circuit's exclusive jurisdiction, "affect [the D.C. Circuit's] future statutory power of review," or "nullify" the Certification Decision. MTD at 22–23. And for good reason: it would not. This case does not risk encroaching upon or impacting the D.C. Circuit's ability to review the US-AG's Certification Decision, and the US-AG's Certification Decision will remain valid unless and until the D.C. Circuit vacates it. Nor would injunctive or declaratory relief from this Court "effectively nullify" Tennessee's certification. MTD at 23. A decision from this Court that the TN-AGR lacked authority to initiate the certification process may be persuasive to the D.C. Circuit in its analysis of one issue before it—whether the certification was initiated by an "appropriate State official, 28 U.S.C. § 2265(a)(1)—but it is by no means binding under ordinary *Erie* principles. *See, e.g.*, *King v. Order of United Com. Travelers*, 333 U.S. 153, 161 (1948) (holding that a trial court decision on state law is not binding on a federal court). Indeed, the Supreme Court has confirmed as much.

In *Becher v. Contoure Laboratories, Inc.*, an individual obtained a state court judgment requiring the opposing party to assign him a contested patent—notwithstanding that suits arising under patent law fall within the exclusive jurisdiction of the federal courts. 279 U.S. 388, 390–91 (1929). The Court held that because the state suit resolved questions of state law—namely, contractual obligations—the action did not "arise under" the federal patent laws subject to exclusive federal jurisdiction even though the determination had collateral estoppel effect and foreclosed suit. *Id.* at 391–92. If collateral estoppel arising from a state court's resolution of state-law questions does not impermissibly intrude upon exclusive federal jurisdiction when it entirely forecloses the federal suit, then a state court judgment on the state-law question of the TN-AGR's

authority cannot encroach upon the D.C. Circuit's exclusive jurisdiction, particularly where it would not foreclose the D.C. Circuit's review but would—at most—inform one element of its analysis.

**VI. The TN-AGR lacks authority to seek certification.**

As discussed above, while the Tennessee Constitution provides "for the appointment of the attorney general," Tenn. Const. art. VI, § 5, it does not "prescribe [his] duties." *State v. Spurgeon*, 47 S.W. 235, 236 (Tenn. 1897). However, given the TN-AGR's historical, non-constitutional role, whereby his "powers and duties" were originally "fixed" by statute, *id.*, courts have long held that the TN-AGR's constitutional authority is "primarily determined by statute." *McKay*, 2024 WL 4404318, at *6. Although the Tennessee Supreme Court has recognized that the TN-AGR also possesses some "common law powers of office," those powers may be "restricted by statute" as well. *State v. Chastain*, 871 S.W.2d 661, 664 (Tenn. 1994) (quoting *State v. Heath,* 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990)).

Here, the TN-AGR cannot point to a single statute that permits him to unilaterally initiate federal administrative proceedings on behalf of the State, including for certification under Chapter 154. *See* MTD at 30–36. His attempts to do so involve reading powers into provisions he acknowledges are omitted, selectively combining provisions to eliminate requirements he cannot overcome, and expanding his office's authority, including above this Court's, to determine what is necessary to fulfilling his statutory duties. This Court should reject such attempts and fulfill its solemn duty to "say what the law is." *State v. Booker*, 656 S.W.3d 49, 54 (Tenn. 2022) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

The same is true regarding the TN-AGR's characterization of his common law power. The TN-AGR advances a broad theory: that he may "exercise such authority as the public interest may require" and that he alone has "discretion to decide what matters are of public interest and require

# EXHIBIT 2

E-FILED
5/28/2026 10:20 AM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**20TH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART TWO**

| | | |
|---|---|---|
| **FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **No. 26-0660-II** |
| **JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER DENYING MOTION FOR TEMPORARY INJUNCTION**

This matter came before the Court on May 27, 2026, upon the Federal Defender Services of Eastern Tennessee, Inc.'s and Federal Public Defender for the Middle District of Tennessee's ("FDSET," "TNM," or collectively "Plaintiffs") Motion for Temporary Injunction seeking to compel Defendant Jonathan Skrmetti, in his official capacity as Attorney General and Reporter ("Defendant" or "Attorney General"), to withdraw his request for certification under Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and enjoin reapplication. Defendant filed a response in opposition.[1]

On May 21, 2026, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief, Motion for Temporary Injunction and accompanying Memorandum in Support with two Declarations, and a Motion for Expedited Hearing. The Court granted the Motion for Expedited

[1] Defendant asserts that service has not been accomplished.

Hearing and set the Motion for Temporary Injunction on May 27, 2026. Based upon the Complaint, Motion for Temporary Injunction, Memorandum in Support and in Opposition, exhibits, the entire record, and arguments of counsel, the Court finds as follows.

**TEMPORARY INJUNCTION STANDARD**

Under Rule 65.04 of the Tennessee Rules of Civil Procedure, "[a] temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual." Tenn. R. Civ. P. 65.04(2).

The standard for determining whether injunctive relief is appropriate requires a court to consider the well-known four-factor test: "(1) the threat of irreparable harm to plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." *Fisher v. Hargett*, 604 S.W.3d 381, 394 (Tenn. 2020) (internal quotation omitted); *Gentry v. McCain*, 329 S.W.3d 786, 792 (Tenn. Ct. App. 2010). The grant or denial of a request for temporary injunction is discretionary with the trial court. *Fisher*, 604 S.W.3d at 395. "[M]andatory injunctions—which, as here, alter the status quo and order the defendant to take action—are extraordinary in nature and should be granted only in exceptional circumstances. . . . 'there is no power the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion or is more dangerous in a doubtful case' than the discretion of granting an injunction." *Moore v. Lee*, 644 S.W.3d 59, 65-65 (Tenn. 2022) (quoting *Mabry v. Ross*, 48 Tenn. 769, 774 (1870)) (citing *Fisher*, 604 S.W.3d. at 394–95).

## FINDINGS OF FACT

The Court makes the following findings of fact based on the record, as required under Tenn. R. Civ. P. 65.04(6).

*The Parties*

Plaintiff FDSET operates as the federal public defender in the Eastern District of Tennessee pursuant to 18 U.S.C. § 3006(A)(g). FDSET includes a Capital Habeas Unit ("CHU") which is appointed to serve in all non-conflicted capital habeas cases arising from the Eastern District of Tennessee and nine other federal districts across the country. (Compl., ¶ 14). Currently, FDSET represents six inmates on Tennessee's death row with federal habeas petitions pending in district court. (*Id.* at ¶ 15). Plaintiff TNM operates as the federal public defender in the Middle District of Tennessee pursuant to 18 U.S.C. § 3006(A)(g). (*Id.* at ¶ 16). TNM likewise includes a CHU and is appointed counsel for 19 of the 41 individuals currently on death row in Tennessee. Nine of those clients have pending federal habeas petitions. (*Id.* at ¶ 16-17).

Defendant is the Attorney General for the State of Tennessee. The Tennessee Constitution establishes the office of the Attorney General and Reporter. Tenn. Const. art. VI, § 5. The Attorney General serves as "the executive head" of the "legal department of the state," Tenn. Code Ann. § 8-6-102, and has all authority "vested in the office by the constitution of Tennessee and . . . under the statutory law," *id.* § 8-6-109(a).

*AEDPA and Chapter 154*

AEDPA governs federal habeas review of state criminal judgments, and Chapter 153 of AEDPA establishes general requirements and conditions for such habeas petitions, including a one-year statute of limitations for filing a petition, 28 U.S.C.§ 2244(d). (Compl., ¶ 23). Compared to Chapter 153, Chapter 154 places additional substantive and procedural restrictions on federal

habeas review of state capital convictions and sentences. (Compl., ¶ 24). For example, under Chapter 154's procedures, a capital prisoner must apply for habeas corpus within 180 days of a final state court judgment of convictions, as opposed to one year after final judgment. *Compare* 28 U.S.C. § 2263(A), *with id.* § 2244(d)(1). Further, federal courts must resolve capital habeas cases within a statutory time frame. *See id.* § 2266(b)(1)(A); *id.* § 2266(c)(1)(A).

For Chapter 154's procedures to apply, a State must first obtain federal certification that it meets the necessary requirements. 28 U.S.C. § 2265(a). Specifically, an "appropriate State official" must first apply to the U.S. Attorney General to take advantage of Chapter 154's procedures. 28 U.S.C. § 2265(a)(1). Upon such request, the U.S. Attorney General must undertake an administrative process governed by the APA to certify the State meets certain requirements and historically involves a public comment period in which stakeholders, including federal defender organizations, comment on whether certification would be proper. 28 U.S.C. § 2265(a)(1)(A); (Compl., ¶ 25).

On June 6, 2025, Defendant requested that the U.S. Attorney General certify that Tennessee qualifies for expedited federal habeas proceedings pursuant to Chapter 154 of AEDPA. (Compl., ¶ 18). On August 7, 2025, the Department of Justice advised that public comments on Tennessee's application would be accepted until October 6, 2025, which was later extended to October 10, 2025. (Compl., ¶ 30).

The US Attorney General did not decide Tennessee's application, but initiated rulemaking proceedings to set forth a new rule to govern certification. (Compl., ¶ 44). The Department of Justice published a new proposed rule governing certification on March 16, 2026, and opened a 60-day public comment period, which ended May 15, 2026. (*Id.* at ¶ 45). Plaintiffs submitted

public comments. (*Id.* at ¶ 46). On April 30, 2026, a letter from the U.S. Attorney General to the Tennessee Attorney General dated March 27, 2026 was published and provided in relevant part:

> ...while that rulemaking is ongoing we intend to complete review of your application under the preexisting regulations at 28 C.F.R. §§ 26.20-.23 (2024). Consistent with *id.* § 26.23(b), your certification request has been published in the Federal Register and we hope to have a decision within the next 60 days. However, if you would prefer to wait and have your request evaluated under any new rules resulting from the [notice of proposed rulemaking], please let us know.

(Compl., § 69); Letter from Daniel E. Burrows, Assistant Att'y Gen. U.S. Dep't of Just., to Jonathan Skrmetti, Att'y Gen., State of Tenn. (Mar. 27, 2026), https://www.justice.gov/olp/media/1438826/dl?inline.

Plaintiffs filed suit on May 21, 2026, alleging that certification is imminent. Plaintiffs contend that Defendant lacks statutory authority to initiate Chapter 154 proceedings. In the Complaint, Plaintiffs raise one claim alleging that Defendant acted *ultra vires* by seeking Chapter 154 certification. Plaintiffs seek a temporary and permanent injunction ordering the Tennessee Attorney General to withdraw the application and enjoin the Attorney General from reapplying for certification under existing law. Plaintiffs also seek a judgment declaring that the Tennessee Attorney General lacks authority to seek certification under Chapter 154 and thus Tennessee's application is void and of no effect.

## ANALYSIS AND CONCLUSIONS OF LAW

The Court makes the following conclusions of law, as required by Rule 65.04(6) of the Tennessee Rules of Civil Procedure.

### A. Likelihood of Success on the Merits

Plaintiffs move for a temporary injunction based on their challenge to the purported *ultra vires* exercise of authority by Defendant to seek certification under Chapter 154 of AEDPA. Plaintiffs contend that the Tennessee Attorney General may only exercise policymaking authority

when permitted by statute, and that he is not statutorily authorized to seek Chapter 154 certification. Unlike other states, the Tennessee Constitution places the Tennessee Attorney General in the state's judicial department. Defendant contends, however, that he has broad authority to provide all legal services to the State and its instrumentalities, including directing all litigation and administrative proceedings in which the State has an interest. Defendant initially argues that sovereign immunity bars this suit, that Plaintiffs lack standing, and that the claim is not ripe, which the Court will address first.

1. Sovereign Immunity

"Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. The Tennessee Supreme Court has interpreted Article I, Section 17 as prohibiting suits "against the State unless explicitly authorized by statute" and thereby "upholding the doctrine of sovereign immunity." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849 (Tenn. 2008) (citing *N. British & Mercantile Co. v. Craig*, 62 S.W. 155, 157 (Tenn. 1900); *State v. Bank of Tenn.*, 62 Tenn. (3 Baxt.) 395, 403 (1874)). Thus, the General Assembly must waive sovereign immunity in order for a suit to proceed. *See* Tenn. Const. art. 1, § 17.

There is an exception, however, to this general rule, and it applies to state officers who specifically enforce an allegedly unconstitutional law. *See Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849–50 (Tenn. 2008) ("This concept of sovereign immunity generally extends to state agencies and state officers acting in their official capacity. . . . however, . . . the doctrine of sovereign immunity does not bar suits against state officers to prevent them from enforcing an allegedly unconstitutional statute."); *see also Ex parte Young*, 209 U.S. 123 (1908).

Defendant contends that Plaintiffs do not challenge the constitutionality of a statute, and, therefore, the exception set forth in *Colonial Pipeline* does not apply. Plaintiffs argue that *Colonial Pipeline* allows suits against state officers acting *ultra vires*. The Court finds that the exception in *Colonial Pipeline* does not apply as Plaintiffs do not assert that a statute is unconstitutional. Moreover, the State recently repealed Tenn. Code Ann. § 1-3-121, which created a cause of action for individuals to seek declaratory or injunctive relief regarding the "legality or constitutionality of a governmental action." In 2026 Tenn. Pub. Acts, ch. 664, the General Assembly clarified that it "never intended … to waive Tennessee's sovereign immunity" and "maintains its intent to retain Tennessee's sovereign immunity."

Accordingly, the Court finds that the exception in *Colonial Pipeline* does not apply, and sovereign immunity likely bars Plaintiffs' claim.

2. <u>Standing</u>

"Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action." *City of Memphis v. Hargett*, 414 S.W.3d 88, 97 (Tenn. 2013) (citing *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). Standing is a threshold issue. *Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020) (citing *City of Memphis*, 414 S.W.3d at 96).

The applicable test for standing depends on whether the injury is a private rights claim or a public rights claim. *Harris v. Lee*, No. M2025-01915-COA-R9-CV, 2026 WL 1144357, at *2 (Tenn. Ct. App. Apr. 28, 2026) (citing *Wygant v. Lee*, ---S.W.3d ----, No. M2023-01686-SC-R3-CV, 2025 WL 3537313, at *16 (Tenn. Dec. 10, 2025)). In *Wygant*, the plaintiff was "suing government officials and asking the judiciary to grant equitable relief against them," and the Supreme Court found it was "a quintessential public rights claim." *Wygant*, 2025 WL 3537313, at

*17. In *Harris*, the Court found it was also a public rights claim as the plaintiffs sued state officials for injunctive relief. *Harris*, 2026 WL 1144357, at *2. It does not appear to be disputed that this matter involves a public rights claim.

The three-part standing test for public rights claims "requires plaintiffs to show (1) an injury in fact (2) that is fairly traceable to the challenged conduct and (3) is capable of being redressed by a favorable judicial decision." *Id.* (quoting *Wygant*, 2025 WL 3537313, at *18). The injury must be "distinct and palpable." *Id.* (quoting *City of Memphis*, 414 S.W.3d at 98 (quoting *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006))). The injury also must be "actual or imminent." *Id.* (quoting *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 283 (Tenn. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff has the burden to establish these elements "by the same degree of evidence as other matters on which the plaintiff bears the burden of proof." *Id.* (citing *Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dep't of Educ.*, 645 S.W.3d 141, 149 (Tenn. 2022)).

Defendant contends that Plaintiffs' purported injuries of spending resources to oppose Tennessee's certification and to potentially litigate future federal habeas proceedings under Chapter 154 are neither cognizable injuries nor redressable by the requested relief. In support of their claim, Plaintiffs provided the Declarations of Stephen Ferrell, CHU Supervisor of FDSET, and Amy Harwell, First Assistant Federal Public Defender and Acting Chief of CHU for TNM. Both testified that the request for Chapter 154 certification forced Plaintiffs to divert limited attorney and staff time to respond to the application and compile a comprehensive comment record. (Decl. Ferrell, ¶¶ 6-7; Decl. Harwell, ¶ 7). Further, they allege that the Tennessee application sought retroactive certification for a period stretching back approximately 30 years which required FDSET and TNM to undertake extensive research and review hundreds of case files, and that the

proposed new rule required additional hours responding to the proposed change. (Decl. Ferrell, ¶¶ 8-9; Decl. Harwell, ¶ 9-10). And, that certification is likely to require FDSET and TNM to expend additional resources in cases involving pending or future federal petitions for federal habeas corpus, and the shortened deadlines under Chapter 154 will negatively affect Plaintiffs' clients. (Decl. Ferrell, ¶¶ 10, 16; Decl. Harwell, ¶¶ 11, 17).

In *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 144 S. Ct. 1540, 219 L. Ed. 2d 121 (2024), the plaintiff medical associations claimed to have standing based on their incurring costs to oppose the FDA's actions and forced the associations to "'expend considerable time, energy, and resources' drafting citizen petitions to FDA, as well as engaging in public advocacy and public education." *FDA*, 602 U.S. at 394. The Supreme Court found "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* Like the plaintiffs in that case, Plaintiffs here rely upon their expenditure of time, energy, and resources that are being and will be affected by the certification, which is not enough to demonstrate an injury in fact.

Further, Defendant argues that Plaintiffs face no imminent injury. An injury is imminent if it is "certainly impending." *Wygant*, 2025 WL 3537313, at *22 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)). "That means that the injury must be 'likely to occur soon,' not just that it will happen at some unknown future time." *Id.* (quoting *FDA*, 602 U.S. at 381). Plaintiffs must set forth "specific facts" and "concrete details" to prove that injury is sufficiently likely in the near future. *Tenn. Conf. of NAACP v. Lee*, 139 F.4th 557, 567–68 (6th Cir. 2025). The U.S. Attorney General is not required to decide Tennessee's application on any defined timeframe, and the U.S. Attorney General may deny the request for

certification. The deadline Plaintiffs raised in the Complaint, May 26, 2026, has passed without Tennessee's certification being approved. As other courts have held, the harms stemming from a state's potential certification under Chapter 154 does not appear to constitute an injury in fact. *See Boggs v. United States Dep't of Just.*, No. CV1905238PHXJJTJZB, 2020 WL 4464369, at *4 (D. Ariz. Aug. 4, 2020) ("Similarly, neither Plaintiffs' uncertainty as to whether the regulations would be adopted nor their need to undertake a precautionary litigation strategy constitutes an injury-in-fact.").

Finding that sovereign immunity likely bars this suit and that Plaintiffs likely do not have standing, the Court declines to address Defendants' other arguments including ripeness, that Plaintiffs lack a cause of action, or that the Attorney General has authority to seek Chapter 154 certification.

**B. Irreparable Harm to Plaintiffs**

Defendant contends that Plaintiffs asserted injuries are not irreparable. As the Court previously noted, Plaintiffs have likely failed to demonstrate an injury in fact to establish standing. Plaintiffs argue that certification would force them to divert and redirect scarce resources from other cases to litigate the potentially harmful effects of certification on their clients. However, the time and expense of litigation does not constitute irreparable injury. *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 244, 101 S. Ct. 488, 495, 66 L. Ed. 2d 416 (1980) (quoting *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974)). Plaintiffs have not established they will suffer irreparable harm absent a temporary injunction.

**C. Balance of Harm to the State**

Defendant contends that allowing the injunction would hamstring the Attorney General's authority. Plaintiffs contend that issuing the temporary injunction would maintain the status quo

and cause no countervailing harm. The Court agrees that the balance of harm to the State is minimal, but notes that granting an injunction would impede the Attorney General's ability to participate in federal administrative proceedings.

**D. Public Interest**

Plaintiffs contend that certification will have immediate and severe consequences for death-sentenced prisoners at all stages of litigation, especially given the stringent time limits imposed by Chapter 154. Defendant contends that depriving Tennessee of the benefits of Chapter 154 certification would come at a cost to the public and Tennessee state courts, limiting the ability to use quick and effective tools to minimize the burden of federal habeas corpus litigation. The Court finds this factor weighs slightly in favor of Plaintiffs to maintain the status quo during the pendency of this case. However, the Court does not find this factor overcomes Plaintiffs failure to demonstrate likelihood of success on the merits of their claim or requiring a showing of irreparable harm.

## CONCLUSION

The Court finds that sovereign immunity likely bars Plaintiffs' claim against Defendant, and that Plaintiffs do not appear to have standing which prevents Plaintiffs from demonstrating a likelihood of success on the merits or the threat of irreparable harm.

Accordingly, Plaintiffs' Motion for a Temporary Injunction is **DENIED**.

**It is so ORDERED.**

s/Anne C. Martin

ANNE C. MARTIN
CHANCELLOR, PART II

cc:

John Spragens
Spragens Law PLC
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
John@spragenslaw.com

Ammar Inayatali (*pro hac vice*)
701 Thirteenth St. NW
Washington, D.C. 20005
Ammar.inayatali@whitecase.com

Kevin Adams (*pro hac vice*)
Jennifer Ware-Phillips (*pro hac vice*)
75 State St.
Boston, MA 02109
Kevin.adam@whitecase.com
Jennifer.ware@whitecase.com

Zachary R. Clark
Director of Strategic Litigation
Reed N. Smith
Caleb J. Walker
Assistant Attorneys General
Strategic Litigation Unit
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Zachary.Clark@ag.tn.gov
Reed.Smith@ag.tn.gov
Caleb.Walker@ag.tn.gov