No. 26-1229

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE, JOHN MICHAEL BANE, ANDRE BLAND, SEDRICK CLAYTON, URSHAWN MILLER, AND CORINIO PRUITT,

*Petitioners*,

*v.*

TODD BLANCHE, UNITED STATES ATTORNEY GENERAL AND THE UNITED STATES OF AMERICA,

*Respondents*,

THE STATE OF TENNESSEE

*Intervenor*.

## PETITIONERS' REPLY IN SUPPORT OF MOTION FOR STAY OF CERTIFICATION PENDING JUDICIAL REVIEW AND TO HOLD PETITION IN ABEYANCE PENDING RELATED LITIGATION

JENNIFER WARE-PHILLIPS
KEVIN ADAM
DAN MEDICI
JAMES PATRICK BUTLER
**WHITE & CASE LLP**
75 STATE STREET
BOSTON, MA 02109

KUFERE LAING
**WHITE & CASE LLP**
701 THIRTEENTH STREET, NW
WASHINGTON, D.C. 20005

*Counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, Bane, Bland, Clayton, and Miller*

JOHN G. BAKER
**FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

GERALD W. KING JR.
**CAPITAL HABEAS UNIT FOR THE FOURTH CIRCUIT**
129 WEST TRADE STREET, SUITE 300
CHARLOTTE, NC 28202

*Counsel for Petitioner Pruitt*

# TABLE OF CONTENTS

ARGUMENT .......... 1

I. Petitioners Filed a Timely Motion .......... 1

II. Petitioners Have Shown Irreparable Harm That Is Actual, Not Speculative .......... 4

III. Petitioners Have a Substantial Case on the Merits .......... 6

IV. The Balance of Harms and the Public Interest Favor a Stay .......... 9

V. Abeyance Remains Warranted if the Court Stays the Certification .......... 10

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) .......... 12

*Beame v. Friends of the Earth*,
434 U.S. 1310 (1977) .......... 3

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) .......... 3

*Fed. Pub. Def. Dist. Ariz., et al., v. Barr*,
No. 20-1144 (D.C. Cir. 2020), ECF 1843360, 17 .......... 1, 2

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975) .......... 2, 3

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) .......... 2, 3

*Hall v. Luebbers*,
341 F.3d 706 (8th Cir. 2003) .......... 7

*Hirschfeld v. Board of Elections*,
984 F.2d 35, 39 (2d Cir. 1993) .......... 3

*McKay v. State*,
No. 2024 WL 4404318 (Tenn. Crim. App. Oct. 4, 2024) .......... 9

*Nelson v. Campbell*
541 U.S. 637, 649-50 (2004) .......... 4

*Ng v. Board of Regents of the University of Minnesota*,
64 F.4th 992 (8th Cir. 2023) .......... 3

*Ruckelshaus v. Monsato Co*.,
463 U.S. 1315 (1983) .......... 3

*State v. Spurgeon*,
47 S.W. 235 (Tenn. 1897) .......... 9

## STATUTES AND RULES

28 C.F.R § 26.22(b)(2) .......... 8

28 U.S.C. § 1331 .......... 12

28 U.S.C. § 2261(c) .......... 7

28 U.S.C. § 2265(a) .......... 12

28 U.S.C. § 2265(a)(1) .......... 10, 11

28 U.S.C. § 2265(c) .......... 4, 12

28 U.S.C. § 2266 .......... 5

Tenn. Code Ann. § 40-30-106(e) .......... 7

1979 Tenn. Pub. Acts ch. 422 .......... 8

# EXHIBITS

**Exhibit 1:** Declaration of Jennifer Ware-Phillips

**Exhibit 2:** *Pruitt v. Nelson*, No. 2:22-cv-02855-BLC-atc (W.D. Tenn. 2022), ECF 56, Motion to Suspend Scheduling Order (addendum excluded)

**Exhibit 3:** *Federal Defender Services of Eastern Tennessee, Inc., et al.*, v. Skrmetti, No. 26-0660-II (Tenn. Ch. Ct. Davidson Cnty.), Defendant's Memorandum of Law in Support of Motion to Dismiss (excerpt)

**Exhibit 4:** *Bland v. Bondi*, No. 1:25-cv-3499 (D.D.C. 2025), ECF 4-1, Plaintiff's Statement of Points and Authorities in Support of Their Motion for Temporary Restraining Order (excerpts)

**Exhibit 5:** *Federal Defender Services of Eastern Tennessee, Inc., et al.*, v. Skrmetti, No. 26-0660-II (Tenn. Ch. Ct. Davidson Cnty.), Memorandum of Points of Authorities in Support of Plaintiffs' Motion for a Temporary Injunction (excerpt)

For only the second time, the Attorney General has certified a State's capital-counsel mechanism. And though no review of a certification has been decided on the merits, Tennessee has invoked and will continue to invoke its Certification in federal habeas proceedings while this Court's *de novo* review remains pending. It is for these reasons that Petitioners have asked this Court to stay the Certification, and—assuming a stay is granted—that the Petition be held in abeyance.

## ARGUMENT

### I. Petitioners Filed a Timely Motion

Respondents and Intervenor incorrectly accuse Petitioners of having waited too long to seek a stay. Resp'ts' Opp'n to Mot. to Stay Certification Pending Judicial Review & Hold Pet. in Abeyance Pending Related Litig. ("Respondents"), 29[1]; Intervenor's Opp'n to Mot. for Stay & to Hold Pet. in Abeyance ("Intervenor"), 15–20.

Both note that this Court denied petitioners' motion to stay enforcement of Chapter 154 in Arizona following certification. *See* Intervenor, 6; Respondents, 25. But both ignore that Arizona expressly stated it would not assert Chapter 154 against prisoners in proceedings until this Court affirmed Arizona's certification. *Fed. Pub. Def. Dist. Ariz., et al., v. Barr*, No. 20-1144 (D.C. Cir. 2020), ECF 1843360, 17.

[1] Page numbers refer to numbers in the top-right corner of the filings.

Thus, until the TN-AGR[2] invoked Chapter 154 against Petitioner Pruitt in his pending federal habeas proceeding on August 24, 2026, Chapter 154 had never been invoked against an individual in a certified state.

To assess whether Tennessee would break with Arizona's precedent, Plaintiffs' counsel in *Skrmetti* asked counsel for the TN-AGR whether the TN-AGR intended to invoke Chapter 154 during the pendency of this Court's review. Ex. 1 ¶ 5. The TN-AGR's office declined to state a position. *Id.* 6. Petitioners did not know with certainty that Tennessee would invoke the Certification before this Court's review until the TN-AGR's late August invocation of Chapter 154. On September 9, 2026, Tennessee informed Petitioner Pruitt's counsel that it would oppose a motion to suspend the scheduling order in Petitioner Pruitt's case pending this Petition, confirming Tennessee sought to apply Chapter 154 during this Court's review of the Certification. Ex. 2, 10. Petitioners moved for a stay only three weeks later.

Regardless, a delayed filing (which Petitioners' was not) is not a reason to deny a stay when the Court can provide relief from irreparable harm. *Gordon v. Holder*, 632 F.3d 722, 724–25 (D.C. Cir. 2011). Intervenor's cited authority is illustrative. In *Fund for Animals*, this Court found "an injunction would be all but

---

[2] Capitalized but undefined terms have the meaning ascribed to them in Petitioners' Motion to Stay.

futile" because the hunting season being challenged was "pretty well over" by the time of decision. 530 F.2d 982, 987–88. (D.C. Cir. 1975). In stark contrast, absent a stay, Tennessee will remain free throughout the pendency of this Petition to invoke Chapter 154 in any capital federal habeas proceeding in Tennessee. In fact, Intervenor's view is that Chapter applies in all federal habeas proceedings involving petitioners who were appointed state post-conviction counsel after July 1, 1997, and the TN-AGR need not "enforce" or "invoke it." Ex. 3, 15–16 (excerpt of TN-AGR's Memorandum of Law in Support of Motion to Dismiss *Skrmetti*). Purported "delay" is not determinative where, as here, movants are at risk of continuing harm, and the Court can restore the status quo. *See Gordon*, 632 F.3d at 725.

Intervenor's cases are easily distinguished. In *Ng v. Board of Regents of the University of Minnesota*, plaintiffs sought an injunction to preserve an already-dissolved collegiate athletic team. 64 F.4th 992, 998 (8th Cir. 2023) ("Delay is only significant if the harm has occurred and the parties cannot be returned to the status quo." (citation omitted)). In *Hirschfeld v. Board of Elections*, the harm to be avoided was "caused in large part by the moving party's own delay," unlike here. 984 F.2d 35, 39 (2d Cir. 1993). While the courts in *Ruckelshaus v. Monsato Co*., 463 U.S. 1315 (1983), *Beame v. Friends of the Earth*, 434 U.S. 1310 (1977), and *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985), considered delay, delay was never

dispositive. Respondents cite *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004), a stay of execution case that is inapposite. Respondents, 29.

Intervenor's comparison to emergency filings in *Bland* and *Skrmetti* is misplaced. Intervenor, 16. Emergency stays were requested in those cases because plaintiffs sought relief that, if not provided in a matter of days, could not be provided at all. *See* Ex. 4 (excerpt of *Bland* motion for injunction filed days before comment period in administrative proceedings was to conclude); Ex. 5 (excerpt from *Skrmetti* motion for injunction of certification application when certification decision was imminent). Here, Petitioners seek to stay irreparable harm that will be ongoing throughout the Court's consideration of this Petition.

## II. Petitioners Have Shown Irreparable Harm That Is Actual, Not Speculative

Respondents assert that Petitioners have suffered no cognizable injury. Respondents, 21–22. Petitioners here include capital habeas counsel in Tennessee as well as prisoners in all stages of state and federal review, including a prisoner against whom Chapter 154 has been asserted. If no Petitioner has a cognizable injury, then no one could ever have standing under 28 U.S.C. § 2265(c). Congress did not create an express right of judicial review only for it to be unavailable to every party capable of invoking it.

Respondents and Tennessee attempt to recast Petitioners' injuries as generalized litigation-cost and legal-uncertainty harms. They disregard the TN-

AGR's invocation of Chapter 154 against Mr. Pruitt and the specific, concrete consequences that follow for Tennesseans sentenced to death, including the Individual Petitioners.

The district court stayed Petitioner Pruitt's habeas proceedings precisely because the application of Chapter 154 in Petitioner Pruitt's case could be consequential. If the Certification is not stayed, Petitioners and any other prisoner on death row in Tennessee against whom Chapter 154 is asserted will be forced to seek one-off stays, creating a patchwork of decisions, a substantial risk of inconsistent rulings concerning the Certification's effect and application while judicial review remains pending, and chaos for the district courts, which are held to rigid adjudication timelines under 28 U.S.C. § 2266 and are required to prioritize habeas proceedings over any other docketed matters. Respondents effectively argue this Court should deny Petitioner's motion for a stay because other courts may later conclude a stay is necessary. *See* Respondent, 19. That is not a reason to deny relief; it is a reason to grant it. Moreover, staying the Certification here will result in *less* disruption in the district courts, as federal proceedings in dozens of capital federal habeas proceedings can proceed under the prior Chapter 153.

Nor is it an answer to say that a stay is unwarranted because it would not fully eliminate uncertainty because the Certification may ultimately be upheld. Respondents, 22. A stay is inherently temporary and need not eliminate all future

risk. It need only preserve the status quo and prevent irreversible harm while the merits of this Petition are decided.

Intervenor suggests Petitioners Bane, Bland, Clayton, and Miller cannot establish that they face irreparable harm because Chapter 154 may not be asserted against them. Intervenor, 19. As stated above, Intervenor has asserted that "federal courts are obligated to apply Chapter 154's procedures." Ex. 3, 15–16. Having asserted that each Petitioner will face Chapter 154's restrictions at some point in their habeas proceedings, Intervenor cannot use the uncertainty Intervenor creates as to when exactly Intervenor will invoke Chapter 154 to defeat a stay. Furthermore, Intervenor's position that Tennessee has an interest in the benefits of Chapter 154 cuts against its argument that Petitioners face no irreparable harm absent a stay. *Compare* Intervenor, 19, *with* 20–21.

## III. Petitioners Have a Substantial Case on the Merits

Respondents make no effort to grapple with the Operative Regulations' commentary, which describe a mechanism for the appointment of state post-conviction counsel exactly like Tennessee's as one that cannot be "logically regarded" as satisfying Chapter 154. Add.137. Nor do Respondents dispute that Tennessee routinely appoints post-conviction counsel well after the 180-day statute of limitations period Chapter 154 would impose.

The "ameliorating" features Respondents cite highlight the defects of Tennessee's mechanism. Respondents, 15. While counsel from the Office of the Post-Conviction Defender ("OPCD") sometimes assist prisoners prepare their petitions prior to their appointment as counsel, their involvement is severely limited. OPCD must obtain permission from the prisoner's direct appellate counsel, cannot conduct investigations, and cannot expend financial resources when providing such informal support prior to appointment. Add.76. OPCD's attempted gap-filling is both byproduct and proof of the inadequacy of Tennessee's mechanism. While Tennessee courts may appoint counsel to assist a prisoner with filing a complete petition, Respondent, 21, this discretionary power is available to courts *only after* an unrepresented prisoner files *and* amends inadequate petition. Tenn. Code Ann. § 40-30-106(e).

Chapter 154 is predicated upon a state's promise of an offer of counsel to indigent capital prisoners in state post-conviction proceedings. 28 U.S.C. § 2261(c). Tennessee's mechanism, even on paper, fails to meet its end of the bargain. By conditioning appointment of counsel on affirmative, substantive steps by prisoners, the mechanism systematically fails to offer counsel at critical stages. *See, e.g.*, *Hall v. Luebbers*, 341 F.3d 706, 712 (8th Cir. 2003) (Chapter 154 not satisfied where, in part, state's mechanism only provided counsel after prisoners filed post-conviction petition).

Even under the Operative Regulations' catch-all provisions on which Respondents principally rely, certification requires an assessment of how a State's mechanism operates in practice, including whether it can "reasonably assure" competent representation and whether compensation is "reasonably designed to ensure the availability" of qualified counsel. 28 C.F.R § 26.22(b)(2); *id.* at 26.22(c)(2). Those inquiries cannot be answered without meaningful consideration of the record evidence of how Tennessee's mechanism actually functions, evidence the Certification largely ignores.

Whether the TN-AGR is empowered to seek Chapter 154 certification is a matter of state law that the Regulations do not preempt. Indeed, the Operative Regulations' commentary say so explicitly: "if State law were to prohibit a State attorney general from requesting Chapter 154 Certification, then the State attorney general would be barred by State law from making such a request." Add.128. Furthermore, in promulgating the Operative Regulations, the DOJ asserted that the regulations would "not have substantial direct effects on the States, on the relationship between the national government and the States, or on distribution of power and responsibilities among the various levels of government." Add.142. Thus, neither Chapter 154 nor the Operative Regulations empower the TN-AGR to do what Tennessee law prohibits. The TN-AGR's power is confined by his statutory authorization. 1979 Tenn. Pub. Acts ch. 422 (confining common-law power within

bounds of statutory authority); *State v. Spurgeon*, 47 S.W. 235, 236 (Tenn. 1897) (TN-AGR's duties not prescribed by Tennessee Constitution); *McKay v. State*, No. 2024 WL 4404318, at *6 (Tenn. Crim. App. Oct. 4, 2024) (TN-AGR's authority is "primarily determined by statute"). No statute permits the TN-AGR to unilaterally initiate federal administrative proceedings on behalf of the State, including for certification under Chapter 154. Add.184–187.

Finally, while Respondents disparage Petitioners' due process argument as "skeletal," they do not address the underlying constitutional concern. Respondents, 18–19. Chapter 154 gives the nation's chief prosecutor the power to determine whether a State's capital-defense apparatus is adequate to curtail judicial review of death sentences.

## IV. The Balance of Harms and the Public Interest Favor a Stay

Neither response identifies any harm that a stay would inflict on Respondents, Tennessee, or crime victims. Intervenor asserts a generalized interest in immediately obtaining the benefits of Chapter 154's expedited procedures, Intervenor, 20–21, but Tennessee has operated under the ordinary habeas framework for decades and identifies no prejudice that would result from maintaining that framework while judicial review proceeds. A stay would do no more than preserve the longstanding status quo pending this Court's review.

The public interest does not favor accelerating capital habeas proceedings under a certification whose validity remains the subject of ongoing judicial review. Nor does it favor allowing the consequences of that Certification to take effect before this Court determines whether it was lawfully issued. The public interest is best served by ensuring that Chapter 154 is not applied prematurely.

## V. Abeyance Remains Warranted if the Court Stays the Certification

An abeyance remains warranted. *Skrmetti* concerns a predicate question that directly bears on this Court's review of the Certification: whether the TN-AGR could lawfully seek certification under Tennessee law. If the Tennessee courts conclude that the TN-AGR lacked such authority, that determination would be critical to this Court's consideration of whether an "appropriate State official" requested certification under the Operative Regulations. 28 U.S.C. § 2265(a)(1). While the *Bland* appeal is limited to the district court's jurisdictional ruling, its resolution will determine whether Petitioners' constitutional challenges that overlap with *Bland* will also proceed on a parallel track in another forum. That introduces the risk of inconsistent guidance on the same underlying questions.

Intervenor alternates between claiming that the outcome of *Skrmetti* cannot *obviate* this Court's review of the Petition and that those outcomes cannot *impact* this Court's review of the Petition. *Compare* Intervenor, 23–24 *with* 21–22. Petitioners need not demonstrate *Skrmetti* would eliminate this Court's review of the

Petition, and Tennessee is wrong that the outcome of *Skrmetti* cannot affect resolution of the Petition. This Court must consider whether an "appropriate State official" requested certification. 28 U.S.C. § 2265(a)(1). The Operative Regulations acknowledge that, for a state attorney general to be an appropriate applicant, he must not be "barred by State law from making such a request." Add.128. A ruling in *Skrmetti* that the TN-AGR lacked authority under Tennessee law to seek certification would be strongly informative to this Court's adjudication of the Petition.

Finally, the *Skrmetti* plaintiffs and Petitioners have not taken inconsistent positions. *See* Intervenor, 23–24. As Intervenor's Exhibit 1 shows, in both *Skrmetti* and before this Court, Petitioners have consistently represented (1) that this Court will have to consider whether an appropriate state official applied for certification of Tennessee's mechanism; (2) that this issue raises state-law questions appropriately decided by a Tennessee court; and (3) a Tennessee court's finding the TN-AGR acted outside his authority in applying for certification would be material to this Court's consideration of the Petition.

Intervenor accuses Petitioners of "gamesmanship" because *Bland* and *Skrmetti* are being litigated in addition to this Petition, Intervenor, 25, and Respondents describe those cases as "jurisdictionally deficient." Respondents, 31. *Bland* and *Skrmetti* relate to this Certification, but they turn on questions that can and should be decided by the courts in which they were filed. In *Bland*, through a complaint

invoking the Supreme Court's decision in *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) and jurisdiction under 28 U.S.C. § 1331, Plaintiffs seek to enjoin *any* exercise of the Attorney General's authority under § 2265(a) because that provision is unconstitutional. Their claims are not subject to this Court's exclusive jurisdiction under § 2265(c) because plaintiffs are not raising challenges to a specific certification determination. *Skrmetti* raises Tennessee statutory and constitutional questions that bear upon the separation of power between Tennessee's branches of government, and which are more than appropriate to raise in a Tennessee state court. Further, *Skrmetti* and *Bland* have overlapping but non-identical plaintiffs, each entitled to pursue relief in the matters filed.

**CONCLUSION**

The Court should stay the Certification pending its *de novo* review of the Petition. If a stay is granted, this Court should hold the Petition in abeyance pending resolution of *Skrmetti* and *Bland*.

Respectfully submitted,

*/s/Jennifer Ware-Phillips*
Jennifer Ware-Phillips

*Counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, Bane, Bland, Clayton, and Miller*

*/s/Gerald W. King Jr.*
Gerald W. King Jr.

*Counsel for Petitioner Pruitt*

October 20, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 32(g) and Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,598 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: October 20, 2026

*/s/Jennifer Ware-Phillips*
Jennifer Ware-Phillips

*Counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, Bane, Bland, Clayton, and Miller*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on October 20, 2026.

Date: October 20, 2026

/s/Jennifer Ware-Phillips
Jennifer Ware-Phillips

*Counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, Bane, Bland, Clayton, and Miller*

## CERTIFICATE AS TO PARTIES AND AMICI CURIAE

In accordance with D.C. Circuit Rules 18(a)(4), 27(a)(4) and 28(a)(1)(A), Petitioners certify that the following persons are parties, intervenors, or amici curiae in this Court:

**Parties**

Petitioners are Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, John Michael Bane, Andre Bland, Sedrick Clayton, Urshawn Miller, and Corinio Pruitt.

Respondents are Todd Blanche, Attorney General, and the United States of America.

**Intervenors**

The State of Tennessee is an Intervenor in support of the Respondents.

**Amici Curiae**

At present, no parties have moved for leave to participate as *amici curiae*.

Date: October 20, 2026

*/s/Jennifer Ware-Phillips*
Jennifer Ware-Phillips

*Counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, Bane, Bland, Clayton, and Miller*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioner Federal Defender Services of Eastern Tennessee, Inc. states that it is a non-profit corporation with no parent corporation and that no publicly held corporation owns 10% or more of its stock, as Petitioner Federal Defender Services of Eastern Tennessee, Inc. does not issue stock. Federal Defender Services of Eastern Tennessee, Inc. operates as the federal public defender in the Eastern District of Tennessee pursuant to 18 U.S.C. § 3006A(g). Federal Defender Services of Eastern Tennessee, Inc. includes a Capital Habeas Unit, which is appointed to serve in all non-conflicted capital habeas cases arising from the Eastern District of Tennessee and in other federal districts.

Date: October 20, 2026

*/s/Jennifer Ware-Phillips*
Jennifer Ware-Phillips

*Counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, Bane, Bland, Clayton, and Miller*

# EXHIBIT 1

**DECLARATION OF JENNIFER WARE-PHILLIPS**

I, Jennifer Ware-Phillips, hereby declare:

1. I am an attorney licensed to practice law in the State of Massachusetts and admitted in the U.S. Court of Appeals for the D.C. Circuit. I am an Associate at White & Case LLP and am counsel for Petitioners Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, John Michael Bane, Andre Bland, Sedrick Clayton, and Urshawn Miller in this matter, *Federal Defender Services of Eastern Tennessee, Inc., et al. v. Blanche, et al.*, No. 26-1229 (D.C. Cir. 2026).
2. I am also counsel for Plaintiffs Federal Defender Services of Eastern Tennessee, Inc., Federal Public Defender for the Middle District of Tennessee, John Michael Bane, Andre Bland, and Stephen Ferrell in *Federal Defender Services of Eastern Tennessee, Inc. v. Skrmetti*, No. 26-0660-II (Tenn. Ch. Ct. Davidson Cnty.) ("*FDSET v. Skrmetti*").
3. On July 27, 2026, Ammar Inayatali, my co-counsel in *FDSET v. Skrmetti,* and I contacted Attorneys Zachary Clark, Reed Smith, and Caleb Walker, who are all counsel for the Tennessee Attorney General and Reporter ("TN-AGR") in *FDSET v. Skrmetti* as well as counsel for Intervenor Tennessee in this matter, to request an opportunity to meet and confer. We agreed to speak on July 31, 2026.
4. On July 31, 2026, Mr. Inayatali and I met via remote video conference with Mr. Clark, Mr. Smith, and Mr. Walker, for the primary purpose of discussing the schedule for motion to dismiss briefing in *FDSET v. Skrmetti.*
5. During that meeting, I asked Mr. Clark, Mr. Smith, and Mr. Walker whether the TN-AGR intended to assert Chapter 154 in federal habeas corpus proceedings prior to this Court's

review of the Attorney General's Certification of Tennessee Capital Counsel Mechanism ("Certification").

6. Mr. Clark, Mr. Smith, and Mr. Walker declined to take a position on the TN-AGR's position and provided no insight as to whether the TN-AGR intended to assert Chapter 154 pending this Court's review of the Certification.

7. Mr. Clark, Mr. Smith, and Mr. Walker asked if we intended to file a petition for review of the Certification, and we confirmed that we did.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 20, 2026.

*/s/Jennifer Ware-Phillips*
Jennifer Ware-Phillips

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CORINIO PRUITT,<br>Petitioner, | ) | |
| v. | ) | No. 2:22-cv-02855-BCL-atc |
| KENNETH NELSEN, Warden, Riverbend Maximum Security Institute, | ) | CAPITAL CASE |
| Respondent. | ) | |

**MOTION TO SUSPEND SCHEDULING ORDER**

Corinio Pruitt respectfully moves this Court to suspend the current scheduling order in this matter, ECF No. 53, in light of Respondent's assertion that his pending petition for federal habeas corpus relief is now subject to Chapter 154 of Title 28 of the United States Code, which would alter the timeline and legal standards governing this Court's review of his claims of constitutional error.

Any application of Chapter 154 to Mr. Pruitt's petition would require new investigation and briefing as to whether Mr. Pruitt in fact received the benefit of the state post-conviction mechanism that was certified under Chapter 154. However, Mr. Pruitt is currently seeking *de novo* review of the Attorney General's certification of Tennessee's state post-conviction mechanism in the U.S. Court of Appeals for the D.C. Circuit; if successful, that proceeding would obviate any need to determine whether Chapter 154 applies to his petition. He accordingly submits that the interests of judicial economy support a suspension of briefing while Tennessee's certification is under its statutorily required review.

Respondent opposes suspending the scheduling order and will file a response to Mr. Pruitt's motion. In support of his motion, Mr. Pruitt shows as follows:

**1. Background**

The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") amended the statutes governing federal habeas proceedings to add 28 U.S.C. Chapter 154, which provides limited and expedited federal habeas review to those states that adopted a qualifying mechanism for the appointment and compensation of counsel in state post-conviction proceedings. Chapter 154 offers a *quid pro quo*: if a state timely provides competent counsel and reasonably necessary financial resources for state post-conviction proceedings, it receives expedited and curtailed federal habeas review.

Subsequently, the USA Patriot Improvement and Reauthorization Act of 2005 delegated the authority to "certify" whether a state mechanism qualified under Chapter 154 to the United States Attorney General. *See* Pub. L. 109-177, § 507(b), 120 Stat. 192, 250 (2006), codified at 28 U.S.C. § 2265. Under the revised statute, the provisions of Chapter 154 apply only if: (1) the Attorney General of the United States "certifies that a State has established a mechanism for providing counsel in post-conviction proceedings," and (2) "counsel was appointed pursuant to that mechanism" in the habeas petitioner's state post-conviction proceedings. 28 U.S.C. § 2261(b). The amended statute also requires the Attorney General to "promulgate regulations to implement the certification procedure." 28 U.S.C. § 2265(b).

When Mr. Pruitt filed his amended petition for federal habeas corpus relief on September 10, 2025, Tennessee's state mechanism had not been certified under Chapter 154.

Following extensions of time, this Court directed Respondent to answer or otherwise respond to Mr. Pruitt's amended petition by July 8, 2026. ECF No. 47. On that date, Respondent filed motions to dismiss Mr. Pruitt's amended petition as untimely and to be excused from the requirement to file an answer under Habeas Rule 5. ECF Nos. 50, 51.

On July 10, 2026, the Attorney General certified that Tennessee's state mechanism qualified under Chapter 154 as of July 1, 1997. 91 Fed. Reg. 42761, 42762 (Jul. 10, 2026).

In response to the parties' joint motion to amend or correct the scheduling order in this case, this Court entered an order on July 26, 2026, which denied Respondent's motion to be excused from filing an answer and directed Respondent to file their answer to Mr. Pruitt's amended habeas petition, and Mr. Pruitt to file his response to Respondent's motion to dismiss that petition as out of time, by August 24, 2026. ECF No. 53. The parties filed on that date. Respondent submitted a 229-page answer; at pages 90 to 94, Respondent asserted that Chapter 154's provisions should apply to Mr. Pruitt's petition. ECF No. 55 at 90-94.

Per this Court's July 26 order, Mr. Pruitt's reply in support of his amended petition, and Respondent's reply in support of their motion to dismiss, are presently due on September 14, 2026.

Tennessee is currently the only state certified under Chapter 154.[1] Chapter 154's expedited federal habeas corpus procedures have never been applied to a single case. *See* 91 FR 12525. Respondent's Answer asks this Court to make Mr. Pruitt the first.

One step remains before Tennessee's Certification under Chapter 154 is final. Congress provided that the Attorney General's certification decision is subject to *de novo* review by the Court of Appeals for the D.C. Circuit. 28 U.S. Code § 2265(c). This mandatory *de novo* review entails a reexamination of the Attorney General's conclusion in light of all available evidence, with the Court of Appeals "put[ting] itself in the [Attorney General's] place" and deciding the certification question "anew," *Doe v. United States*, 821 F.2d 694, 698 (D.C. Cir. 1987) (*en banc*). The D.C. Circuit's "fresh, independent determination" of the underlying matter is not limited to or constrained by the administrative record, and the Attorney General's certification decision will be due no deference. *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 866 (D.C. Cir. 1989); *accord United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 368 (1967) (where Congress prescribed *de novo* review, it intended that the reviewing court decide the underlying issue "completely

[1] Arizona was previously the only certified state under Chapter 154. Arizona was certified on April 14, 2020, with the effective date of May 19, 1998. *See* Certification of Arizona Capital Counsel Mechanism, 85 FR 20705 (April 14, 2020). But, as opposed to Respondent in this case, the Arizona Attorney General's Office did not seek application of Chapter 154 to federal habeas petitions that were pending at the time of certification. The Attorney General later withdrew Arizona's certification effective January 17, 2025. *See* Denial of Arizona Chapter 154 Certification, A.G. Order No. 6157-2025.

and on its own," giving no "special weight to the [agency's] determination") (internal quotation marks omitted).

On September 4, 2026, Mr. Pruitt, represented by undersigned counsel Gerald King, filed a petition for review of the certification of Tennessee's mechanism in that court. (Exhibit A). The petition asks the D.C. Circuit to set aside Tennessee's certification because (1) "Tennessee's mechanism does not, in fact, satisfy the statutory requirements for certification"; (2) the Attorney General "did not apply the operative implementing regulations for certification procedure"; and (3) "the certification process itself is fundamentally flawed and unconstitutional." Ex. A at 2. Both parties' initial submissions, including the Statement of Issues and all dispositive motions, are due on or before October 19, 2026.

**2. Determining whether Chapter 154 applies in Mr. Pruitt's case would be time- and resource-intensive.**

Even setting aside the issues reserved by Congress for review in the D.C. Circuit, determining whether Chapter 154 applies in Mr. Pruitt's case would require this Court to resolve several novel and complex issues of law and fact.

First, before applying Chapter 154, this Court would have to decide whether its provisions can lawfully be applied retroactively to federal habeas petitions already pending at the time of Tennessee's certification. Such a determination would require this court to decide several questions of constitutional magnitude, including: (1) whether Congress intended the retroactive application of the provisions of Chapter 154 to habeas petitions that were already pending when a state was certified; (2) whether retroactive application runs afoul of the Suspension Clause or Due

Process Clause; and (3) if the court were to apply Chapter 154's 180-day statute of limitations retroactively, whether equitable tolling applies. No court has ever decided any of these questions. Indeed, the Attorney General's certification of Tennessee anticipated that, "[t]o the extent any individual habeas cases present retroactivity questions, those issues may be raised to the federal courts adjudicating those petitions." 91 Fed. Reg. at 42766.

Second, this Court would have to decide whether Mr. Pruitt in fact received the benefits on which Chapter 154 certification is predicated: competent, adequately resourced counsel provided in a timely manner in his state habeas corpus proceedings. 28 U.S.C. 2261(b)(2); *see* 78 Fed. Reg. 51860, 58162 (Sep. 23, 2013) ("The case-specific function of ascertaining whether counsel was appointed pursuant to the certified mechanism is reserved to Federal habeas courts, which can address individual irregularities and decide whether the Federal habeas corpus review procedures of chapter 154 will apply in particular cases.") Determining that requires answering, *inter alia*, the following questions:

(1) Whether counsel was provided to Mr. Pruitt in a manner that was "reasonably timely in light of the time limitations for seeking State and Federal postconviction review and the time required for developing and presenting claims in the postconviction proceedings." 28 CFR 26.21.

(2) Whether Mr. Pruitt's appointed counsel met competency standards for post-conviction counsel in capital cases. *See* 28 U.S.C. 2261(b); 28 CFR 26.22(b)(2).

(3) Whether Mr. Pruitt's appointed counsel received adequate compensation. *See* 28 U.S.C. 2265(a)(1)(A); 28 CFR 26.22(c).

(4) Whether the state provided for the payment of reasonable litigation expenses of appointed post-conviction counsel. *See* 28 U.S.C. 2265(a)(1)(A); 28 CFR 26.22(d).

**3. Whether Chapter 154 applies is a threshold inquiry affecting the resolution both of the statute-of-limitations question and the merits of Mr. Pruitt's petition.**

Respondent asserts that Chapter 154's 180-day deadline applies retroactively to Mr. Pruitt's petition, even though it was filed before Tennessee was certified. ECF No. 55 at 92-93. Given that assertion, this Court would be asked to adjudicate the above-detailed constitutional and statutory interpretation questions regarding whether the Chapter 154 statute of limitations can lawfully apply to petitions that were already pending when a state was certified. These questions are of particular importance in Mr. Pruitt's case because he was not appointed state post-conviction counsel pursuant to the certified mechanism until after the 180-day period had already lapsed. Moreover, if Chapter 154 applies, Mr. Pruitt would need to submit supplemental briefing establishing his right to the equitable tolling of his statute of limitations.

Respondent also asks this Court to apply Chapter 154's strict limitations to its review of any procedurally defaulted claims. ECF No. 55 at 93. Respondent asserts that seven of Mr. Pruitt's claims were not raised or decided before the state courts. *See* ECF No. 55 at 116 (Claim 5); *Id.* at 120 (Claim 7); *Id.* at 226 (Claim 9); *Id.* at 131

(Claim 13); *Id.* at 133 (Claim 14); *Id.* at 134 (Claim 15); *Id.* at 143 (Claim 17). Without knowing whether Chapter 154 applies, Mr. Pruitt cannot adequately address procedural default or any applicable exceptions within the current briefing schedule, which requires a reply to Respondent's answer by September 14, 2026.

Mr. Pruitt respectfully suggests that neither the merits nor timeliness questions can be adequately briefed or argued without first knowing whether the provisions of Chapter 154 apply to this Court's review of his conviction and death sentence. Determining whether Chapter 154 applies to his specific case would require extensive investigation and briefing that the D.C. Circuit's statutorily required and pending *de novo* review could render moot. The course that best promotes judicial economy is for this Court to defer those questions until and unless the D.C. Circuit approves Tennessee's certification. A suspension of the briefing schedule will also allow the parties to research and investigate the above issues to prepare for if the D.C. Circuit upholds Tennessee's certification.

**4. Conclusion**

Mr. Pruitt respectfully moves this Court to suspend the briefing schedule in this case pending the resolution of his petition for review of Tennessee's Chapter 154 certification in the D.C. Circuit Court. Mr. Pruitt proposes submitting status reports at intervals of 30 days and the convening of a status conference upon the conclusion

of the D.C. Circuit's review. To the extent it would assist this Court, Mr. Pruitt proposes a status conference concerning this motion and the course of this litigation.

Submitted this 9th day of September 2026.

*/s/ Gerald W. King, Jr.*
Gerald W. King, Jr.
Chief
Gerald_king@fd.org

Gretchen L. Swift
Assistant Federal Public Defender
Gretchen_Swift@fd.org

Capital Habeas Unit
for the Fourth Circuit
Federal Public Defender
Western District of North Carolina
129 W. Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Fax: (704) 375-2287

Counsel for Petitioner

**CERTIFICATE OF CONSULTATION**

Pursuant to Local Rule, 7.2 (B), immediately after submitting his petition for review in the D.C. Circuit Court on Friday, September 4, Mr. Pruitt's counsel, Gerald King, conferred with Respondent's counsel, Sarah Stone, via telephone about whether they would join or consent to this filing. Earlier today, the parties corresponded via email and determined that they could not agree. Mr. Pruitt has accordingly filed this motion and is authorized to state that Respondent opposes staying the briefing schedule pending the resolution of the D.C. litigation and will file a response to Mr. Pruitt's motion.

Date: September 9, 2026

*/s/ Gerald W. King, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document has been served on counsel for Respondent, Assistant Attorney General Sarah Stone, by electronic case filing via the PACER/ECF system.

Date: September 9, 2026

*<u>/s/ Gerald W. King, Jr.</u>*

# EXHIBIT 3

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY**

| | | |
|---|---|---|
| **FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC.,** ***et al.*****,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 26-0660-II** |
| | ) | **Chancellor Martin** |
| **JONATHAN SKRMETTI,** in his official capacity as Attorney General and Reporter, | ) | |
| **Defendant.** | ) | |

---

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

---

*Missouri*, 603 U.S. 43, 69 (2024). "The whole purpose of the traceability requirement is to ensure that . . . the asserted injury was the consequence of the defendants' actions, rather than of the independent action of a third party." *Id.* at 68 n.8 (internal quotation marks omitted). Relatedly, if the requested relief does not stop parties outside the litigation from inflicting the same injury on the plaintiff, then the plaintiff's injury is not redressable. *Id.* at 73 (injury not redressable where nonparties would "remain free to enforce, or not to enforce, th[e] policies" that injured the plaintiffs).

The Amended Complaint does not allege that the Federal Defenders' purported injury—expenditure of resources opposing and litigating under Chapter 154's procedures—is traceable to conduct they ask the Court to enjoin. The Amended Complaint requests an injunction barring the Attorney General "from (1) seeking to defend the certification decision in the U.S. Court of Appeals for the D.C. Circuit and the U.S. Supreme Court, (2) invoking or enforcing Chapter 154 in any federal habeas corpus proceeding, and (3) reapplying for certification." Am. Compl. ¶ 122. But it does not allege that the Attorney General participating in the federal review of Tennessee's certification will cause (or that an injunction would prevent) any injury to the Federal Defenders. Nor could it, given that the federal government will independently defend Tennessee's certification, just as it did when the U.S. Attorney General certified Arizona.[4] *See* 28 U.S.C. § 2348 (authorizing the Attorney General to participate in any certification appeal); *Murthy*, 603 U.S. at 73-74 (denying injunctive relief to stop government censorship on social media because "the platforms [would] remain free to enforce" the same censorship "policies" even if government were enjoined).

Similarly, federal courts are obligated to apply Chapter 154's procedures if the requirements are met. 28 U.S.C. § 2261(a) (mandating that Chapter 154 "shall apply" if the requirements are

[4] *See generally Office of the Fed. Pub. Def. for the Dist. of Ariz. v. Rosen*, No. 20-1144 (D.C. Cir.).

satisfied). The Attorney General does not "enforce" Chapter 154, and he need not "invoke" it.[5] So even if the Attorney General were enjoined, federal courts would still have to apply Chapter 154's procedures—meaning any injury the Federal Defenders might suffer would not trace back to the Attorney General or be redressed by an injunction against him. *Murthy*, 603 U.S. at 73-74. And, once again, the Amended Complaint does not allege otherwise.

In addition, the Amended Complaint's requested declaratory and injunctive relief will not redress the Federal Defenders' expenditure of resources—past or future. The Federal Defenders' past expenditure of resources "generally does not create standing to seek an injunction or declaratory judgment" because "forward-looking preventative remedies will do nothing to redress an already-occurred injury." *Bowles v. Whitmer*, 120 F.4th 1304, 1310-11 (6th Cir. 2024).

As to future resource expenditures, the Amended Complaint does not allege that the requested declaratory or injunctive relief will conserve the Federal Defenders' resources. The Federal Defenders will still have to litigate in the D.C. Circuit whether the U.S. Attorney General properly certified Tennessee even if the Attorney General does not participate, and so too will they have to operate under Chapter 154's procedures (if a federal court determines they apply) regardless of whether the Attorney General "invokes or enforces" them. *Murthy*, 603 U.S. at 73-74.

**2. The Capital Prisoners lack standing.**

The Capital Prisoners too cannot establish any element of standing. The Amended Complaint does not allege that Chapter 154 will ever be applied to their federal habeas cases or, if applied, that it will prejudice their habeas petitions. And, similar to the Federal Defenders, the Amended Complaint alleges no harm traceable to the conduct they seek to enjoin or redressable by their requested relief

---

[5] At most, "[t]he State may enforce a time limitation under" 28 U.S.C. § 2266 if a federal court fails to resolve a habeas petition within Chapter 154's time limits by "petitioning for a writ of mandamus." 28 U.S.C. § 2266(b)(4)(B); *id.* § 2266(c)(4)(B). The Amended Complaint does not allege that a federal court will fail to comply with Chapter 154's requirements or that enforcement of any time limitation would cause any injury.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANDRE BLAND, URSHAWN MILLER, HOWARD HAWK WILLIS, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, and FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE,

*Plaintiffs*,

v.

PAMELA J. BONDI, in her official government capacity, and the UNITED STATES DEPARTMENT OF JUSTICE.

*Defendants*.

Case No: 1:25-cv-3499

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

When an individual faces the possibility of a future execution, the Constitution's protections mean the most. They guarantee, at the very least, that Plaintiffs will appear before a neutral and disinterested federal court. Yet, with Tennessee's application to invoke the "opt-in" provisions of Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2261, *et seq*., Petitioners find themselves facing an absurdity: the nation's highest *prosecutor* determines whether their state postconviction *defense* was sufficiently adequate for brethren state prosecutors to assert a truncated and fast-tracked federal habeas review. Compounding the constitutional farce, Chapter 154 removes core judicial decisions about Plaintiffs' rights to federal habeas review from the control of the federal district to place them instead in the waiting hands of the Attorney General. Together, these features of § 2265 of Chapter 154 enact a procedural charade that fails to disguise its encroachment on the federal district courts' judicial authority to hear habeas petitions, the pro-prosecution bias of the Attorney General, or the unconstitutional aggrandizement of the Attorney General's power.

Remarkably, in the nearly twenty years that this possibility has been looming under Chapter 154 no federal court has considered whether this arrangement proves constitutionally sound. It does not. Until a federal court addresses this question, Plaintiffs face the ongoing burden of attempting to demonstrate to the nation's chief prosecutor the inadequacy of Tennessee's state postconviction counsel mechanism. It is an exercise in futility that defies constitutional common sense, extracts an ongoing heavy cost, and may endure for years without resolution.

Today, Plaintiffs seek a temporary restraining order to stop this administrative absurdity and restore the neutrality of habeas review in federal district courts. They seek to prevent the further ongoing and irreparable harm they are suffering by being required to vindicate their constitutional rights in an unconstitutional administrative proceeding before an unconstitutional

decision maker. Plaintiffs can establish that they will "likely . . . . succeed on the merits, that [they] are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

*First*, Plaintiffs have a likelihood of success on all three of their claims. The Due Process Clause of the Fifth Amendment is violated by the Attorney General's authority under § 2265 to determine certification applications. The Attorney General cannot act with sufficient independence and neutrality to fulfill the constitutional guarantee of structural due process. The Attorney General's institutional interests in the outcome of the certification determination arise from the office's legal advocacy and interests that are biased in favor of the state and its close partnership with States and state law enforcement. These factors ensure that the Attorney General cannot be the disinterested and neutral decision maker the Due Process Clause requires.

Section 2265 also violates the Constitution's separation of powers doctrine by transferring Article III judicial power to the Attorney General. Section 2265 grants to the Attorney General the authority to make certification decisions in the first instance—detached from any individual habeas petition—and seeks to make that decision binding on the federal district court in an individual petitioner's habeas review. Article III requires federal courts to make all habeas-related determinations in the first instance. Further, the provision in § 2265(c) for *de novo* review in the Court of Appeals for the District of Columbia Circuit is inadequate to avoid judicial encroachment. The judicial review under § 2265 purports to be limited to the Attorney General's certification decision. The Court of Appeals also makes an aggregate determination about a state mechanism divorced from the facts of any one case and it raises significant due process concerns for that Court's decision to bind a future habeas petitioner. Further, that Court's aggregate decision cannot

preclude the federal district court's equitable determination that each petitioner should receive, for example, a period for equitable tolling.

Finally, while each constitutional violation, standing alone, requires this court to declare § 2265 unconstitutional, considered together, the constitutional infirmities aggrandize the Attorney General's power in a manner that flouts the protections and structure of the Constitution.

*Second*, Plaintiffs are suffering irreparable harm by being forced to vindicate their constitutional rights in an unconstitutional proceeding before an unconstitutional decision maker. Being forced to appear before such an illegitimate agency decision maker causes a "here-and-now" injury. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). But unlike other harms that can be corrected by federal courts after an illegitimate proceeding ends, this harm "has already happened [and] cannot be undone" and "[j]judicial review . . . would come too late to be meaningful." *Axon*, 598 U.S. at 191. This is why Plaintiffs need a temporary restraining order *before* having to continue with the Attorney General's certification process, which will in turn determine the procedures applicable to their federal habeas review. As experience has shown with the efforts by Arizona and Texas to seek certification, *see* Complaint ¶¶ 31-33, and the measures taken by the federal capital and state postconviction defenders in those states to demonstrate the deficiencies in such applications, Plaintiffs may face years of administrative proceedings and litigation to pursue their right to constitutional federal habeas review procedures by contesting Tennessee's assertion that it is entitled to apply the fast track procedures under Chapter 154 for federal habeas review. Plaintiffs would not and perhaps for years endure this burden, even if the Circuit Court were to determine, years later, that the framework of § 2265 violates the Constitution.

*Finally*, the balance of equities and public policy favor enjoining the Attorney General's certification determination. As to the equities, the Attorney General will suffer little to no inequity

from a pause in the administrative determination and the continued availability only of proceedings under § 2254. Allowing an unconstitutional government process to continue serves no public interest. Rather, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (internal quotation marks omitted).

Plaintiffs request that this Court preliminarily enjoin the Attorney General from deciding Tennessee's certification application until the constitutional infirmities in the decision-making structure under § 2265 have been resolved. Plaintiffs seek to ensure that their rights are respected through a constitutionally valid proceeding. Plaintiffs face immediate and ongoing harm in being subjected to an unconstitutional proceeding before an unconstitutional decision maker determining whether Tennessee is entitled to apply expedited federal habeas review procedures against the Plaintiffs. The only way to ensure that this determination comports with the Constitution is to pause the certification proceedings under § 2265 until the Plaintiffs are able to secure a declaration whether the Attorney General's authority to make such a determination is unconstitutional.

**FACTUAL AND LEGAL BACKGROUND**

On August 7, 2025, the Office of Legal Policy (OLP) published an application from Tennessee seeking the Attorney General's certification under Chapter 154 of its mechanism for providing post-conviction assigned counsel, effective as of October 23, 1995. The deadline for public comments on the application is October 6, 2025. There is no deadline for the Attorney General's certification decision, and the Attorney General may publish "subsequent notice[s]" for further opportunity to comment before deciding the application. 28 C.F.R. § 26.23(c).

2017-0010 (last visited Sept. 25, 2025). Texas's application has remained pending for over seven years.

**III. Tennessee seeks Chapter 154 certification.**

Tennessee submitted its application on June 6, 2025, seeking certification by the Attorney General that the state's assigned counsel mechanism satisfied Chapter 154's requirements as of October 23, 1995. Plaintiffs must engage in this pre-certification challenge to the Attorney General's process to preserve their constitutional, administrative, and substantive challenges to the procedures for certification and the States' application—or risk forgoing their opportunity to seek judicial review of their claims by the Court of Appeals for the D.C. Circuit pursuant to 28 U.S.C. § 2265(c) and Chapter 158 of Title 28. As result of their coerced participation in an administrative process that itself violates constitutional mandates, Plaintiffs have been placed under a heavy burden. As the requests for an extension of time by the counsel for death-sentenced individuals, the FDSET, TNM-CHU, and OPCD explain, providing substantive public comments to enable Plaintiffs to challenge a certification determination requires substantial work. [6]

[6] *See* Gutierrez Decl. Ex. 4, Comment on OLP180 Tennessee Capital Counsel Mechanism 90 FR 38182 – Petition for extension of Time to Comment, Federal Defender Services of Eastern Tennessee, Sept. 3, 2025 ("Ferrell Letter") (counsel for Plaintiff Howard Hawk Willis); Gutierrez Decl. Ex 5, Comment on OLP180 Tennessee Capital Counsel Mechanism 90 FR 38182 – Request for extension of time, Federal Public Defender for the Middle District of Tennessee, Sept. 9, 2025 ("Henry Letter") (counsel for Plaintiff Andre Bland); Gutierrez Decl. Ex. 6, Comment on OLP180 Tennessee Capital Counsel Mechanism 90 FR 38182 – Request for extension of Time to Comment, Office of the Post-Coniction Defender for the State of Tennessee, Sept. 11, 2025 ("Scalpone Letter Sept. 11, 2025") (counsel for Plaintiff Urshawn Miller); Gutierrez Decl. Ex. 7, Comment on OLP180 Tennessee Capital Counsel Mechanism 90 FR 38182 – Request for extension of time, Office of the Post-Coniction Defender for the State of Tennessee, Sept. 19, 2025 ("Scalpone Letter Sept. 19, 2025"). The public comments are published at Regulations.gov under Docket ID no. DOJ-OLP-2025-0202, *available at* https://www.regulations.gov/docket/DOJ-OLP-2025-0202 (last visited Sept. 26, 2025).

For example, when the DOJ issued its Notice of Request for Certification for Tennessee on August 7, 2025, it invited interested parties to submit comments on or before October 6, 2025. *See* Gutierrez Decl. Ex. 4 (Ferrel Letter); Gutierrez Decl. Ex. 5 (Henry Letter); Gutierrez Decl. Ex. 6 (Scalpone Letter Sept. 11, 2025). Tennessee sought retroactive certification for a 30-year period stretching back to 1995. FDSET, TNM-CHU, and the OPCD sought a 90-day extension to submit comments, explaining that responding to this request would require "research into decades of historic development" of the capital counsel mechanism, involving access to off-site storage units, gathering county court records, potential public records requests, and interviews of persons with knowledge of Tennessee's post-conviction proceedings. Gutierrez Decl. Ex. 4, p. 2. Tennessee's failure to provide any supporting documentation to DOJ with its application increased the burden on the commentors to ensure that DOJ considered all relevant information, as required by regulation. *See* Gutierrez Decl. Ex. 5, p. 2 (describing the work required to identify and review relevant case files; conduct interviews; obtain fee vouchers for attorneys, expert requests and expert vouchers; and synthesize the data"). TNM-CHU estimated that this process would require hundreds of hours of staff time. *Id*. Furthermore, the many unsupported statements and misrepresentations in Tennessee's application required commentors to compile extensive rebuttal information. Gutierrez Decl. Ex. 6, p. 2.

The Attorney General has yet to respond to any of the requests for an extension, apparently allowing only sixty days from the August 6 notice to the October 6 deadline for public comment. This short period increases the burden on the already burdened commenting agencies that had sought it. These agencies jointly represent a majority of those on Tennessee's death row. Gutierrez Decl. Ex. 4, p. 1; Ex. 5, p. 2; Ex. 6, p. 1. The agencies' clients, during this foreshortened comment period, have continued to live under a cloud of uncertainty about the continued viability of their

litigation, as the opt-in provisions threaten to upend the decades-old timelines of many of their cases. And the additional workload created for their lawyers by the certification process has decreased the time available to litigate their ongoing cases. Gutierrez Decl. Ex. 4, p. 3.

Accordingly, Plaintiffs are in an untenable position of being coerced into participating in a biased administrative process that grants the Attorney General the power to legislate, prosecute, and adjudicate the scope of federal habeas review of their death sentences. The unconstitutional proceeding is time-consuming, resource-intensive, and redirects limited resources away from their ability to defend against their sentences of death.

## IV. The Attorney General is the nation's chief prosecutor whose interests are aligned with States.

The Attorney General is the nation's chief prosecutor whose institutional interests have consistently aligned with the interests of law enforcement and state prosecutors, and against those of capital defendants. *See* Judiciary Act of 1789, § 35, ch. 20, 1 Stat. 73 ("And there shall also be appointed a meet person, learned in the law, to act as attorney-general for the United States, who shall be sworn or affirmed to a faithful execution of his office; whose duty it shall be to prosecute and conduct all suits in the Supreme Court in which the United States shall be concerned . . ."). *See Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985) ("As the Nation's chief law enforcement officer, the Attorney General provides vital assistance to the President in the performance of the latter's constitutional duty to 'preserve, protect, and defend the Constitution of the United States.' U.S. Const., Art. II, § 1, cl. 8.").

As the nation's chief prosecutor, the Attorney General directs the Department of Justice regularly to oppose attempts to standardize or improve criminal defense performance. In this role, the Attorney General has been a forceful legal advocate for states and law enforcement in litigation challenging state convictions in federal habeas proceedings, has repeatedly asserted a legal interest

# EXHIBIT 5

E-FILED
5/21/2026 2:44 PM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

**IN THE CHANCERY COURT FOR DAVIDSON COUNTY
TWENTIETH JUDICIAL DISTRICT
THE STATE OF TENNESSEE**

| | |
|---|---|
| FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE,<br><br>*Plaintiffs*,<br><br>v.<br><br>JONATHAN SKRMETTI,<br><br>*Defendant*. | Case No. ___________________ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY INJUNCTION**

requirements. Fed. Pub. Def. for the Middle Dist. of Tenn. and Fed. Def. Servs. of E. Tenn., Inc., Comment on Notice of Request for Certification of Tenn. Cap. Couns. Mechanism (Oct. 10, 2025) (hereinafter "Public Comment"), D.E. 1-2. They also demonstrated that in practice, Tennessee has failed to comply with its own rules for appointing postconviction counsel. *Id.* at 25, 36–41, 43–45.

## V. The U.S. Attorney General Announces A New Rule To Govern Certification

Rather than responding to public comments, requesting additional information, or deciding Tennessee's application, the US-AG initiated rulemaking proceedings to set forth a new rule to govern certification. On November 20, 2025, OLP submitted an EO 12866 Regulatory Review to the Office of Information and Regulatory Affairs ("OIRA") of the Office of Management and Budget ("OMB") for a new Proposed Rule for the Certification Process for State Capital Counsel Systems. *See* RIN 1105-AB80. Then, on February 6, 2026, OIRA published notice of its Conclusion of EO 12866 Regulatory Review of the Department's proposed new rule. *See id.* at Certification Process for State Cap. Couns. Sys, OIRA, OMB. This permitted the Department to remove the current rule and conduct a rulemaking proceeding to promulgate a revised rule.

On May 15, 2026, to protect their ability to challenge the new rule and potential certification thereunder upon judicial review, Plaintiffs once again expended significant resources in submitting a public comment. Ferrell Decl. at ¶ 9; Harwell Decl. at ¶ 10.

## VI. Certification Is Now Imminent

Despite deeming the current rule unlawful, and as such, indicating that Tennessee's application would be decided under the Proposed Rule once it became final, the US-AG surprised Plaintiffs when, on April 30, 2026, OLP published a March 27, 2026 letter from the US-AG to the TN-AGR requesting an election if Tennessee still wishes to be considered for certification under the current rule. Letter from Daniel E. Burrows, Assistant Att'y Gen. U.S. Dep't of Just., to

Jonathan Skrmetti, Att'y Gen., State of Tenn. (Mar. 27, 2026), https://www.justice.gov/olp/media/1438826/dl?inline. The Department stated that if so, it intends to decide Tennessee's request by ***May 26, 2026***. *Id.* at 1.

Given that the Department failed to promptly disclose its letter to the TN-AGR to the public and has not disclosed the TN-AGR's response, Plaintiffs suspect that the US-AG and TN-AGR have engaged in prohibited *ex parte* communication regarding Tennessee's application, including whether the TN-AGR has elected for Tennessee to be certified under the Proposed Rule. Indeed, the letter itself was an *ex parte* communication. To uncover such communication so as to be able to meaningfully comment on all aspects of the US-AG's decision-making process, Plaintiffs sent a letter to the Department seeking such information, as well as requesting that the public comment period on Tennessee's application be reopened for thirty days. Letter from Jennifer Ware-Philipps, Assoc., White & Case LLP, to Levi Lall, Couns., OLP, U.S. Dep't of Just. (May 8, 2026), D.E. 1-3. The Department has not responded to that request.

In addition, attorneys at TNM expended additional resources submitting Tennessee Public Records Act requests to the TN-AGR requesting records of such communication. Letter from Elijah Swiney, Legal Rsch & Writing Specialist, TNM, to Jonathan Skrmetti, Att'y Gen., State of Tenn. (May 6, 2026), D.E. 1-4; Letter from Elijah Swiney, Legal Rsch & Writing Specialist, TNM, to Jonathan Skrmetti, Att'y Gen., State of Tenn. (May 12, 2026), D.E. 1-5. The TN-AGR did not disclose whether Tennessee has elected to be certified under the current or Proposed Rule.

Given that certification is imminent—*i.e.*, ***within a matter of days***—and poses severe consequence for Plaintiffs and their clients, Plaintiffs requested via letter that the TN-AGR withdraw its unlawful request by 5:00 p.m. ET on May 19, 2026, or alternatively to meet and

confer. Letter from Ammar Inayatali, Assoc., White & Case LLP, to Jonathan Skrmetti, Att'y Gen., State of Tenn. (May 8, 2026), D.E. 1-6.

On May 18, 2026, Plaintiffs' counsel conferred with members of the TN-AGR's office. The TN-AGR's office did not disclose whether it has sought to proceed under the current rule or Proposed Rule and did not express an intention to withdraw the application.

## ARGUMENT

This Court considers four factors when deciding whether to issue a temporary injunction: (1) whether there is threat that Plaintiffs will suffer irreparable harm absent an injunction; (2) the balance between this harm and the injury that granting the injunction may inflict on the defendant; (3) the public interest; and (4) Plaintiff's likelihood of success on the merits. *See, e.g., NuLife Ventures, LLC v. AVACEN, Inc.*, 2021 WL 1421201, at *4 (Tenn. Ct. App. Apr. 15, 2021); *Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 310 (Tenn. Ct. App. 2020).

Each factor strongly favors an injunction here. Certification under Chapter 154 would immediately and irreparably harm Plaintiffs by forcing them to divert and redirect scarce resources from other cases to litigate the potentially harmful effects of certification on their clients. Certification would also pose immediate and severe consequences for death-sentenced prisoners at all stages of litigation. Under Chapter 154's shortened statute of limitations and restricted tolling requirements, death-sentenced prisoners will likely rush to appeal their convictions to the U.S. Supreme Court, and then to subsequently file a postconviction petition, so as to preserve as much time as possible to file a federal habeas petition. Such rushed litigation would flood an already burdened federal and state court system, while also potentially forcing federal courts to decide habeas petitions on an expedited timeframe.