**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

Tel: 202-514-4452

**By CM/ECF**

November 24, 2026

Clifton B. Cislak
Clerk of Court
United States Court of Appeals for the D.C. Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave., NW
Washington, DC 20001

RE: *Federal Defender Services of Eastern Tennessee, Inc. et al. v. Blanche et al.*, No. 26-1229 (D.C. Cir.)

Dear Mr. Cislak:

Pursuant to Federal Rule of Appellate Procedure 28(j), respondents Todd Blanche, in his official capacity as Attorney General, and the United States respectfully inform the Court that the Tennessee trial court has granted Tennessee's motion to dismiss in *Federal Defender Services of Eastern Tennessee, Inc. v. Skrmetti*, No. 26-0660-II (Davidson Cnty., Tenn. Ch. Nov. 24, 2026). This is one of the two actions for which petitioners seek to hold this action in abeyance, and both of those actions have now been dismissed by the respective trial courts. *See also Bland v. Blanche*, No. 25-cv-03499, 2026 WL 1998552 (D.D.C. July 10, 2026), *appeal docketed*, No. 26-5305 (D.C. Cir.).

In the Tennessee state-court action, the court dismissed because plaintiffs' lawsuit is barred by Tennessee's sovereign immunity. Op. 8-11. The court did not opine on the merits of plaintiffs' arguments concerning

whether the Tennessee Attorney General acted within the scope of his authority. Op. 28-30.

The fact that both cases for which petitioners seek to hold this case in abeyance have now been dismissed by the respective trial courts further demonstrates that petitioners' request to hold this proceeding in abeyance should be denied.

Sincerely,

/s/ *Douglas C. Dreier*
Douglas C. Dreier
U.S. Department of Justice
Civil Division, Appellate Staff

cc: All counsel (via CM/ECF)

**CERTIFICATES OF COMPLIANCE AND SERVICE**

I certify that this letter contains 190 words according to the count of Microsoft Office 365, and that this is within the word limit provided by Fed. R. App. P. 28(j).

I hereby certify that on November 24, 2026, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *Douglas C. Dreier*
DOUGLAS C. DREIER

E-FILED
11/24/2026 10:37 AM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**20TH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART TWO**

| | | |
|---|---|---|
| **FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., FEDERAL PUBLIC DEFENDER FOR THE MIDDLE DISTRICT OF TENNESSEE, ANDRE BLAND, JOHN MICHAEL BANE, and STEPHEN FERRELL,** | ) | |
| **Plaintiffs,** | ) | **Case No. 26-0660-II** |
| **vs.** | ) | |
| **JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter,** | ) | |
| **Defendant.** | ) | |

**ORDER GRANTING MOTION TO DISMISS**

This matter came before the Court on October 23, 2026, upon the Motion of Defendant Jonathan Skrmetti, in his official capacity as Attorney General and Reporter, to Dismiss the Amended Complaint of Plaintiffs the Federal Defender Services of Eastern Tennessee, Inc. ("FDSET"), Federal Public Defender for the Middle District of Tennessee ("TNM" and collectively, "Federal Defenders"), Andre Bland, John Michael Bane, and Stephen Ferrell (collectively, "Plaintiffs") for lack of jurisdiction and failure to state a claim under Rule 12.02 of the Tennessee Rules of Civil Procedure. Having considered the allegations of the Amended Complaint, the briefs, the applicable caselaw, and the arguments of counsel, the Court is now ready to rule.

**Allegations in the Amended Complaint**

This matter arises from the Tennessee Attorney General's request for certification under Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") that provides a fast-track process for federal habeas corpus review in capital punishment cases. Plaintiffs allege that the Tennessee Attorney General lacked authority to ask the federal government to certify Tennessee's compliance with the requirements of Chapter 154 in AEDPA and that certification under Chapter 154 carries severe consequences for death-sentenced prisoners and their counsel. Specifically, Chapter 154 cuts in half the statute of limitations to file a federal habeas petition—to only 180 days, instead of a year—and limits the circumstances in which tolling is permitted.

Plaintiffs initially filed suit on May 21, 2026 seeking a temporary injunction ordering the Tennessee Attorney General to withdrawal the application and enjoin him from reapplying for certification under existing law. After a hearing, the Court denied the Motion for Temporary Injunction on May 28, 2026. Since then, the U.S. Attorney General has officially certified Tennessee under Chapter 154, and Plaintiffs amended their complaint on July 17, 2026. As a result of the certification, the state may invoke Chapter 154 against all capital habeas petitioners whose postconviction counsel was appointed pursuant to the certified mechanism.

*The Parties*

Plaintiff FDSET operates as the federal public defender in the Eastern District of Tennessee pursuant to 18 U.S.C. § 3006(A)(g). FDSET includes a Capital Habeas Unit ("CHU") which is appointed to serve in all non-conflicted capital habeas cases arising from the Eastern District of Tennessee and nine other federal districts across the country. Currently, FDSET represents six (6) inmates on Tennessee's death row with federal habeas petitions pending in district court. Plaintiff

TNM operates as the federal public defender in the Middle District of Tennessee pursuant to 18 U.S.C. § 3006(A)(g). TNM likewise includes a CHU and is appointed counsel for nineteen (19) of the forty-one (41) individuals currently on death row in Tennessee. Nine of those clients have pending federal habeas petitions.

Plaintiffs Andre Bland and John Michael Bane are capital habeas petitioners represented by TNM in habeas proceedings (collectively the "Habeas Petitioners"). During the pendency of Mr. Bane's application, he initiated state court proceedings to obtain DNA testing intended to establish his innocence. Tennessee agreed to that testing, and his counsel is currently working with the State and an appropriate laboratory to complete the testing. Mr. Bane expects that those results will necessitate an amendment of the federal petition for the writ of habeas corpus.

Plaintiff Stephen Ferrell is a Tennessee taxpayer and an Assistant Federal Defender in the CHU for FDSET. Mr. Ferrell has and continues to pay the Tennessee Professional Privilege Tax as an attorney, as well as state property taxes, gasoline taxes, and motor vehicle taxes. The tax payments made by Mr. Ferrell to the State of Tennessee flow into the State's general fund. The General Assembly annually appropriates funds from the State's general fund to the TN-AGR's office for payroll, operational expenses (i.e., travel, printing and duplicating, communications, equipment, training, technology), the publication of Tennessee reports, and special litigation. Plaintiffs believe that the funds the Tennessee Attorney General's office used to participate in the Chapter 154 certification process and will use to seek enforcement of Chapter 154 against federal habeas petitioners and to intervene in any judicial review of the certification decision will derive from annual appropriations from the State's general fund.

Defendant Jonathan Skrmetti is the Attorney General for the State of Tennessee. The Tennessee Constitution establishes the office of the Attorney General and Reporter. Tenn. Const.

art. VI, § 5. The Attorney General serves as "the executive head" of the "legal department of the state," Tenn. Code Ann. § 8-6-102, and has all authority "vested in the office by the constitution of Tennessee and . . . under the statutory law," *id.* § 8-6-109(a). On June 6, 2025, he requested that the U.S. Attorney General certify that Tennessee qualifies for expedited federal habeas proceedings pursuant to Chapter 154.

*AEDPA and Chapter 154*

AEDPA governs federal habeas review of state criminal judgments, and Chapter 153 of AEDPA establishes general requirements and conditions for such habeas petitions, including a one-year statute of limitations for filing a petition, 28 U.S.C.§ 2244(d). Compared to Chapter 153, Chapter 154 places additional substantive and procedural restrictions on federal habeas review of state capital convictions and sentences. For example, under Chapter 154's procedures, a capital prisoner must apply for habeas corpus within 180 days of a final state court judgment of convictions, as opposed to one year after final judgment. *Compare* 28 U.S.C. § 2263(A), *with id.* § 2244(d)(1). Further, federal courts must resolve capital habeas cases within a statutory time frame. *See id.* § 2266(b)(1)(A); *id.* § 2266(c)(1)(A).

For Chapter 154's procedures to apply, a State must first obtain federal certification that it meets the necessary requirements. 28 U.S.C. § 2265(a). Specifically, an "appropriate State official" must first apply to the U.S. Attorney General to take advantage of Chapter 154's procedures. 28 U.S.C. § 2265(a)(1). Upon such request, the U.S. Attorney General must undertake an administrative process governed by the Administrative Procedures Act ("APA") to certify the State meets certain requirements and historically involves a public comment period in which stakeholders, including federal defender organizations, comment on whether certification would be proper. 28 U.S.C. § 2265(a)(1)(A). Once a state is certified, Chapter 154 may apply to all capital

habeas cases in which the petitioner's postconviction counsel was "appointed pursuant to [the approved] mechanism, [the] petitioner validly waived counsel, [the] petitioner retained counsel, or [the] petitioner was found not to be indigent." 28 U.S.C. § 2261(b)(2).

On June 6, 2025, the Tennessee Attorney General requested that the U.S. Attorney General certify that Tennessee qualifies for expedited federal habeas proceedings pursuant to Chapter 154 of AEDPA. On July 10, 2026, the U.S. Attorney General published a notice—Certification of Tennessee Capital Counsel Mechanism—in which he certified that Tennessee has established a postconviction capital counsel mechanism satisfying the requirements of" Chapter 154.

In addition to putting Mr. Bane's ability to seek federal habeas relief through an appropriately amended petition imminently at risk, and similarly threatening Mr. Bland's petition, certification has already caused havoc for the Federal Defenders. Federal Defender staff have had to rearrange schedules and postpone other habeas work to discuss the certification with clients and accommodate travel and meetings in Washington D.C. related to the implications of Chapter 154.

For Mr. Bane, Chapter 154, if applied, will immediately erect a new, aggressive, substantive bar to amending his federal habeas petition to reflect the results of DNA testing to which the State of Tennessee has agreed. And for Mr. Bland, certification threatens to truncate the time available to pursue newly exhausted intellectual-disability and related claims upon return from state court and to litigate amendments in his stayed federal habeas petition.

On July 14, 2026, Plaintiffs' counsel submitted another letter informing the Tennessee Attorney General of the illegality of using public funds to seek enforcement of Chapter 154's provisions against any federal habeas petitioner and to intervene in any judicial review proceeding. Plaintiffs' counsel demanded corrective action, but there has been no response.

On July 17, 2026, Plaintiffs filed an Amended Complaint for Declaratory and Injunctive Relief raising two claims; first, Plaintiffs allege that Defendant acted *ultra vires* by seeking Chapter 154 certification, and, second, Plaintiffs allege that Defendant's request for certification encroached upon the General Assembly's legislative authority in violation of Tenn. Const. art. II, §§ 1, 2. Plaintiffs seek a permanent injunction enjoining the Tennessee Attorney General from (1) seeking to defend the certification decision in the U.S. Court of Appeals for the D.C. Circuit and the U.S. Supreme Court, (2) invoking or enforcing Chapter 154 in any federal habeas corpus proceeding, and (3) reapplying for certification. Plaintiffs also seek a judgment declaring that the Tennessee Attorney General's request for certification was extra-statutory and unconstitutional and thus Tennessee's application is void and of no effect. Plaintiffs cite to Tenn. Code Ann. § 29-14-102(a) which provides that "Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

## **STANDARD OF REVIEW**

*Rule 12.02(1)*

Rule 12.02(1) provides for dismissal in the event of a "lack of jurisdiction over the subject matter." Subject matter jurisdiction concerns a court's very authority to resolve the case before it. *Minyard v. Lucas*, 576 S.W.3d 351, 355 (Tenn. 2019) (citing *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–13 (Tenn. 2012). Such authority may "only be conferred upon a court by a constitutional or legislative act." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000) (citing *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989)); *Minyard*, 576 S.W.3d at 355 (citing *Chapman*, 380 S.W.3d at 712–13)

("Subject matter jurisdiction is conferred and defined by the Tennessee Constitution and statutes.").

A determination on the particular nature of a case is essential to whether a court may properly assert subject matter jurisdiction over it. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (citing *Cooper v. Reynolds*, 77 U.S. 308 (1870); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988)); *State ex rel. Comm'r of Dep't of Transp. v. Thomas*, 336 S.W.3d 588, 602 (Tenn. Ct. App. 2010) (quoting *Northland Ins. Co.*, 33 S.W.3d at 729). A court must ascertain what a plaintiff is seeking, on what basis or bases the plaintiff is seeking it, and whether state law authorizes the court to give the plaintiff what he seeks. *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) (citing *Northland Ins. Co.*, 33 S.W.3d at 729; *Landers*, 872 S.W.2d at 675).

*Rule 12.02(6)*

Defendant also moves under Tenn. Rule of Civil Procedure 12.02(6) for failure to state a claim. Such a motion "tests 'only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.'" *Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 323 (Tenn. 2021) (quoting *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)); *Dobbs v. Guenther*, 846 S.W.2d 270, 273–74 (Tenn. Ct. App. 1992) (citing *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn. 1977). Therefore, a plaintiff's allegations are taken as true. *Id.* (citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). And all inferences that the Court might reasonably draw from those allegations are drawn in the plaintiff's favor. *Webb*, 346 S.W.3d at 426 (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). "[L]egal arguments or 'legal conclusions' couched as facts," however, are not factual allegations and therefore "are not taken as true." *Estate of Haire v. Webster*, 570

S.W.3d 683, 690 (Tenn. 2019) (quoting *Moore-Pennoyer v. State*, 515 S.W.3d 271, 276 (Tenn. 2017)). By the very act of filing a motion to dismiss, a defendant—for the purposes of that motion—"admit[s] the truth of all of the relevant and material allegations contained in the complaint, but . . . assert[s] that the allegations fail to establish a cause of action." *Elvis Presley Enterprises, Inc.*, 620 S.W.3d at 323 (quoting *Leach v. Taylor*, 124 S.W.3d 87, 90 (Tenn. 2004)). Accordingly, we are compelled to "grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id.* (quoting *Crews*, 78 S.W.3d at 857).

## ANALYSIS

A threshold issue is whether the Court has jurisdiction to hear this matter such that it is authorized to order any relief to Plaintiffs. Defendant initially argues that Plaintiffs' suit is barred by sovereign immunity under Article I, § 17 of the Tennessee Constitution.

### *Sovereign Immunity*

Sovereign immunity is embodied in the Tennessee Constitution, which provides, "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const., Art. I, § 17. In addition, the doctrine of sovereign immunity is codified at Tenn. Code Ann. § 20-13-102(a), which provides:

> No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea or demurrer of the law officer of the state, or counsel employed for the state.

Pursuant to these constitutional and statutory provisions, "suits cannot be brought against the State unless explicitly authorized by statute." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849 (Tenn. 2008); *see also Greenhill v. Carpenter*, 718 S.W.2d 268, 270 (Tenn. Ct. App. 1986).

The Court of Appeals has explained the relation between this doctrine and that of subject matter jurisdiction:

> Subject matter jurisdiction and sovereign immunity are two different legal concepts. However, courts may lack subject matter jurisdiction because of the doctrine of sovereign immunity. Sovereign immunity is jurisdictional immunity from suit, which acts as a jurisdictional bar to an action against the state by precluding a court from exercising subject-matter jurisdiction. The doctrine of sovereign immunity divests the courts of subject matter jurisdiction.

*Mobley v. State*, No. W2017-02356-COA-R3-CV, 2019 WL 117585, at *3 (Tenn. Ct. App. Jan. 7, 2019) (quoting *Colonial Pipeline Co.*, 263 S.W.3d at 851; *White v. State ex rel. Armstrong*, No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *3 (Tenn. Ct. App. Feb. 16, 2001)) (alterations and internal quotation marks omitted). Accordingly, the General Assembly must waive sovereign immunity in order for a suit against the State or its officers to proceed. *See* Tenn. Const. art. 1, § 17.

Defendant argues that no express waiver of sovereign immunity applies, and the exception set forth in *Colonial Pipeline* does not apply because Plaintiffs do not challenge the constitutionality of a statute. Plaintiffs seek relief under the Declaratory Judgment Act, codified at Tenn. Code Ann. § 29-14-101, *et seq*., and argue that sovereign immunity does not attach to this action because there is no immunity when a state official acts without the authority of the state. Plaintiffs contend this doctrine is not limited to suits challenging the enforcement of an unconstitutional statute but applies with equal force whenever a state official acts beyond the scope of this lawful authority. Plaintiffs point to the principle set forth in *Ex parte Young*, 209 U.S. 123, 155 (1908), permitting judicial review of official action for compliance with state law. Under this framework, Plaintiffs contend that Tennessee courts have long considered challenges to the lawfulness of state action, including in cases alleging no unconstitutional statute but rather in cases alleging *ultra vires* actions. Plaintiffs argue that Tenn. Code Ann. 20-13-102 and the principles

underlying *Ex parte Young* demonstrate that when a state official acts without "the authority of the state," no sovereign immunity attaches and therefore no such immunity needs to be waived.

In *Colonial Pipeline*, the Supreme Court addressed the issue of whether a declaratory judgment may be issued against individual state officers. *Colonial Pipeline*, 263 S.W.3d at 848. The Tennessee Supreme Court held that "(1) a party making a constitutional challenge to the facial validity of a statute need not exhaust its administrative remedies, and that (2) the doctrine of sovereign immunity does not bar a suit for declaratory judgment asking state officers to be enjoined from enforcing such a statute so long as the action does not seek money damages." *Id*. at 832. In finding that the plaintiff in that case could bring a declaratory judgment against the state Comptroller of the Treasury, the Supreme Court found that "the doctrine of sovereign immunity does not bar suits against state officers to prevent them from enforcing an allegedly unconstitutional statute," because "an officer acting pursuant to an unconstitutional statute does not act under the authority of the state; thus, the officer does not enjoy the immunity that would normally be granted pursuant to official authority." *Id*. at 849-50 (citing *Stockton v. Morris & Pierce*, 110 S.W.2d 480 (Tenn. 1937); *Ex parte Young*, 209 U.S. 123 (1908)). Here, however, Plaintiffs do not contend that the statutes at issue are unconstitutional.

Cases after *Colonial Pipeline* recognize this limitation. Recently, in *State ex rel. Tulis v. Gerregano*, No. M2025-00904-COA-R3-CV, 2026 WL 2566783 (Tenn. Ct. App. Aug. 31, 2026), the Court of Appeals addressed the issue of "whether sovereign immunity applies where a litigant alleges that state officers have acted without statutory authority." *State ex rel. Tulis v. Gerregano*, 2026 WL 2566783, at *2. In that case, a *pro se* plaintiff stopped paying his car insurance and his vehicle's registration was revoked. He initiated a contested case hearing against the Department of Revenue, and while it remained pending, he filed suit against the Commissioner of Revenue

and the Commissioner of Safety and Homeland Security, in their official capacities, alleging that the two departments had gone beyond their statutory authority in administering the Tennessee Financial Responsibility Law and its electronic insurance verification program. In determining whether jurisdiction was conferred on the trial court, the Court of Appeals addressed the exception in *Colonial Pipeline*. The appellate court held:

> The Court was clear about the boundaries of what it had done. "The exception we laid out ... pertains only to suits preventing the enforcement of an unconstitutional statute. It would not allow for money damages to be awarded against state officers because such a suit would 'reach the state, its treasury, funds, or property.' " *Id.* (quoting Tenn. Code Ann. § 20-13-102). Thus, the *Colonial Pipeline* holding establishes two conditions to circumvent the UAPA final decision requirement for judicial review: (1) a challenge to the facial validity of a statute, and (2) no request for money. Appellant satisfies neither and admits to the validity of the law.
> …
>
> Indeed, his whole argument depends on the statutes being valid and the commissioners having departed from them. **However, an *ultra vires* allegation without a constitutional challenge does not clear the *Colonial Pipeline* threshold.** *Johnston v. Tenn. State Election Comm'n*, No. M2015-01975-COA-R3-CV, 2016 WL 5416339, at *3 (Tenn. Ct. App. Sept. 27, 2016). Therefore, Appellant does not meet the first condition.

*State ex rel. Tulis v. Gerregano*, 2026 WL 2566783, at *5 (emphasis added). Moreover, other decisions hold the same. *See Johnston v. Tennessee State Election Comm'n*, No. M2015-01975-COA-R3-CV, 2016 WL 5416339, at *3 (Tenn. Ct. App. Sept. 27, 2016) ("[A]n allegation pertaining to an unconstitutional statute is a threshold requirement to remove or waive immunity [under the Declaratory Judgment Act]"); *Ingram v. Tennessee Dep't of Lab. & Workforce Dev.*, No. 3:12-CV-01106, 2013 WL 1965130, at *3 (M.D. Tenn. May 10, 2013) (The Court found that the plaintiff's claim was barred by sovereign immunity, noting that plaintiff did not challenge the constitutionality of a state statute, but attempted to enforce its provision by arguing that state official violated the statute.); *Payne v. Carpenter*, No. M2014-00688-COA-R3-CV, 2016 WL 4142485, at *3 (Tenn. Ct. App. Aug. 2, 2016) (Plaintiff did not allege that statute was

unconstitutional, but rather that a state official acted outside the scope of his authority, and the Court found that *Colonial Pipeline* clearly held that the *ultra vires* exception pertains only to suits preventing the enforcement of an unconstitutional statute, and that plaintiff did not meet that threshold requirement.).

Accordingly, based on the foregoing, the Court finds that Plaintiffs' suit is barred by the doctrine of sovereign immunity. The Tennessee Justice Center and former Justice Gary R. Wade and Justice Penny J. White filed an amicus brief arguing that *Colonial Pipeline* and the authorities on which that decision relies recognize that immunity does not attach to *ultra vires* conduct and contend that Defendant's position would leave citizens without a remedy and would grant state actors unchecked power to act *ultra vires*. While the Court shares this substantial concern, the Court feels constrained to make the foregoing finding based on the analysis and language set forth in *Colonial Pipeline* and the subsequent cases from courts at the appellate level superior to its trial court jurisdiction interpreting same.

However, in the event that sovereign immunity does not bar this suit, the Court addresses Defendant's remaining arguments and finds as follows.

<u>*Standing*</u>

In the Amended Complaint, Plaintiffs add three new plaintiffs—Mr. Bane and Mr. Bland (collectively, "Habeas Petitioners") and Mr. Ferrell ("Taxpayer Plaintiff"). Defendant contends that none of the Plaintiffs have standing; specifically, Defendant argues that the Federal Defenders allege injury from resource expenditures opposing Tennessee's certification, the Habeas Petitioners allege no imminently impending injury from Tennessee's certification, and the Taxpayer Plaintiff fails to meet taxpayer standing, as he made no prior demand on the Attorney General and does not identify any specific illegally spent funds.

"Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action." *City of Memphis v. Hargett*, 414 S.W.3d 88, 97 (Tenn. 2013) (citing *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006); *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). The three-part standing test for public rights claims "requires plaintiffs to show (1) an injury in fact (2) that is fairly traceable to the challenged conduct and (3) is capable of being redressed by a favorable judicial decision." *Harris v. Lee*, No. M2025-01915-COA-R9-CV, 2026 WL 1144357, at *2 (Tenn. Ct. App. Apr. 28, 2026) (quoting *Wygant v. Lee*, 740 S.W.3d 782 (Tenn. 2025)). The injury must be "distinct and palpable." *Id.* (quoting *City of Memphis*, 414 S.W.3d at 98; *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006)). The injury also must be "actual or imminent." *Id.* (quoting *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 283 (Tenn. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff has the burden to establish these elements "by the same degree of evidence as other matters on which the plaintiff bears the burden of proof." *Id.* (citing *Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dep't of Educ.*, 645 S.W.3d 141, 149 (Tenn. 2022)).

*i. Injury-in-fact*

Defendant contends that the Federal Defenders' injuries arise exclusively from using resources to advocate against and respond to Tennessee's Chapter 154 certification. Further, the Federal Defenders allege no "imminent" injury because Plaintiffs do not allege that the Attorney General will invoke or enforce Chapter 154 in any specific habeas proceeding. Defendant also contends that the Habeas Petitioners lack standing because the Amended Complaint does not allege that Chapter 154 will ever be applied to their federal habeas cases or, if applied, that it will prejudice their habeas petitions.

Plaintiffs argue that certification has compelled them to fundamentally alter their organizational structures to ensure they may continue to fulfill their statutory mandate of litigating capital habeas cases and providing adequate training to staff and external stakeholders. Similarly, Mr. Bland and Mr. Bane are at imminent risk of having some or all their habeas claims burdened or barred by Chapter 154's stringent requirements.

To satisfy the injury in fact requirement, a plaintiff must show an injury that is "distinct and palpable." *Wygant*, 740 S.W.3d at 809 (quoting *ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006)). Injuries that are conjectural, hypothetical, or based on an interest shared by the general public are not enough. *Id.* (citing *ACLU of Tenn.*, 195 S.W.3d at 620). If the plaintiff is not presently suffering an injury, the injury faced must be "imminent." *Id.* (quoting *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 283 (Tenn. 2024); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Defendant points to several cases in which the Court found that organizations representing capital prisoners in federal habeas proceedings did not have standing. In *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241 (9th Cir. 2016), one such organization brought suit under the APA challenging regulations implementing Chapter 154 certification. The Court noted that these regulations prescribed procedures and criteria to guide the Attorney General's certification of state capital-counsel mechanisms, and, thus, directly affected only the Attorney General and, to some degree, states seeking certification under Chapter 154. *Habeas Corpus Res. Ctr.*, 816 F.3d at 1248. The Court failed to see how the plaintiff organizations "have suffered a concrete, particularized injury" and found that the plaintiffs faced no "certainly impending" harm resulting from the issuance and application of the rules. *Id.* at 1251. Specifically, the Court found that the organizations' "bare uncertainty regarding the validity of the Final Regulations and the

applicability of Chapter 154 to their clients' federal habeas cases absent 'any concrete application that threatens imminent harm to [their] interests' cannot support standing." *Id*. at 1249-50 (quoting *Summers v. Earth Island Inst*., 555 U.S. 488, 494, 129 S. Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009)).

The Court further found that, even if the case were remanded to provide their death-sentenced clients an opportunity to intervene, the case was not ripe. The Court noted that the final regulations did not act upon capital prisoners but guide the Attorney General's certification of state capital-counsel mechanisms. Further, "[a] capital prisoner's federal habeas rights may be affected indirectly, if the sentencing state requests certification and if the Attorney General finds that the state's capital-counsel mechanism comports with Chapter 154 and the Final Regulations." *Id*. at 1252. The Court found that the final regulations "do not require anything of capital prisoners—or indeed of their lawyers—and do not immediately alter their federal habeas rights or procedures." *Id*. at 1253. "Before a capital prisoner's rights may be affected, the sentencing state must request certification by the Attorney General, the Attorney General must (under the Final Regulations) allow for public comment on the request, and the Attorney General must then certify that the state's capital-counsel mechanism is compliant with Chapter 154." *Id*. However, the Court finds this case distinguishable from the case at bar because Tennessee has been certified under Chapter 154, and the application of Chapter 154 to the Federal Defenders and their clients is imminent and likely to occur.

Defendant next cites *Boggs v. United States Dep't of Just.*, No. CV1905238PHXJJTJZB, 2020 WL 4464369 (D. Ariz. Aug. 4, 2020), in which thirteen Arizona death row inmates and the Office of the Federal Public Defender for the District of Arizona filed suit after Arizona submitted an application for Chapter 154 certification. Plaintiffs requested injunctive relief under the APA seeking to set aside the Final Rule for the certification process for state capital counsel system.

While the case was pending, the Attorney General approved Arizona's certification application and certified the state as qualifying for Chapter 154, and the plaintiffs filed a petition for review in the D.C. Circuit. *Boggs*, 2020 WL 4464369, at *2. The Court found that plaintiffs suffered no cognizable injury independent of the Attorney General's certification, which can be challenged only in the D.C. Circuit. *Id*. In particular, the fact that plaintiffs "expended resources to participate in the rulemaking process is insufficient to show an injury that would confer standing," and "[s]imilarly, neither [p]laintiffs' uncertainty as to whether the regulations would be adopted nor their need to undertake a precautionary litigation strategy constitutes an injury-in fact." *Id*. at *4. Further, the Court found that the injuries were traceable only to the certification decision, not the underlying regulations, as the "challenges to the regulations are inextricably linked to the certification decision," and that review is available only in the D.C. Circuit. *Id*. The Court likewise finds this case distinguishable from the case at bar, because Plaintiffs here do not challenge the underlying regulations—instead, they contend that the Tennessee Attorney General lacked authority to seek certification in the first place. Thus, the injury-in-fact and traceability issues involve a slightly different analysis.

Defendant also cites *Texas Def. Serv. v. United States Dep't of Just*., No. CV 18-426 (RBW), 2019 WL 1538250 (D.D.C. Apr. 9, 2019), in which a nonprofit organization that represents death-sentenced Texas prisoners in post-conviction proceedings and individual capital prisoners brought suit under the APA seeking to set aside the Final Rule regarding certification process for state capital counsel. The organization argued that it had standing because the 2013 regulations frustrated its ability to further its mission because the regulations provided no meaningful guidance that impaired its ability to provide sound legal advice and make strategic decisions. Further, that if Texas were certified, it would immediately have to devote substantial

resources to investigate its clients' claims and prepare their petitions to meet shortened deadlines. *Id*. at *5-6. The Court found that Texas Defender Services did not have organizational standing because it had not shown that the resources spent preparing comments to advocate against Texas's certification was an "operational cost beyond those normally expended to carry out its advocacy mission." *Id*. at *7 (D.D.C. Apr. 9, 2019). As for the individual plaintiffs, the Court found that they failed to demonstrate "a credible and imminent threat of prosecution under the 2013 Regulations." *Id*. at *8. Citing to *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241 (9th Cir. 2016), the Court found that the challenged regulation "is not aimed directly at the individual plaintiffs because . . . 'the 2013 Regulations do not act upon capital prisoners but guide the Attorney General's certification of state capital-counsel mechanisms.'" *Id*. (quoting *Habeas Corpus Res. Ctr.*, 816 F.3d at 1252). The Court likewise held the claims were not yet ripe for review, noting that "in the absence of a determination by the Attorney General on Texas's certification request, the effects of the 2013 Regulations have not been 'felt in a concrete way by the challenging parties,' therefore making judicial review premature." *Id*. at *10 (quoting *In re Aiken Cty.*, 645 F.3d 428, 434 (D.C. Cir. 2011)). As with the two cases discussed above, the Court finds this case distinguishable from the present case because Plaintiffs here do not challenge the underlying regulations—instead, they contend that the Tennessee Attorney General lacked authority to seek certification in the first place, and Tennessee has been certified by the U.S. Attorney General.

In response, Plaintiffs rely on *Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Rev.*, 822 F. Supp. 3d 119 (D.D.C. 2026), to demonstrate that the Federal Defenders have standing. In that case, five nonprofit legal services organizations challenged an interim final rule affecting administrative appellate review by the Board of Immigration Appeals ("BIA"). Specifically, the interim final rule created a presumption of summary dismissal unless a majority of the BIA voted

to accept the appeal on the merits, shortened the deadline, from thirty to ten days, for filing a notice of appeal, and waived any issue not raised in the notice. *Amica Ctr. for Immigrant Rts.*, 822 F. Supp. 3d at 136. The district court found that the organizations had standing, stating that the interim final rule:

> will "directly affect[ ] and interfere[ ] with" the organizations' "core ... activities" of providing legal services in the context of administrative removal proceedings. *All. for Hippocratic Med.*, 602 U.S. at 395, 144 S.Ct. 1540. The organizations will need to fundamentally reorganize how they operate, will incur training and other expenses in doing so, will face impossible (or near impossible) deadlines in seeking to convince the BIA that their clients' appeals do not merit summary dismissal, will lose funding based on the shift in their work away from the BIA and toward the courts of appeals, and will be able to represent fewer clients with less care, in contravention of their core missions.

*Id*. at 146. Further, the defendants in that case argued that a diversion of resources in response to agency action does not itself confer standing. The district court disagreed, finding that the plaintiffs' injuries "go far beyond the mere need to 'divert[] [their] resources in response to a defendant's actions." *Id*. at 147 (quoting *All. for Hippocratic Med.*, 602 U.S. at 370, 144 S.Ct. 1540). Instead, a plaintiff must "expend resources in a manner that keeps [them] from pursuing [their] true purpose[s]" of providing legal services in administrative immigration proceedings. *Id*. (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995)). The court noted that plaintiffs had shown financial losses including the inability to use current sources of funding for mitigation efforts made necessary by the interim final rule, such as courts of appeals practice, and lost incoming revenue streams. *Id*.

Here, the Federal Defenders allege that, like the administrative appeal process in *Amica*, Chapter 154 compresses the time to prepare a federal habeas petition, from one year to 180 days, and makes omissions from that filing substantially more difficult to cure later. *See* 28 U.S.C. § 2263(a); *id*. at §§ 2266(b)(3)(B), 2244(b)(2)(B). By cutting the limitations period in half for filing

a federal habeas petition and by narrowing the circumstances in which a petition may be amended, Chapter 154 directly interferes with the Federal Defenders' core practice of providing "direct legal services" to capital habeas petitioners by requiring them to perform substantially more case investigation, claim development, and threshold litigation within a shortened timeframe.

Upon review of the Amended Complaint, the Federal Defenders' core activities include providing legal representation to persons accused or convicted of federal or capital crimes. (Am. Compl. ¶¶ 13, 15). Currently, the Federal Defenders have fifteen Tennessee death-sentenced clients with pending habeas petitions. (*Id.* at ¶¶ 14, 16). As a result of Chapter 154 certification, the Federal Defenders argue that they will be required to perform substantially more case investigation, claim development, and threshold litigation within a shortened timeframe. Specifically, the Federal Defenders allege that they "will immediately be forced to expend resources, including hundreds of attorney and staff hours, investigating and litigating the legal ramifications of certification," and "[t]hey will have to determine and litigate whether (1) each client's postconviction counsel was appointed according to the approved mechanism, validly waived counsel, or was properly found not to be indigent, *id.* at § 2261(b)(1), (2) received the benefit of such appointment; and (3) is it proper for Chapter 154 to apply retroactively given that their clients previously lacked notice that Chapter 154's provisions would apply." (*Id.* at ¶ 43). Accordingly, this will require the Federal Defenders "to divert staff hours away from other cases that do not implicate Chapter 154 and from otherwise fulfilling their institutional missions." (*Id.*). As for their clients who have yet to file a habeas petition, the Federal Defenders "will have to spend significant resources conducting a similar investigation to determine whether Chapter 154 will apply to their cases," and if so, "they will have to act protectively and hastily file petitions, curtailing further investigation of other potentially meritorious claims." (*Id.* at ¶ 44). Further, the

Federal Defender staff "will need to significantly increase their consultations with Tennessee death row clients to explain what the certification means, explain the ramifications of the state's filings in the clients' cases, discuss how they will defend against the state's position, and answer client questions." (*Id.* at ¶ 46). For FDSET attorneys to visit Tennessee clients, it is a six-hour round trip. (*Id.*). Federal Defender staff have had to rearrange schedules and postpone other habeas work to discuss certification with clients, losing entire days to make the roundtrip, which includes associated travel costs. (*Id.* at ¶ 99). Moreover, Federal Defender staff will need to train existing and incoming attorneys and staff, as well as external stakeholders in capital representation as to the implications of Chapter 154. (*Id.* at ¶¶ 47, 48). Given these increased responsibilities and due to budget constraints, the Federal Defenders cannot increase staff size in response to Tennessee's certification. (*Id.* at ¶ 49).

At the time that Plaintiffs filed suit and when the Court entered its order denying Plaintiff's request for a temporary injunction, the Tennessee Attorney General had submitted an application for Chapter 154 certification. Since then, the U.S. Attorney General approved Tennessee's application and certified the state as qualifying for Chapter 154. Taking the allegations in the Amended Complaint as true, it appears that Chapter 154 will impose significant burdens on the Federal Defenders. The truncated filing deadline will make it more difficult for attorneys to undertake the necessary tasks to file an adequate petition and will force the Federal Defenders to engage in further review of Chapter 154's implications that will impose additional resource, staffing, and financial burdens on the Federal Defenders. Under Chapter 154, the Federal Defenders cannot file a limited protective habeas petition and rely on the liberal amendment standard under the federal rules to add claims developed later. *See* 28 U.S.C. §§ 2266(b)(3)(B), 2244(b)(2)(B). This is further burdened by the fact that the claims reaching the Federal Defenders

will likely be less developed than they would be under Chapter 153, given the shorter filing deadline and Tennessee's postconviction procedure in which the limitations period for federal habeas petitions begins when a defendant's direct appeal is denied. Tenn. Code Ann. § 40-30-102(a); 28 U.S.C. § 2263(a). Chapter 154 will require the Federal Defenders to perform additional investigating, litigation, and counseling of clients as to the applicability and consequences of Chapter 154. The Federal Defenders have already begun to incur costs due to Chapter 154, including expenses associated with travel to visit clients and discuss the implications of Chapter 154. Accordingly, the Court finds that Chapter 154 certification will directly affect and interfere with the organizations' core activities of providing legal services in the context of federal habeas proceedings.

As for the Habeas Petitioners, Plaintiffs argue they have sufficiently alleged the future injury of losing the opportunity to receive habeas review of some or all their claims. In particular, Mr. Bland alleged that he has a pending habeas petition and that his postconviction counsel was appointed after Tennessee's effective certification date. (Am. Compl., ¶¶ 17-18).He also alleged that Chapter 154 may truncate the time available to "present his newly exhausted intellectual-disability and related claims upon return from state court." (*Id.* at ¶ 42). In addition, Mr. Bane alleged that his postconviction counsel was appointed after Tennessee's effective certification date and that he intends to amend his petition to account for DNA testing results to support his innocence claim and that Chapter 154 imposes a heightened amendment standard. (*Id.* at ¶ 19, 41); 28 U.S.C. §§ 2266(b)(3)(B), 2244(b)(2)(B). The Habeas Petitioners have alleged that Chapter 154's invocation could bar their claims as untimely or bar amendments that could provide habeas relief. The Court finds this is a concrete, specific, and particularized injury to these plaintiffs.

Thus, the Court concludes they have established an injury-in-fact with respect to their claims for purposes of standing.

*ii. Traceability/Redressability*

Defendant also argues that the Federal Defenders lack any injury traceable to the conduct they seek to enjoin or redressable by their requested injunctive and declaratory relief. Plaintiffs disagree and argue that enjoining the Tennessee Attorney General from invoking Chapter 154 will redress these harms by eliminating the risk that Chapter 154 poses.

A plaintiff's injury must have a causal connection to the conduct of the adverse party. *Hargett*, 414 S.W.3d at 98 (quoting *Darnell*, 195 S.W.3d at 620). This standard is not onerous, but it requires a causal connection between the actions of the defendant and the injury complained of. *See id.* The final element of constitutional standing is that a plaintiff must show that the injury is capable of being redressed by a favorable decision from the court. *Hargett*, 414 S.W.3d at 98; *Darnell*, 195 S.W.3d at 620. This capability of redress "must be likely, as opposed to merely speculative." *Wilmington Trust, N.A.*, 703 S.W.3d at 283 (quoting *Lujan*, 504 U.S. at 560–61). "It is not necessary that the plaintiff's harm 'will be entirely redressed, as partial redress can also satisfy the standing requirement.'" *Rutan-Ram v. Tennessee Dep't of Children's Servs.*, 698 S.W.3d 540, 560 (Tenn. Ct. App. 2023) (quoting *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015)).

In the Amended Complaint, Plaintiffs seek a permanent injunction enjoining the Defendant from (1) seeking to defend the certification decision in the U.S. Court of Appeals for the D.C. Circuit and the U.S. Supreme Court, (2) invoking or enforcing Chapter 154 in any federal habeas corpus proceeding, and (3) reapplying for certification. Plaintiffs also seek a judgment declaring

that Defendant's request for certification was extra-statutory and unconstitutional and thus Tennessee's application is void and of no effect.

Defendant argues that federal courts are obligated to apply Chapter 154's procedures if the requirements are met, pointing to 28 U.S.C.A. § 2261(a), which provides that "This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence. It shall apply only if the provisions of subsections (b) and (c) are satisfied." Defendant argues that the Attorney General does not "enforce" Chapter 154, and he need not "invoke" it. Thus, even if the Attorney General were enjoined, federal courts would still have to apply Chapter 154's procedures. Further, Defendant points to Plaintiffs' acknowledgement in their brief that the U.S. Attorney General's "Certification Decision will remain valid unless and until the D.C. Circuit vacates it" and that injunctive or declaratory relief from this Court would not "effectively nullify" Tennessee's certification. (Pl.'s Opp. to Mot. to Dismiss, p. 52). Plaintiffs argued that a decision from this Court finding that the Tennessee Attorney General lacked authority to initiate the certification process "may be persuasive to the D.C. Circuit in its analysis of . . . whether the certification was initiated by an 'appropriate State official,' . . . but it is by no means binding." (*Id.*).

In response, Plaintiffs argue that the Tennessee Attorney General invokes Chapter 154 in federal habeas proceedings because it is considered an affirmative defense. In *Calderon v. Ashmus*, 523 U.S. 740, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998), the U.S. Supreme Court treated a state's reliance on Chapter 154's shortened filing deadline as an affirmative defense that the state asserts in response to a prisoner's habeas petition.[1] Thus, Plaintiffs argue, if the Tennessee Attorney

---

[1] Defendant argues this case was decided before the 2006 amendment allowing the state's Attorney General to seek certification. Previously, federal courts entertaining habeas corpus petitions were required to determine whether a state's capital-counsel mechanism qualified the state to receive Chapter 154's benefits. In 2006, Chapter 154 was amended to shift that responsibility from the federal courts to the Attorney General. Despite this, "[u]nder all versions

General is enjoined from invoking Chapter 154, he may not additionally demonstrate its applicability to individual petitioners. Further, this Court may enjoin invocation of Chapter 154 because Chapter 154 cannot lawfully be enforced as it became applicable to Tennessee only through Defendant's *ultra vires* certification request.

The Court concludes the Federal Defenders and Habeas Petitioners have established traceability and redressability. Based on their allegations, Defendant's request for Chapter 154 certification has partially caused these Plaintiffs an injury, and so an injunction of the invocation of Chapter 154 in federal habeas proceedings would relieve the injury at least in part.

*iii. Taxpayer Standing*

Taxpayer standing in Tennessee is doctrinally distinct from the federal approach, which is considerably narrower. *Rutan-Ram*, 698 S.W.3d at 562. While the general rule remains that "[t]he mere status of a taxpayer or voter is not sufficient to bring an action in and of itself," *id.* (quoting *Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980), there are two routes for taxpayers to establish standing in Tennessee, *id.* "One route hews more closely to the conventional standing analysis . . . . [and requires] a taxpayer [to] assert a 'special interest or a special injury not common to the public generally.'" *Id.* (quoting *Fannon v. City of LaFollette*, 329 S.W.3d 418, 427 (Tenn. 2010)). The other route, "long recognized by Tennessee courts, significantly departs from conventional federal taxpayer standing, providing an 'exception' to the rule that a special interest or injury is necessary to establish standing." *Id.* Seeking standing this way, the taxpayer must allege (1) taxpayer status; (2) "a specific illegality in the expenditure of public funds"; and (3) that

---

of the statute, such federal habeas courts must still determine whether the state did appoint counsel to represent the capital prisoner during state postconviction proceedings, pursuant to the state's capital-counsel mechanism." *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241, 1244, n.3 (9th Cir. 2016). Accordingly, it appears that the state's invocation of Chapter 154 generally remains an affirmative defense and that the burden is on the state to demonstrate that all the qualifying procedures have been established.

he or she "has made a prior demand on the governmental entity asking it to correct the claimed illegality." *Id.* at 562–63 (quoting *Lewis v. Cleveland Mun. Airport Auth.*, 289 S.W.3d 808, 816 (Tenn. Ct. App. 2008)); *see also Cobb v. Shelby County Bd. of Comm'rs*, 771 S.W.2d 124, 126 (Tenn. 1989).

Defendant argues that Mr. Ferrell lacks standing because Plaintiffs rely on a theory of taxpayer standing that is no longer viable, relying on *Wygant*, and, regardless, Mr. Ferrell fails to meet the requirements because the Amended Complaint does not identify any illegally expended funds or that Mr. Ferrell made a prior demand on the Attorney General.

Plaintiffs argue that the plaintiffs in *Wygant* did not allege taxpayer standing, and the Court had no occasion to address the issue. Further, that Mr. Ferrell alleges that the Tennessee Attorney General is unlawfully using public funds to "seek enforcement of Chapter 154 against federal habeas petitioners." (Am. Compl., ¶¶ 20-24). Thus, he objects to public funds being used specifically to enforce Chapter 154.

Without deciding whether the Tennessee Supreme Court has abrogated the taxpayer standing doctrine, the Court finds that Mr. Ferrell does not meet the standing requirements under either taxpayer standing or Article III standing. Mr. Ferrell has failed to allege a concrete injury and failed to allege a "specific illegality in the expenditure of public funds." Rather, he generally alleges that some of the public funds used for the Tennessee Attorney General's office is unlawfully being used to seek Chapter 154 certification. Without more, the Court cannot find that this is sufficient to support taxpayer standing for Mr. Ferrell.

*Ripeness*

Ripeness requires a court to answer the question of "whether the dispute has matured to the point that it warrants a judicial decision." *B & B Enters. of Wilson Cnty., LLC v. City of*

*Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010). The rationale is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The main concern under ripeness is "whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all." *B & B Enters.*, 318 S.W.3d at 848 (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479–80, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). In determining whether a case is ripe, courts evaluate "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *West v. Schofield*, 468 S.W.3d 482, 490–91 (Tenn. 2015) (quoting *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507).

Defendant argues that the case is not ripe because certification could still be overturned by the D.C. Circuit or U.S. Supreme Court. First, the Court does not find that Plaintiffs' claims rest on hypothetical and speculative future events, as the Court determined that the Federal Defenders and Habeas Petitioners have sufficiently pled a cognizable, imminent injury, and, further, Tennessee has been certified by the U.S. Attorney General which allows the Tennessee Attorney General to invoke Chapter 154 against the Federal Defenders' clients. In addition, withholding adjudication at this time will impose meaningful hardship on the parties as the Habeas Petitioners' claims may be barred by Chapter 154 or significantly impaired that would eliminate their final opportunity for relief from the death penalty.

*D.C. Circuit and Exclusive Jurisdiction*

Defendant next argues that the D.C. Circuit has exclusive jurisdiction over challenges to Tennessee's certification. 28 U.S.C. § 2265 provides in relevant part:

> (a) Certification.—
>
> (1) In general.--If requested by an appropriate State official, the Attorney General of the United States shall determine—
>
> (A) whether the State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death;
>
> (B) the date on which the mechanism described in subparagraph (A) was established; and
>
> (C) whether the State provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A).
> …
>
> (c) Review of certification.--
> …
>
> (2) Venue.--The Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction over matters under paragraph (1), subject to review by the Supreme Court under section 2350 of this title.

Plaintiffs agree that the D.C. Circuit possesses exclusive jurisdiction to review the U.S. Attorney General's certification determination, but they contend that this Court has jurisdiction over the distinct question of whether the Tennessee Attorney General possessed authority under Tennessee law to initiate the certification process. Defendant cites to *Bland v. Blanche*, No. 25-CV-03499 (APM), 2026 WL 1998552 (D.D.C. July 10, 2026), which found that "the D.C. Circuit has exclusive jurisdiction to review not only a final certification decision by the Attorney General, but also any claim that 'might affect' its future power to review such a decision." *Bland*, 2026 WL 1998552, at *2 (citing *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 78–79 (D.C. Cir. 1984)). However, in that case, the plaintiffs challenged as unconstitutional vesting authority in the U.S. Attorney General. This was a direct challenge to Chapter 154's statutory framework. Here, Plaintiffs raise state law questions regarding the Tennessee Attorney General's authority to

request certification, not the U.S. Attorney General's authority to certify a state. Thus, the Court finds that the D.C. Circuit does not have exclusive jurisdiction over Plaintiffs' claims.

*Failure to State a Claim*

Lastly, Defendant contends that Plaintiffs' claims fail on the merits. Defendant contends that the Attorney General had authority to request Chapter 154 certification based upon his constitutional, common law, and statutory authority. Further, that the separation of powers supports the Attorney General's request for certification.

The Tennessee Attorney General is "the chief executive officer of the Legal Department of state government." *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 515 (6th Cir. 2019) (quoting *Tennessee ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 772 (Tenn. Ct. App. 2001); *see also* Tenn. Code Ann. § 4-3-111(1)). Since 1870, the Attorney General has been a "constitutional officer" which carries "extensive statutory power and the broad common-law powers of the office except where these powers have been limited by statute." *Id.* (quoting *Medicine Bird Black Bear White Eagle*, 63 S.W.3d at 772). Tennessee courts have given a broad construction to the Attorney General's statutory authority. *Id.* (citing *Tennessee v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990)).

Under the common law, the Attorney General "may exercise such authority as the public interest may require and may file suits necessary for the enforcement of state laws and public protection." *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990) (citing 7 Am.Jur.2d Attorney General § 9 (1980)). The Sixth Circuit has noted that "[t]he public interest may be affected seriously by habeas corpus actions," and that "the public has a right of protection against the release of convicted criminals except where violations of constitutional rights have been

established." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970). "Traditionally, the attorney general has had very broad discretion to decide what matters are of public interest and require its attention." *Heath*, 806 S.W.2d at 537. Thus, Defendant argues that seeking Chapter 154 certification lies squarely within the Attorney General's authority to initiate legal proceedings he determines to be in the public interest.

Defendant also points to four statutory provisions specifically authorizing the Attorney General's Chapter 154 certification request. First, seeking certification falls under the "direction of . . . administrative proceedings in which the state . . . may be interested." Tenn. Code Ann. § 8-6-109(b)(1). Second, requesting Chapter 154 certification is part of the "direct[ion] and supervis[ion]" of federal habeas "litigation," Tenn. Code Ann. § 8-6-301(b), as well as "prosecut[ing] and defend[ing] … any and all suits, civil or criminal," in federal court, *id.* § 8-6-110; *see also id.* § 40-30-114(c)(1) (the Attorney General "exclusive[ly] control[s] … the state's defense of the request for collateral review"). Third, requesting certification is a "duty which [has] devolve[d] upon" the Attorney General under federal and state law. Tenn. Code Ann. § 8-6-109(b)(15). Fourth, requesting certification constitutes the "render[ing]" of "legal services" required by the State. *Id.* § 8-6-301(a). Defendant argues that seeking certification is a legal service the Attorney General is authorized to render.

In the Amended Complaint, Plaintiffs allege that the Tennessee Attorney General's common law powers do not permit him to seek certification. Plaintiffs point to Tenn. Code Ann. § 8-6-109(a) which provides that "[t]he attorney general and reporter is authorized to utilize and refer to the common law in cases in which the state is a party." Plaintiffs argue that federal administrative proceedings before the U.S. Attorney General are not "cases." Further, Plaintiffs argue that the statutes cited by Defendant at best permit the Tennessee Attorney General to

supervise and control the State's conduct in already instituted federal administrative proceedings, not to initiate those proceedings in the first place.

While case law demonstrates that the Attorney General has broad discretion to decide what matters may or may not be of interest to the public, and the statutory authority setting forth the powers of the Attorney General likewise appears broad, those powers are not without limits, and the Court declines to find that the Amended Complaint fails to state a claim as a matter of law.

## Conclusion

For the foregoing reasons, Defendant's Rule 12 Motion is GRANTED pursuant to Tenn. R. Civ. P. 12.02(1), and this matter is DISMISSED.

Costs are taxed to Plaintiffs.

**It is so ORDERED.**

s/Anne C. Martin
**ANNE C. MARTIN**
**CHANCELLOR, PART II**

cc: John Spragens
Spragens Law PLC
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
john@spragenslaw.com

Ammar Inayatali (*pro hac vice*)
Victoria Stratton *(pro hac vice)*
701 Thirteenth St. NW
Washington, D.C. 20005
ammar.inayatali@whitecase.com
victoria.stratton@whitecase.com

Kevin Adams (*pro hac vice*)
Jennifer Ware-Phillips (*pro hac vice*)
75 State St.
Boston, MA 02109
kevin.adam@whitecase.com
jennifer.ware@whitecase.com

Zachary R. Clark
Reed N. Smith
Caleb J. Walker
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
zachary.clark@ag.tn.gov
reed.smith@ag.tn.gov
caleb.walker@ag.tn.gov

David R. Esquivel
Sarah B. Miller
Bass Berry & Sims PLC
21 Platform Way South, Suite 3500
Nashville, TN 37203
desquivel@bassberry.com
smiller@bassberry.com

## RULE 58 CERTIFICATION

A copy of this Order has been served by U.S. Mail or the Court's Electronic Filing System upon all parties or their counsel named above.

| | |
|---|---|
| s/Megan Carter | November 24, 2026 |
| Deputy Clerk & Master | Date |